Christopher R. Ambrose, OSB No. 960344
Email: crambrose@ambroselaw.com
**AMBROSE LAW GROUP LLC**
312 NW 10th Avenue, Suite 200
Portland, Oregon  97209-3121
Telephone:   503.222.0552
Facsimile:    503.222.0984
   *Attorneys for Defendant Pacwest Funding, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| NORTHWEST INVESTMENT HOLDINGS, LLC, an Oregon limited liability company, | ) ) ) ) | Case No. 3:24-CV-01144-HZ |
| Plaintiff, | ) ) | **DEFENDANT PACWEST FUNDING, INC.'S, REQUEST FOR JUDICIAL NOTICE** |
| v. | ) ) | |
| PACWEST FUNDING, INC., dba PRECISION CAPITAL; DOES 1 to 5, | ) ) ) ) | **FRE 201** |
| Defendants. | ) ) | |

Pursuant to FRE 201(c)(2), Defendant PacWest Funding, Inc. ("PacWest Funding"), requests the Court take judicial notice of the following exhibits in support of its Motion to Dismiss filed concurrently herewith:

**$420,000.00 Loan:**

1.      $420,000.00 Promissory Note Secured by Deed of Trust.

2.      Recorded Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement re $420,000.00 Note.

**PAGE 1 – DEFENDANT PACWEST FUNDING, INC.'S REQUEST FOR JUDICIAL NOTICE**

**AMBROSE LAW GROUP LLC**
ATTORNEYS AT LAW
312 NW 10TH AVENUE, SUITE 200
PORTLAND, OREGON 97209-3121
TELEPHONE (503) 222-0552
FACSIMILE (503) 222-0984

3.    Business Purpose of Loan Certification re $420,000.00 Loan.

4.    Arbitration Agreement re $420,000.00 Loan.

5.    Recorded Assignment of Trust Deed by Beneficiary re $420,000.00 Deed.

6.    Recorded Appointment of Successor Trustee re $420,000.00 Trust Deed.

7.    Recorded Notice of Default and Election to Sell re $420,000.00 Trust Deed.

8.    Recorded Trustee's Deed as a Result of Foreclosure re $420,000.00 Trust Deed.

**$346,500.00 Loan:**

9.    $346,500.00 Promissory Note Secured by Deed of Trust.

10.   Recorded Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement re $346,500.00 Note.

11.   Business Purpose of Loan Certification re $346,500.00 Loan.

12.   Arbitration Agreement re $346,500.00 Loan.

13.   Recorded Assignment of Trust Deed by Beneficiary re $346,500.00 Deed.

14.   Recorded Appointment of Successor Trustee re $346,500.00 Trust Deed.

15.   Recorded Notice of Default and Election to Sell re $346,500.00 Trust Deed.

16.   Recorded Trustee's Deed as a Result of Foreclosure re $346,500.00 Trust Deed.

DATED this 10th day of October, 2024.

**AMBROSE LAW GROUP LLC**

/s/ Christopher R. Ambrose
Christopher R. Ambrose, OSB No. 960344

*Of Attorneys for Defendant PacWest Funding, Inc.*

**PAGE 2 – DEFENDANT PACWEST FUNDING, INC.'S
REQUEST FOR JUDICIAL NOTICE**

AMBROSE LAW GROUP LLC
ATTORNEYS AT LAW
312 NW 10TH AVENUE, SUITE 200
PORTLAND, OREGON 97209-3121
TELEPHONE (503) 222-0552
FACSIMILE (503) 222-0984

I:\73094\21\PL-USDC\00939697.WPD

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2024, the foregoing **DEFENDANT PACWEST FUNDING, INC.'S, REQUEST FOR JUDICIAL NOTICE** was served on the following recipient by electronic means through the Court's Electronic Case File system:

John A. Cochran
The Cochran Law Firm LLC
1033 SW Yamhill Street, Suite 201
Portland, OR  97205
Email:  john@thecochranlawfirm.com
   *Attorney for Plaintiff Northwest Investment Holdings, LLC*

DATED this 10th day of October, 2024.

**AMBROSE LAW GROUP LLC**

/s/ Christopher R. Ambrose
Christopher R. Ambrose, OSB No. 960344

*Of Attorneys for Defendant PacWest Funding, Inc.*

**CERTIFICATE OF SERVICE**

AMBROSE LAW GROUP LLC
ATTORNEYS AT LAW
312 NW 10TH AVENUE, SUITE 200
PORTLAND, OREGON 97209-3121
TELEPHONE (503) 222-0552
FACSIMILE (503) 222-0984

# EXHIBIT ONE

# PROMISSORY NOTE SECURED BY DEED OF TRUST
*(36 Month Term / Interest Only Payments / 36 Month Balloon Payment    )*

$420,000                     Multnomah County, OR                     July 31, 2019

### Loan Number: PC0719AD

*Property Address:        3610 SE 141st Ave, Portland, OR 97236*

FOR VALUE RECEIVED, the undersigned, Northwest Investment Holdings, LLC, an Oregon limited liability company ("Borrower"), hereby promises to pay to PacWest Funding Inc dba Precision Capital, or order ("Lender"), the principal sum of FOUR HUNDRED TWENTY THOUSAND AND 00/100 DOLLARS ($420,000), together with interest on the unpaid principal balance of this Note, as follows:

**1.**      __Interest__. Interest on the unpaid principal balance will accrue from the date the proceeds have been distributed to or on behalf of the Borrower (the "Date of Advance") at an annual rate equal to TWELVE AND 24/100 percent (12.240%)**\* if the borrower elects not to pay by electronic funds transfer or ACH**.  Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days before the first full payment cycle, monthly interest is calculated by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days.  Interest for the odd days before the first full month is calculated on the basis of the actual days and a 360-day year.  All interest payable under this Note is computed using this method.

**Notwithstanding the foregoing, should Borrower elect to make payments by electronic funds transfer by automated clearing house ("ACH Payments") which shall be automatically withdrawn on the first of each month (or the date within the grace period selected by the borrower) in which payment is due, the interest rate shall be reduced by Zero and 25/100 Percent (0.25%) to ELEVEN AND 99/100 percent (11.990%) ("Interest Rate Reduction"). This Interest Rate Reduction shall terminate should Borrower fail to maintain sufficient funds in its account for the ACH Payments.**

**2.**      __Payment Obligations.__

**2.1**      __Payments__.  Interest-only payments shall be due and payable in consecutive monthly installments of $4,196.50 on the 1st day of each month beginning on OCTOBER 1, 2019. Such payments shall continue until the entire indebtedness evidenced by this Note and all accrued and unpaid interest and fees are fully paid, with any unpaid principal and interest due and payable on SEPTEMBER 1, 2022 (the "Maturity Date").

In accordance with Section 1 above, should Borrower NOT elect the option to make ACH Payments, interest-only payments shall be calculated on the higher rate above due and payable in the amount of $4,284.00 on the 1st day of each month beginning on OCTOBER 1, 2019. Should Borrower fail to maintain sufficient funds in its account for the ACH Payments, Borrower shall pay to Lender a non-sufficient funds ("NSF") fee in the amount of Fifty and 00/100 Dollars ($50.00) per each returned payment, and the

© 2007 Geraci Law Firm; All Rights Reserved.
Note
Loan No. PC0719AD

Rev. 01/16
Borrowers Initials

Reduction in the Interest Rate shall terminate and Borrower shall make the full interest-only payment in the amount of $4,284.00 for the remainder of the loan term.

Payments due under the Note shall be made in U.S. currency. Borrower shall at all times maintain a valid account to be used for ACH Payments. Borrower's failure to maintain a valid account to be used for ACH Payments shall be a Default under paragraph 4 of this Note. Lender reserves the right, in its sole and absolute discretion, to require payment in any other manner.

    **2.1.1**   **Collection Costs.** In addition to any amounts due above, Borrower shall be responsible for all of Lender's actual collection costs, including those costs incurred due to an Event of Default. Collection costs include a Servicing Fee in the amount of Seventy-Five and 00/100 Dollars ($75.00), a Force Placement Fee in the amount of Two Hundred Fifty and 00/100 Dollars ($250.00), and any other cost associated with the servicing and collection efforts taken on behalf of the Loan.

    **2.2**   **Balloon Payment.** The payment schedule contained in this loan requires that Borrower make a balloon payment of FOUR HUNDRED TWENTY THOUSAND AND 00/100 ($420,000) on the Maturity Date plus any unpaid but accrued interest, fees and charges due under this Note.

    **2.3**   **Delivery of Payments.**     Payments shall be made to Lender at Lender's address, which is provided in paragraph 11 of this Note, or to another address if so designated by Lender. Payments due under this Note shall be made to Lender by electronic funds transfer by automated clearing house payments ("ACH Payments"). Borrower shall at all times maintain a valid account to be used for ACH Payments and shall ensure sufficient funds in the account to cover the amount of each payment or debit entry. Borrower's failure to maintain a valid account to be used for ACH Payments or failure to deposit and/or maintain sufficient funds in the account for each debit entry, shall be a Default under paragraph 4 of this Note. Lender reserves the right, in its sole and absolute discretion, to require payment in any other manner

    **2.4**   **Order of Application of Payments.** Each payment under this Note shall be credited in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender and interest under any provision of this Note or the Security Instrument, in such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.

    **2.5**   **Conditional Right to Extension.** Borrower shall have the right to request one twelve (12) to twenty-four (24) month extension of the Maturity Date of the Note if and only if the Lender consents to the extension and all of the following conditions are met:

    (a)     Borrower delivers to Lender a written request for an extension with the Extension Fee referenced in Subsection 2.5.2 below no later than forty-five (45) days prior to the Maturity Date, for each extension request;

    (a)     Borrower has made all of the payments due under the Note on or before the date they were due;

    (b)     Borrower and any guarantor have complied with all of the covenants of and is currently not in default under the Note, the Security Instrument, and all Loan Documents;

    (c)     Borrower delivers to Lender written confirmation that any and all property taxes and assessments due and owing on the Property have been paid;

2

© 2007 Geraci Law Firm; All Rights Reserved.
Note
Loan No. PC0719AD

Rev. 01/16
Borrowers Initials

EXHIBIT ONE
3 of 10

(d)    Borrower delivers to Lender written confirmation that all insurance policies required under the Security Instrument are paid and in effect during the twelve (12) month period following the date of the extension request;

(e)    Borrower and any guarantor's credit rating have not materially changed since the execution of the Note;

(f)    If requested, Borrower and any guarantor provide to Lender updated financial statements that indicate that there is no material change in the financial condition of Borrower or any guarantor since execution of the Note;

(g)    Lender determines, in its reasonable discretion, that there has not been a material negative change to the physical condition or value of the Property, other than a change lender has authorized in writing;

(h)    Borrower has agreed to pay the costs associated with the loan extension, inclusive of an endorsement to the Lender's title insurance policy; the fees charged by the County Recorder to record the extension agreement; notary fees; all escrow fees inclusive of messenger and handling fees; legal fees; and, the fee charged for the preparation of the extension agreement;

(i)    Lender confirms that Borrower has not permitted any further encumbrances or liens to be recorded against the Property.

2.5.1    **Time of Extension.**  If Borrower satisfies each condition set forth above for the extension, and the Lender consents to an extension request, Borrower shall have the right to up to one twenty-four (24) to thirty-six (36) month extension of the Maturity Date (an "Extension").

2.5.2    **Extension Fee.**  As consideration to Lender for granting an Extension, Borrower shall pay to Lender in good funds One and 00/100 Percent (1.0%) of the outstanding principal balance of the Note as an extension fee ("Extension Fee") for the Extension granted. The Extension Fee is due and payable with the written request for extension described in Subsection 2.5(a) above.

3.    **Late Charge.**  Borrower acknowledges that default in the payment of any sum due under this Note will result in losses and additional expenses to Lender in servicing the indebtedness evidenced by this Note, handling such delinquent payments, and meeting its other financial obligations. Borrower further acknowledges that the extent of such loss and additional expenses is extremely difficult and impractical to ascertain.    Borrower acknowledges and agrees that, if any payment due under this Note is not received by Lender within fifteen (15) days when due, a charge of 5 cents ($0.05) for each dollar ($1.00) that is not paid when due would be a reasonable estimate of expenses so incurred (the "Late Charge"). Without prejudicing or affecting any other rights or remedies of Lender, Borrower shall pay the Late Charge to Lender as liquidated damages to cover expenses incurred in handling such delinquent payment.

4.    **Default.**  On (a) Borrower's failure to pay any installment or other sum due under this Note when due and payable (whether by extension, acceleration, or otherwise), (b) an Event of Default (as defined in the Security Instrument, or (c) any breach of any other promise or obligation in this Note or in any other instrument now or hereafter securing the indebtedness evidenced by this Note, then, and in any such event, Lender may, at its option, declare this Note (including, without limitation, all accrued interest) due and payable immediately regardless of the Maturity Date.  Borrower expressly waives notice of the exercise of this option.

© 2007 Geraci Law Firm; All Rights Reserved.
Note
Loan No. PC0719AD

Rev. 01/16
Borrowers Initials

5.    **Prepayment**. Borrower may prepay this Note in whole or in part at any time without penalty. All prepayments of principal on this Note shall be applied to the most remote principal installment or installments then unpaid.

6.    **Interest on Default**. If Borrower is in default under this Note, as that event is contemplated under Section 4 of this Note, or defaults under any other clause of the Security Instrument, or all other instruments and agreements required to be executed by Borrower or any guarantor in connection with the Note (collectively, along with the Note, the "Loan Documents), then the entire unpaid principal balance shall automatically bear an annual interest rate (instead of the rate specified in Section 1) equal to the lesser of (a) FIVE AND 00/100 PERCENT (5.00%) or (b) the maximum interest rate allowed by law (the "Default Rate"). If the Maturity Date is accelerated pursuant to Section 4, the unpaid principal shall accrue interest at the Default Rate only until the default is cured and the Security Instrument is reinstated. Borrower acknowledges and agrees that it would be extremely difficult or impractical to fix the actual damages resulting from Borrower's failure to pay the principal, accrued interest and other sums due on the Maturity Date, and therefore Borrower shall pay interest at the Default Rate not as a penalty, but for purposes of defraying the expenses incident to handling the past due principal, accrued interest and other sums due under this Promissory Note. Interest at the Default Rate represents the reasonable estimate of the loss that may be sustained by Lender due to the failure of Borrower to pay the principal, accrued interest and other sums due on the Maturity Date. Interest at the Default Rate shall be payable by Borrower without prejudice to the rights of Lender to collect any other amounts to be paid under this Promissory Note (including, without limitation, late charges pursuant to Section 3, above) or the Security Instrument.

7.    **Interest on Interest**. If any interest payment under this Note is not paid when due, the unpaid interest shall be added to the principal of this Note, shall become and be treated as principal, and shall thereafter bear like interest.

8.    **Due-on-Sale**. If Borrower sells, contracts to sell, gives an option to purchase, conveys, leases with an option to purchase, encumbers (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of the Security Instrument), or alienates the Property, or any interest in it, or suffers its title to, or any interest in, the Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of beneficial interests in Borrower; or if Borrower changes or permits to be changed the character or use of the Property, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Property; or if title to such Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at Lender's option, may, without prior notice, declare all sums secured by the Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Security Instrument, including those in Section 21 of the Security Instrument.

9.    **Attorney Fees**. Borrower agrees to pay the following costs, expenses, and attorney fees paid or incurred by Lender, or adjudged by a court: (a) reasonable costs of collection and costs, expenses, and attorney fees paid or incurred in connection with the collection or enforcement of this Note, whether or not suit is filed; (b) reasonable costs, expenses, and attorney fees paid or incurred in connection with representing Lender in

---

© 2007 Geraci Law Firm; All Rights Reserved.
Note
Loan No. PC0719AD

Rev. 01/16
Borrowers Initials

any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Note; (c) reasonable costs, expenses, and attorney fees incurred to protect the lien of the Security Instrument; and (d) costs of suit and such sum as the court may adjudge as attorney fees in any action to enforce payment of this Note or any part of it.

10.    **Waiver.**  Borrower, endorsers, and all other persons liable or to become liable on this Note waive diligence, presentment, protest and demand, and also notice of protest, demand, nonpayment, dishonor and maturity and consents to any extension of the time or terms of payment hereof, any and all renewals or extensions of the terms hereof, any release of all or any part of the security given for this Note, any acceptance of additional security of any kind and any release of any party liable under this Note.  Any such renewals or extensions may be made without notice to Borrower.

11.    **Notice.**  Any notice required to be provided in this Note shall be given in writing and shall be sent (a) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (b) by first-class certified United States mail, postage prepaid, return receipt requested; or (c) by a nationally recognized overnight courier service, marked for next day business delivery. All notices shall be addressed to the party to whom such notice is to be given at the following addresses:

Lender:    PacWest Funding Inc dba Precision Capital
4710 Village Plaza Loop Suite 100
Eugene, OR 97401

Borrower:    Northwest Investment Holdings, LLC, an Oregon
limited liability company
3403 Ross Ave
Gig Harbor, WA 98332

or to such other address as a party may designate by written notice to the other. All notices shall be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery; (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending.

12.    **Secured by Security Instrument**. This Note is secured by, among other things, that certain Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Security Instrument") of even date herewith made by Borrower, as trustor, for the benefit of Lender, as beneficiary.

13.    **Forbearance Not a Waiver**. If Lender delays in exercising or fails to exercise any of its rights under this Note, such delay or failure shall not constitute a waiver of any Lender rights or of any breach, default, or failure of condition under this Note. No waiver by Lender of any of its rights or of any such breach, default, or failure of condition shall be effective, unless the waiver is expressly stated in a writing signed by Lender.

14.    **Assignment**. This Note inures to and binds the heirs, legal representatives, successors, and assigns of Borrower and Lender; provided, however, that Borrower may

5

© 2007 Geraci Law Firm; All Rights Reserved.
Note
Loan No. PC0719AD

Rev. 01/16
Borrowers Initials

EXHIBIT ONE
6 of 10

not assign this Note or any proceeds of it, or assign or delegate any of its rights or obligations, without Lender's prior written consent in each instance. Lender in its sole discretion may transfer this Note, and may sell or assign participations or other interests in all or any part of this Note, all without notice to or the consent of Borrower.

**15.    Governing Law and Venue.** Notwithstanding the location of the Property, this Note and all attendant loan documents were negotiated and executed in the State of Oregon; and, it is the express intent of the Parties hereto that this Note shall be construed and enforceable according to the laws of thereof for all purposes. The Parties agree that jurisdiction and venue for any dispute, claim or controversy arising, other than with respect to perfection and enforcement of Lender's rights against the Property, shall be the county in which notice shall be sent to Lender pursuant this Note, or the applicable federal district court that covers said county, and Borrower submits to personal jurisdiction in that forum for any and all purposes. Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

BORROWER'S INITIALS: _____  _____

**16.    Reserved.**

**17.    Usury.** All agreements between Borrower and Lender are expressly limited, so that in no event or contingency, whether because of the advancement of the proceeds of this Note, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to Lender for the use, forbearance, or retention of the money to be advanced under this Note exceed the highest lawful rate permissible under applicable usury laws. If, under any circumstances, fulfillment of any provision of this Note or the Security Instrument securing this Note or any other agreement pertaining to this Note, after timely performance of such provision is due, shall involve exceeding the limit of validity prescribed by law that a court of competent jurisdiction deems applicable, then, ipso facto, the obligations to be fulfilled shall be reduced to the limit of such validity. If, under any circumstances, Lender shall ever receive as interest an amount that exceeds the highest lawful rate, the amount that would be excessive interest shall be applied to reduce the unpaid principal balance under this Note and not to pay interest, or, if such excessive interest exceeds the unpaid principal balance under this Note, such excess shall be refunded to Borrower. This provision shall control every other provision of all agreements between Borrower and Lender.

**18.    Time Is of the Essence.** Time is of the essence with respect to all obligations of Borrower under this Note.

**19.    Cross-Default.** Any default under the terms of any loan agreement, promissory note, deed of trust, mortgage, lease, conditional sale contract or other agreement, document or instrument evidencing, governing or securing any indebtedness owing by Borrower or any Affiliate of Borrower to Lender or any Affiliate of Lender; shall, at Lender's option, constitute a default under this Note. The following definitions shall apply to this Section:

> "**Affiliate**" means, with respect to any Person, any other Person that is directly or indirectly Controlling, Controlled by or under common Control with, such Person.

---

6

© 2007 Geraci Law Firm; All Rights Reserved.
Note
Loan No. PC0719AD

Rev. 01/16
Borrowers Initials

EXHIBIT ONE
7 of 10

"**Control**" and derivative terms means the possession, directly or indirectly, and acting either alone or together with others, of the power or authority to direct or cause the direction of the management, material policies, material business decisions or the affairs of a Person, whether through the ownership of equity securities or interests, by contract or other means.

"**Person**" means any natural person, business, corporation, company, and or association, limited liability company, partnership, limited partnership, limited liability partnership, joint venture, business enterprise, trust, government authority or other legal entity.

BORROWER'S INITIALS: _____ _____

20. **Dispute Resolution: Waiver of Right to Jury Trial**
    **20.1** **ARBITRATION.** CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO ARBITRATE ANY DISPUTES TO RESOLVE ANY CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT).
    **20.2** **WAIVER OF RIGHT TO JURY TRIAL.** TO THE EXTENT PERMITTED BY SAID APPLICABLE LAW, BORROWER, ANY GUARANTOR, AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED ON OR ARISING FROM THIS NOTE. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. BORROWER AND, BY ITS ACCEPTANCE OF THE BENEFITS OF THIS NOTE, LENDER EACH (A) ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR BORROWER AND LENDER TO ENTER INTO A BUSINESS RELATIONSHIP, THAT BORROWER AND LENDER HAVE ALREADY RELIED ON THIS WAIVER BY ENTERING INTO THIS NOTE OR ACCEPTING ITS BENEFITS, AS THE CASE MAY BE, AND THAT EACH SHALL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS, AND (B) FURTHER WARRANTS AND REPRESENTS THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS NOTE.

BORROWER'S INITIALS: _____ _____

© 2007 Geraci Law Firm; All Rights Reserved.
Note
Loan No. PC0719AD

Rev. 01/16
Borrowers Initials

**21.** **Representation on Use of Proceeds.** Borrower represents and warrants to Lender that the proceeds of this Note will be used solely for business, commercial investment, or similar purposes, and that no portion of it will be used for personal, family, or household purposes.

**22.** **Assignment.** Holder may, at its sole option, assign this Note and/or designate any other person or entity as the holder hereof.

**23.** **No Modifications or Amendments; No Waiver.** Except as specified herein, this Note may not be amended, modified or changed, nor shall any waiver of the provisions hereof be effective, except only by an instrument in writing signed by the party against whom enforcement of any waiver, amendment, change, modification or discharge is sought. Additionally, a waiver of any provision in one event shall not be construed as a waiver of any other provision at any time, as a continuing waiver, or as a waiver of such provision on a subsequent event.

**24.** **Severability.** Any provision of this Note which shall be held by a court of competent jurisdiction to be invalid, void or illegal shall in no way affect, impair or invalidate any other provision or term hereof, and such other provisions or terms shall remain in full force and effect.

**25.** **Successors and Assigns.** Whenever used herein, the terms "Lender" and "Borrower" shall be deemed to include their respective heirs, personal representatives, successors and assigns.

**26.** **Cooperation.** Borrower acknowledges that Lender and its successors and assigns may (a) sell, transfer, or assign the Security Instrument, this Note, and other Loan Documents to one or more investors as a whole loan, in a rated or unrated public offering or private placement; (b) participate the Loan secured by the Security Instrument to one or more investors in a rated or unrated public offering or private placement; (c) deposit the Security Instrument, this Note, and other Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets in a rated or unrated public offering or private placement; or (d) otherwise sell the Note or interest therein to investors in a rated or unrated public offering or private placement. (The transactions referred to in clauses (a)-(d) are hereinafter referred to as "Secondary Market Transactions.") Borrower shall, at Lender's expense, cooperate in good faith with Lender in effecting any such Secondary Market Transaction and shall cooperate in good faith to implement all requirements reasonably imposed by the participants involved in any Secondary Market Transaction (including, without limitation, a rating agency and/or an institutional purchaser, participant, or investor) including, without limitation, all structural or other changes to the Note, modifications to any documents evidencing or securing the Note, delivery of opinions of counsel acceptable to the rating agency or such other purchasers, participants or investors, and addressing such matters as the rating agency or such other purchasers, participants, or investors may require; provided, however, that the Borrower shall not be required to modify any documents evidencing or securing the Note that would modify (i) the interest rate payable under this Note, (ii) the stated maturity of this Note, (iii) the amortization of principal of this Note, or (iv) any other material terms or covenants of the Note. Borrower shall provide such information and documents relating to Borrower, the Property, the Leases, and any lessees as Lender or the rating agency or such other purchasers, participants, or investors may reasonably request in connection with a Secondary Market Transaction. Lender shall have the right

---

8

Rev. 01/16
Borrowers Initials

to provide to the rating agency or prospective purchasers, participants, or investors any information in its possession including, without limitation, financial statements relating to Borrower, the Property, and any lessee. Borrower acknowledges that certain information regarding the Note and the parties thereto and the Property may be included in a private placement memorandum, prospectus, or other disclosure documents.

27.     **Obligations of Borrower Joint and Several**.  If more than one Person is named as Borrower, each obligation of Borrower under this Note shall be the joint and several obligations of each such Person.

28.     **Capitalized Terms.**  Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Security Instrument executed of even date herewith. WITNESS THE HAND AND SEAL OF THE UNDERSIGNED.

**BORROWER:**

NORTHWEST INVESTMENT HOLDINGS, LLC, AN OREGON LIMITED LIABILITY COMPANY

_____          _____
Kristen  Bernard , Member/Manager

© 2007 Geraci Law Firm; All Rights Reserved.
Note
Loan No. PC0719AD

Rev. 01/16
Borrowers Initials

# EXHIBIT TWO

| Multnomah County Official Records<br>E Murray, Deputy Clerk | **2019-080959** |
|---|---|
| | 08/05/2019 02:11:35 PM |
| MORT-MORT    Pgs=23 Stn=36 HENTGESB<br>$115.00 $20.00 $11.00 $6.00 $60.00 | $212.00 |

**RECORDING REQUESTED BY:**

Dean S. Kaufman, Attorney at Law
4710 Village Plaza Loop, Suite 100
Eugene OR 97401

**WHEN RECORDED, RETURN TO:**

PacWest Funding Inc dba Precision Capital
4710 Village Plaza Loop Suite 100
Eugene, OR 97401

Loan Number: PC0719AD
Property Address: 3610 SE 141st Ave,
Portland, OR 97236

---

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT
*(Commercial)*

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH
THE OREGON UNIFORM COMMERCIAL CODE.

    This Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Deed of Trust") is made as of July 31, 2019, among Northwest Investment Holdings, LLC, an Oregon limited liability company,  , as trustor ("Borrower"), whose address is, 3403 Ross Ave, Gig Harbor, WA 98332; Dean S. Kaufman, Attorney at Law, as trustee ("Trustee") whose address is 4710 Village Plaza Loop, Suite 100, Eugene, OR 97401; and PacWest Funding Inc dba Precision Capital, as beneficiary ("Lender"), whose address is 4710 Village Plaza Loop Suite 100, Eugene, OR 97401.

**TRANSFER OF RIGHTS IN THE PROPERTY**

    To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower irrevocably GRANTS, BARGAINS, SELLS, AND CONVEYS to Trustee the Mortgaged Property, in trust, with power of sale and right of entry, subject only to the Permitted Encumbrances, to have and to hold the Mortgaged Property to Trustee, its successors in trust, and the Trustee's assigns forever, and Borrower does hereby bind itself, its successors, and its assigns to warrant and forever defend the title to the Mortgaged Property to Trustee against anyone lawfully claiming it or any part of it; provided, however, that if the Indebtedness is paid in full as and when it becomes due and payable and the Obligations are performed on or before the date they are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate; otherwise, they shall remain in full force and effect. As additional security for the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower grants to Lender a security interest in the Personalty, Fixtures, Leases, and Rents under the Uniform Commercial Code in effect in the State of Oregon. Borrower further grants, bargains, conveys, assigns, transfers, and sets over to Trustee, acting as both a trustee and an agent for Lender under this Deed of Trust, a security interest in and to all of Borrower's right, title, and interest in, to, and under the Personalty, Fixtures, Leases, Rents, and Mortgaged Property (to the extent characterized as personal property) to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

    Borrower agrees to execute and deliver, from time to time, such further instruments, including, but not limited to, security agreements, assignments, and UCC financing statements, as may be requested by Lender to confirm the lien of this Deed of Trust on any of the Mortgaged Property.

    Borrower further irrevocably grants, transfers, and assigns to Lender the Rents. This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property under the Oregon Revised Statutes.

    TO MAINTAIN AND PROTECT THE SECURITY OF THIS DEED OF TRUST, TO SECURE THE FULL AND TIMELY PERFORMANCE BY BORROWER OF EACH AND EVERY OBLIGATION, COVENANT, AND AGREEMENT OF BORROWER UNDER THE LOAN DOCUMENTS, AND AS ADDITIONAL CONSIDERATION FOR THE INDEBTEDNESS AND OBLIGATIONS EVIDENCED BY THE LOAN DOCUMENTS, BORROWER HEREBY COVENANTS, REPRESENTS, AND AGREES AS FOLLOWS:

EXHIBIT TWO
2 of 25

RECORDING REQUESTED BY:

**Dean S. Kaufman, Attorney at Law**
**4710 Village Plaza Loop, Suite 100**
**Eugene OR 97401**

WHEN RECORDED, RETURN TO:

PacWest Funding Inc dba Precision Capital
4710 Village Plaza Loop Suite 100
Eugene, OR 97401

Loan Number: PC0719AD
Property Address: 3610 SE 141st Ave,
Portland, OR 97236

# DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT
### (*Commercial*)

## THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH THE OREGON UNIFORM COMMERCIAL CODE.

This Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Deed of Trust") is made as of July 31, 2019, among Northwest Investment Holdings, LLC, an Oregon limited liability company,  , as trustor ("Borrower"), whose address is, 3403 Ross Ave, Gig Harbor, WA 98332; Dean S. Kaufman, Attorney at Law, as trustee ("Trustee") whose address is 4710 Village Plaza Loop, Suite 100, Eugene, OR 97401; and PacWest Funding Inc dba Precision Capital, as beneficiary ("Lender"), whose address is 4710 Village Plaza Loop Suite 100, Eugene, OR 97401.

## TRANSFER OF RIGHTS IN THE PROPERTY

To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower irrevocably GRANTS, BARGAINS, SELLS, AND CONVEYS to Trustee the Mortgaged Property, in trust, with power of sale and right of entry, subject only to the Permitted Encumbrances, to have and to hold the Mortgaged Property to Trustee, its successors in trust, and the Trustee's assigns forever, and Borrower does hereby bind itself, its successors, and its assigns to warrant and forever defend the title to the Mortgaged Property to Trustee against anyone lawfully claiming it or any part of it; provided, however, that if the Indebtedness is paid in full as and when it becomes due and payable and the Obligations are performed on or before the date they are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate; otherwise, they shall remain in full force and effect. As additional security for the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower grants to Lender a security interest in the Personalty, Fixtures, Leases, and Rents under the Uniform Commercial Code in effect in the State of Oregon.  Borrower further grants, bargains, conveys, assigns, transfers, and sets over to Trustee, acting as both a trustee and an agent for Lender under this Deed of Trust, a security interest in and to all of Borrower's right, title, and interest in, to, and under the Personalty, Fixtures, Leases, Rents, and Mortgaged Property (to the extent characterized as personal property) to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

Borrower agrees to execute and deliver, from time to time, such further instruments, including, but not limited to, security agreements, assignments, and UCC financing statements, as may be requested by Lender to confirm the lien of this Deed of Trust on any of the Mortgaged Property.

Borrower further irrevocably grants, transfers, and assigns to Lender the Rents. This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property under the Oregon Revised Statutes.

TO MAINTAIN AND PROTECT THE SECURITY OF THIS DEED OF TRUST, TO SECURE THE FULL AND TIMELY PERFORMANCE BY BORROWER OF EACH AND EVERY OBLIGATION, COVENANT, AND AGREEMENT OF BORROWER UNDER THE LOAN DOCUMENTS, AND AS ADDITIONAL CONSIDERATION FOR THE INDEBTEDNESS AND OBLIGATIONS EVIDENCED BY THE LOAN DOCUMENTS, BORROWER HEREBY COVENANTS, REPRESENTS, AND AGREES AS FOLLOWS:

CHICAGO TITLE 472549633462-42

1.2.    "<u>Borrower</u>."   The named Borrower in this Deed of Trust and the obligor under the Note, whether or not named as Borrower in this Deed of Trust, and subject to paragraph 19 and paragraph 20 of this Deed of Trust, the heirs, legatees, devisees, administrators, executors, successors in interest to the Mortgaged Property, and the assigns of any such person.

1.3.    "<u>Default Rate</u>."   The Default Rate as defined in the Note.

1.4.    "<u>Event of Default</u>."   An Event of Default as defined in paragraph 19 of this Deed of Trust.

1.5.    "<u>Environmental Laws</u>."   Any Governmental Requirements pertaining to health, industrial hygiene, or the environment, including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) as amended (42 United States Code ("U.S.C.") §§ 9601-9675); the Resource Conservation and Recovery Act of 1976 (RCRA) (42 U.S.C. §§ 6901-6992k); the Hazardous Materials Transportation Act (49 U.S.C. §§ 5101-5127); the Federal Water Pollution Control Act (33 U.S.C. §§ 1251-1376); the Clean Air Act (42 U.S.C. §§ 7401-7671q); the Toxic Substances Control Act (15 U.S.C. §§ 2601-2692); the Refuse Act (33 U.S.C. §§ 407-426p); the Emergency Planning and Community Right-To-Know Act (42 U.S.C. §§ 11001-11050); the Safe Drinking Water Act (42 U.S.C. §§ 300f-300j); the Federal Hazardous Waste Management Act as regulated by the Oregon Department of Environmental Quality; and, the environmental laws in effect in the State of Oregon as set forth in the Oregon Revised Statutes and the Oregon Administrative Rules.

1.6.    "<u>Fixtures</u>."   All right, title, and interest of Borrower in and to all materials, supplies, equipment, apparatus, and other items now or later attached to, installed on or in the Land or the Improvements, or that in some fashion are deemed to be fixtures to the Land or Improvements under the laws of the State of Oregon, including the Oregon Uniform Commercial Code. "Fixtures" includes, without limitation, all items of Personalty to the extent that they may be deemed Fixtures under Governmental Requirements.

1.7.    "<u>Governmental Authority</u>."   Any and all courts, boards, agencies, commissions, offices, or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city, or otherwise) whether now or later in existence.

1.8.    "<u>Governmental Requirements</u>."   Any and all laws, statutes, codes, ordinances, regulations, enactments, decrees, judgments, and orders of any Governmental Authority.

1.9.    "<u>Hazardous Substance</u>."   Any and all (a) substances defined as "hazardous substances," "hazardous materials," "toxic substances," or "solid waste" in CERCLA, RCRA, and the Hazardous Materials Transportation Act (49 United States Code §§5101-5127), and in the regulations promulgated under those laws; (b) substances defined as "hazardous waste" in ORS § 466.005 and in the rules adopted by the Oregon Environmental Quality Commission and the regulations implemented by the Oregon Department of Environmental Quality; (c) substances listed in the United States Department of Transportation Table (49 Code of Federal Regulations § 172.101 and amendments); (d) substances defined as "infectious waste," "regulated medical waste," "biomedical waste," or "biohazardous waste" in the Oregon Revised Statutes and Oregon Administrative Rules; (f) asbestos-containing materials; (g) polychlorinated biphenyl; (h) underground storage tanks, whether empty, filled, or partially filled with any substance; (i) petroleum and petroleum products, including crude oil or any fraction thereof, natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel, or any such mixture; and (j) such other substances, materials, and wastes that are or become regulated under applicable local, state, or federal law, or that are classified as hazardous or toxic under any Governmental Requirements or that, even if not so regulated, are known to pose a hazard to the health and safety of the occupants of the Mortgaged Property or of real property adjacent to it.

1.10.    "<u>Impositions</u>."   All real estate and personal property taxes, water, gas, sewer, electricity, and other utility rates and charges; charges imposed under any subdivision, planned unit development, or condominium declaration or restrictions; charges for any easement, license, or agreement maintained for the benefit of the Mortgaged Property, and all other taxes, charges, and assessments and any interest, costs, or penalties of any kind and nature that at any time before or after the execution of this Deed of Trust may be assessed, levied, or imposed on the Mortgaged Property or on its ownership, use, occupancy, or enjoyment.

1.11.    "<u>Improvements</u>."   Any and all buildings, structures, improvements, fixtures, and appurtenances now and later placed on the Mortgaged Property, including, without limitation, all apparatus and equipment, whether or not physically affixed to the land or any building, which is used to provide or supply air cooling, air conditioning, heat, gas, water, light, power, refrigeration, ventilation, laundry, drying, dish washing, garbage disposal, or other services; and all elevators, escalators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, partitions, ducts, compressors, plumbing, ovens, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pictures, antennas, pools, spas, pool and spa operation and maintenance equipment and apparatus, and trees and plants located on the Mortgaged Property, all of which, including replacements and additions, shall conclusively be deemed to be affixed to and be part of the Mortgaged

are secured by the terms of this Deed of Trust, including, but not limited to, funds advanced to protect the security or priority of the Deed of Trust; and

1. **Interest Rate.** Any amendment, modification, extension, rearrangement, restatement, renewal, substitution, or replacement of any of the foregoing.

**1.13.** "**Land.**" The real estate or any interest in it described in Exhibit A attached to this Deed of Trust and made a part of it, together with all Improvements and Fixtures and all rights, titles, and interests appurtenant to it.

**1.14.** "**Leases.**" Any and all leases, subleases, licenses, concessions, or other agreements (written or verbal, now or later in effect) that grant a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Mortgaged Property, and all other agreements, including, but not limited to, utility contracts, maintenance agreements, and service contracts that in any way relate to the use, occupancy, operation, maintenance, enjoyment, or ownership of the Mortgaged Property, except any and all leases, subleases, or other agreements under which Borrower is granted a possessory interest in the Land.

**1.15.** "**Legal Requirements.**" Collectively, any and all present and future judicial decisions, statutes, rulings, rules, regulations, permits, certificates, or ordinances of any Governmental Authority in any way applicable to Borrower, any guarantor (with respect to the Indebtedness or the Mortgaged Property), or the Mortgaged Property, including, but not limited to, those concerning its ownership, use, occupancy, possession, operation, maintenance, alteration, repair, or reconstruction, (b) Borrower's or guarantor's presently or subsequently effective bylaws and articles of incorporation, or any instruments establishing any partnership, limited partnership, same), (c) any and all Leases and other contracts (written or oral) of any nature to which Borrower or any guarantor may be bound, and (d) any and all restrictions, reservations, conditions, easements, or other covenants or agreements now or later of record affecting the Mortgaged Property.

**1.16.** "**Lender.**" The named Lender in this Deed of Trust and the owner and holder (including a pledgee) of any Note, Indebtedness, or Obligations secured by this Deed of Trust, whether or not named as Lender in this Deed of Trust, and the heirs, legatees, devisees, administrators, executors, successors, and assigns of any such person.

**1.17.** "**Loan.**" The extension of credit made by Lender to Borrower under the terms of the Loan Documents.

**1.18.** "**Loan Documents.**" Collectively, this Deed of Trust, the Note, and all other instruments and agreements required to be executed by Borrower or any guarantor in connection with the Loan.

**1.19.** "**Riders to the Deed of Trust.**" "Riders" means all riders to this Security Instrument that are executed by the Borrower. The following riders are to be executed by the Borrower (check riders as applicable):

    ( ) PUD
    ( ) CONDOMINIUM

**1.20.** "**Mortgaged Property.**" The Land, Improvements, Fixtures, Personalty, Leases, and Rents located in the City of Portland, County of Multnomah, State of Oregon that is described as follows:

SEE EXHIBIT "A," ATTACHED HERETO AND MADE A PART HEREOF,

commonly known as 3610 SE 141st Ave, Portland, OR 97236 (the "Mortgaged Property");

together with:

1.20.1. All right, title, and interest (including any claim or demand or demand in law or equity) that Borrower now has or may later acquire in or to such Mortgaged Property; all easements, rights, privileges, tenements, hereditaments, and appurtenances belonging or in any way appertaining to the Mortgaged Property; all of the estate, right, title, interest, claim, demand, reversion, or remainder of Borrower in or to the Mortgaged Property, either at law or in equity, in possession or expectancy, now or later acquired; all crops growing or to be grown on the Mortgaged Property; all development rights or credits and air rights; all water and water rights (whether or not appurtenant to the Mortgaged Property) and shares of stock pertaining to such water or water rights, ownership of which affects the Mortgaged Property; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Mortgaged Property and all royalties and profits from any such rights or shares of stock; all right, title, and interest of Borrower in and to any streets, ways, alleys, strips, or gores of land adjoining the Land or any part of it that Borrower now owns or at any time later acquires and all adjacent lands within enclosures or occupied by buildings partly situated on the Mortgaged Property;

1.20.2. All intangible Mortgaged Property and rights relating to the Mortgaged Property or its operation or used in connection with it, including, without limitation, permits, licenses, plans, specifications, construction contracts, subcontracts, bids, deposits for utility services, installations,

1.20.5. All certificates of deposit of Borrower in Lender's possession and all bank accounts of Borrower with Lender and their proceeds, and all deposits of Borrower with any Governmental Authority and/or public utility company that relate to the ownership of the Mortgaged Property;

1.20.6. All Leases of the Mortgaged Property or any part of it now or later entered into and all right, title, and interest of Borrower under such Leases, including cash or securities deposited by the tenants to secure performance of their obligations under such Leases (whether such cash or securities are to be held until the expiration of the terms of such Leases or applied to one or more of the installments of rent coming due immediately before the expiration of such terms), all rights to all insurance proceeds and unearned insurance premiums arising from or relating to the Mortgaged Property, all other rights and easements of Borrower now or later existing pertaining to the use and enjoyment of the Mortgaged Property, and all right, title, and interest of Borrower in and to all declarations of covenants, conditions, and restrictions as may affect or otherwise relate to the Mortgaged Property;

1.20.7. Any and all proceeds of any insurance policies covering the Mortgaged Property, whether or not such insurance policies were required by Lender as a condition of making the loan secured by this Deed of Trust or are required to be maintained by Borrower as provided below in this Deed of Trust; which proceeds are assigned to Lender, and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of such insurance policies from the insurers issuing the same and to give proper receipts and acquittances for such policies, and to apply the same as provided below;

1.20.8. If the Mortgaged Property includes a leasehold estate, all of Borrower's right, title, and interest in and to the lease, more particularly described in Exhibit A attached to this Deed of Trust (the Leasehold) including, without limitation, the right to surrender, terminate, cancel, waive, change, supplement, grant subleases of, alter, or amend the Leasehold;

1.20.9. All plans and specifications for the Improvements; all contracts and subcontracts relating to the Improvements; all deposits (including tenants' security deposits; provided, however, that if Lender acquires possession or control of tenants' security deposits Lender shall use the tenants' security deposits only for such purposes as Governmental Requirements permit), funds, accounts, contract rights, instruments, documents, general intangibles, and notes or chattel paper arising from or in connection with the Land or other Mortgaged Property; all permits, licenses, certificates, and other rights and privileges obtained in connection with the Land or other Mortgaged Property; all soils reports, engineering reports, land planning maps, drawings, construction contracts, notes, drafts, documents, engineering and architectural drawings, letters of credit, bonds, surety bonds, any other intangible rights relating to the Land and Improvements, surveys, and other reports, exhibits, or plans used or to be used in connection with the construction, planning, operation, or maintenance of the Land and Improvements and all amendments and modifications; all proceeds arising from or by virtue of the sale, lease, grant of option, or other disposition of all or any part of the Land, Fixtures, Personalty, or other Mortgaged Property (consent to same is not granted or implied); and all proceeds (including premium refunds) payable or to be payable under each insurance policy relating to the Land, Fixtures, Personalty, or other Mortgaged Property;

1.20.10. All trade names, trademarks, symbols, service marks, and goodwill associated with the Mortgaged Property and any and all state and federal applications and registrations now or later used in connection with the use or operation of the Mortgaged Property;

1.20.11. All tax refunds, bills, notes, inventories, accounts and charges receivable, credits, claims, securities, and documents of all kinds, and all instruments, contract rights, general intangibles, bonds and deposits, and all proceeds and products of the Mortgaged Property;

1.20.12. All money or other personal property of Borrower (including, without limitation, any instrument, deposit account, general intangible, or chattel paper, as defined in the Oregon Uniform Commercial Code) previously or later delivered to, deposited with, or that otherwise comes into Lender's possession;

1.20.13. All accounts, contract rights, chattel paper, documents, instruments, books, records, claims against third parties, money, securities, drafts, notes, proceeds, and other items relating to the Mortgaged Property;

1.20.14. All construction, supply, engineering, and architectural contracts executed and to be executed by Borrower for the construction of the Improvements; and

1.20.15. All proceeds of any of the foregoing.

As used in this Deed of Trust, "Mortgaged Property" is expressly defined as meaning all or, when the context permits or requires, any portion of it and all or, when the context permits or requires, any interest in it.

**1.21.** "<u>Note</u>." The Promissory Note dated July 31, 2019 payable by Borrower to the order of Lender which matures on SEPTEMBER 1, 2022, in the principal amount of FOUR HUNDRED TWENTY THOUSAND AND 00/100 DOLLARS ($420,000), evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments to the Promissory Note.

**1.22.** "<u>Obligations</u>." Any and all of the covenants, warranties, representations, and other obligations (other than to repay the Indebtedness) made or undertaken by Borrower to Lender **EXHIBIT** TWO

charges to Lender whether or not set forth in this Deed of Trust; and charges, as allowed by law, when they are made for any statement regarding the obligations secured by this Deed of Trust.

        The Obligations specifically exclude the Environmental Indemnity Agreement dated the date of this Deed of Trust, executed by Borrower and any guarantor of the Loan, which is not secured by this Deed of Trust.

        **1.23.** "**Permitted Encumbrances**." At any particular time, (a) liens for taxes, assessments, or governmental charges not then due and payable or not then delinquent; (b) liens, easements, encumbrances, and restrictions on the Mortgaged Property that are allowed by Lender to appear in Schedule B, with Parts I and II of an ALTA title policy to be issued to Lender following recordation of the Deed of Trust; and (c) liens in favor of or consented to in writing by Lender.

        **1.24.** "**Person**." Natural persons, corporations, partnerships, unincorporated associations, joint ventures, and any other form of legal entity.

        **1.25.** "**Personalty**." All of the right, title, and interest of Borrower in and to all tangible and intangible personal property, whether now owned or later acquired by Borrower, including, but not limited to, water rights (to the extent they may constitute personal property), all equipment, inventory, goods, consumer goods, accounts, chattel paper, instruments, money, general intangibles, letter-of-credit rights, deposit accounts, investment property, documents, minerals, crops, and timber (as those terms are defined in the Oregon Uniform Commercial Code) and that are now or at any later time located on, attached to, installed, placed, used on, in connection with, or are required for such attachment, installation, placement, or use on the Land, the Improvements, Fixtures, or on other goods located on the Land or Improvements, together with all additions, accessions, accessories, amendments, modifications to the Land or Improvements, extensions, renewals, and enlargements and proceeds of the Land or Improvements, substitutions for, and income and profits from, the Land or Improvements. The Personalty includes, but is not limited to, all goods, machinery, tools, equipment (including fire sprinklers and alarm systems); building materials, air conditioning, heating, refrigerating, electronic monitoring, entertainment, recreational, maintenance, extermination of vermin or insects, dust removal, refuse and garbage equipment; vehicle maintenance and repair equipment; office furniture (including tables, chairs, planters, desks, sofas, shelves, lockers, and cabinets); safes, furnishings, appliances (including ice-making machines, refrigerators, fans, water heaters, and incinerators); rugs, carpets, other floor coverings, draperies, drapery rods and brackets, awnings, window shades, venetian blinds, curtains, other window coverings; lamps, chandeliers, other lighting fixtures; office maintenance and other supplies; loan commitments, financing arrangements, bonds, construction contracts, leases, tenants' security deposits, licenses, permits, sales contracts, option contracts, lease contracts, insurance policies, proceeds from policies, plans, specifications, surveys, books, records, funds, bank deposits; and all other intangible personal property. Personalty also includes any other portion or items of the Mortgaged Property that constitute personal property under the Oregon Uniform Commercial Code.

        **1.26.** "**Rents**." All rents, issues, revenues, income, proceeds, royalties, profits, license fees, prepaid municipal and utility fees, bonds, and other benefits to which Borrower or the record title owner of the Mortgaged Property may now or later be entitled from or which are derived from the Mortgaged Property, including, without limitation, sale proceeds of the Mortgaged Property; any room or space sales or rentals from the Mortgaged Property; and other benefits paid or payable for using, leasing, licensing, possessing, operating from or in, residing in, selling, mining, extracting, or otherwise enjoying or using the Mortgaged Property.

        **1.27.** "**Water Rights**." All water rights of whatever kind or character, surface or underground, appropriative, decreed, or vested, that are appurtenant to the Mortgaged Property or otherwise used or useful in connection with the intended development of the Mortgaged Property.

        Any terms not otherwise defined in this Deed of Trust shall have the meaning given them in the Note dated of even date herewith between Borrower and Lender.

        **2.**    **Repair and Maintenance of Mortgaged Property.** Borrower shall (a) keep the Mortgaged Property in good condition and repair; (b) not substantially alter, remove, or demolish the Mortgaged Property or any of the Improvements except when incident to the replacement of Fixtures, equipment, machinery, or appliances with items of like kind; (c) restore and repair to the equivalent of its original condition all or any part of the Mortgaged Property that may be damaged or destroyed, including, but not limited to, damage from termites and dry rot, soil subsidence, and construction defects, whether or not insurance proceeds are available to cover any part of the cost of such restoration and repair, and regardless of whether Lender permits the use of any insurance proceeds to be used for restoration under paragraph 5 of this Deed of Trust; (d) pay when due all claims for labor performed and materials furnished in connection with the Mortgaged Property and not permit any mechanics' or materialman's lien to arise against the Mortgaged Property or furnish a loss or liability bond against such mechanics' or materialman's lien claims; (e) comply with all laws affecting the Mortgaged Property or requiring that any alterations, repairs, replacements, or improvements be made on it; (f) not commit or permit waste on or to the Mortgaged Property, or commit, suffer, or permit any act or violation of law to occur on it; (g) not abandon the Mortgaged Property; (h) cultivate, irrigate, fertilize, fumigate, and prune in accordance with pr̲u̲d̲e̲n̲t̲

Trust, as specified in the loan application and the Loan Documents. Borrower shall not initiate or acquiesce in a change in the zoning classification of the Mortgaged Property without Lender's prior written consent.

**4.      Insurance.**

    **4.1.      Casualty Insurance.** Borrower shall at all times keep the Mortgaged Property insured for the benefit of Trustee and Lender as follows, despite Governmental Requirements that may detrimentally affect Borrower's ability to obtain or may materially increase the cost of such insurance coverage:

        4.1.1.  Against damage or loss by fire and such other hazards (including lightning, windstorm, hail, explosion, riot, acts of striking employees, civil commotion, vandalism, malicious mischief, aircraft, vehicle, and smoke) as are covered by the broadest form of extended coverage endorsement available from time to time, in an amount not less than the full insurable value (as defined in paragraph 4.9 of the Mortgaged Property, with a deductible amount not to exceed an amount satisfactory to Lender;

        4.1.2.  Rent loss or business interruption or use and occupancy insurance on such basis and in such amounts and with such deductibles as are satisfactory to Lender;

        4.1.3.  Against damage or loss by flood if the Land is located in an area identified by the Secretary of Housing and Urban Development or any successor or other appropriate authority (governmental or private) as an area having special flood hazards and in which flood insurance is available under the National Flood Insurance Act of 1968 or the Flood Disaster Protection Act of 1973, as amended, modified, supplemented, or replaced from time to time, on such basis and in such amounts as Lender may require;

        4.1.4.  Against damage or loss from (a) sprinkler system leakage and (b) boilers, boiler tanks, heating and air conditioning equipment, pressure vessels, auxiliary piping, and similar apparatus, on such basis and in such amounts as Lender may require;

        4.1.5.  During any alteration, construction, or replacement of the Improvements, or any substantial portion of it, a Builder's All Risk policy with extended coverage with course of construction and completed value endorsements, for an amount at least equal to the full insurable value of the Improvements, and workers' compensation, in statutory amounts, with provision for replacement with the coverage described in paragraph 4.1, without gaps or lapsed coverage, for any completed portion of the Improvements; and

        4.1.6.  Against damage or loss by earthquake, in an amount and with a deductible satisfactory to Lender, if such insurance is required by Lender in the exercise of its business judgment in light of the commercial real estate practices existing at the time the insurance is issued and in the County where the Land is located.

    **4.2.      Liability Insurance.** For Commercial Real Estate or Construction, Borrower shall procure and maintain workers' compensation insurance for Borrower's employees and comprehensive general liability insurance covering, as applicable, Borrower, Trustee, and Lender against claims for bodily injury or death or for damage occurring in, on, about, or resulting from the Mortgaged Property, or any street, drive, sidewalk, curb, or passageway adjacent to it, in standard form and with such insurance company or companies and in an amount approved by Lender, which insurance shall include completed operations, product liability, and blanket contractual liability coverage that insures contractual liability under the indemnifications set forth in this Deed of Trust and the Loan Documents (but such coverage or its amount shall in no way limit such indemnification).

    **4.3.      Other Insurance.** Borrower shall procure and maintain such other insurance or such additional amounts of insurance, covering Borrower or the Mortgaged Property, as (a) may be required by the terms of any construction contract for the Improvements or by any Governmental Authority, (b) may be specified in any other Loan Documents, or (c) may be required by Lender from time to time.

    **4.4.      Form of Policies.** All insurance required under this paragraph 4 shall be fully paid for and nonassessable. The policies shall contain such provisions, endorsements, and expiration dates as Lender from time to time reasonably requests and shall be in such form and amounts, and be issued by such insurance companies doing business in the State of Oregon, as Lender shall approve in Lender's sole and absolute discretion. Unless otherwise expressly approved in writing by Lender, each insurer shall have a Best Rating of Class A, Category VIII, or better. All policies shall (a) contain a waiver of subrogation endorsement; (b) provide that the policy will not lapse or be canceled, amended, or materially altered (including by reduction in the scope or limits of coverage) without at least 30 days prior written notice to Lender; (c) with the exception of the comprehensive general liability policy, contain a mortgagee's endorsement (438 BFU Endorsement or equivalent), and name Lender and Trustee as insureds; and (d) include such deductibles as Lender may approve. If a policy required under this paragraph contains a co-insurance or overage clause, the policy shall include a stipulated value or agreed amount endorsement acceptable to Lender.

    **4.5.      Duplicate Originals or Certificates.** Duplicate original policies evidencing the insurance required under this paragraph 4 and any additional insurance that may be purchased on the Mortgaged Property by or on behalf of Borrower shall be deposited with and held by Lender **EXHIBIT TWO**

written notice from Lender, procure such additional coverage as Lender may require in Lender's sole and absolute discretion.

**4.7.** **No Separate Insurance.** Borrower shall not carry separate or additional insurance concurrent in form or contributing in the event of loss with that required under this paragraph 4 unless endorsed in favor of Trustee and Lender as required by this paragraph and otherwise approved by Lender in all respects.

**4.8.** **Transfer of Title.** In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Mortgaged Property in extinguishment, in whole or in part, of the Obligations and the Indebtedness, all right, title, and interest of Borrower in and to all insurance policies required under this paragraph 4 or otherwise then in force with respect to the Mortgaged Property and all proceeds payable under, and unearned premiums on, such policies shall immediately vest in the purchaser or other transferee of the Mortgaged Property.

**4.9.** **Replacement Cost.** For purposes of this paragraph 4, the term "full insurable value" means the actual cost of replacing the Mortgaged Property in question, without allowance for depreciation, as calculated from time to time (but not more often than once every calendar year) by the insurance company or companies holding such insurance or, at Lender's request, by appraisal made by an appraiser, engineer, architect, or contractor proposed by Borrower and approved by said insurance company or companies and Lender. Borrower shall pay the cost of such appraisal.

**4.10.** **Approval Not Warranty.** No approval by Lender of any insurer may be construed to be a representation, certification, or warranty of its solvency and no approval by Lender as to the amount, type, or form of any insurance may be construed to be a representation, certification, or warranty of its sufficiency.

**4.11.** **Lender's Right to Obtain.** Borrower shall deliver to Lender original policies or certificates evidencing such insurance at least 30 days before the existing policies expire. If any such policy is not so delivered to Lender or if any such policy is canceled, whether or not Lender has the policy in its possession, and no reinstatement or replacement policy is received before termination of insurance, Lender, without notice to or demand on Borrower, may (but is not obligated to) obtain such insurance insuring only Lender and Trustee with such company as Lender may deem satisfactory, and pay the premium for such policies, and the amount of any premium so paid shall be charged to and promptly paid by Borrower or, at Lender's option, may be added to the Indebtedness. Borrower acknowledges that, if Lender obtains insurance, it is for the sole benefit of Lender and Trustee, and Borrower shall not rely on any insurance obtained by Lender to protect Borrower in any way.

**4.12.** **Duty to Restore After Casualty.** If any act or occurrence of any kind or nature (including any casualty for which insurance was not obtained or obtainable) results in damage to or loss or destruction of the Mortgaged Property, Borrower shall immediately give notice of such loss or damage to Lender and, if Lender so instructs, shall promptly, at Borrower's sole cost and expense, regardless of whether any insurance proceeds will be sufficient for the purpose, commence and continue diligently to completion to restore, repair, replace, and rebuild the Mortgaged Property as nearly as possible to its value, condition, and character immediately before the damage, loss, or destruction.

**5.** **Condemnation and Insurance Proceeds.**

**5.1.** **Assignment to Lender.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of or damage or injury to the Mortgaged Property, or any part of it, or for conveyance in lieu of condemnation, are assigned to and shall be paid to Lender, regardless of whether Lender's security is impaired. All causes of action, whether accrued before or after the date of this Deed of Trust, of all types for damages or injury to the Mortgaged Property or any part of it, or in connection with any transaction financed by funds lent to Borrower by Lender and secured by this Deed of Trust, or in connection with or affecting the Mortgaged Property or any part of it, including, without limitation, causes of action arising in tort or contract or in equity, are assigned to Lender as additional security, and the proceeds shall be paid to Lender. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of such action. Borrower shall notify Lender in writing immediately on obtaining knowledge of any casualty damage to the Mortgaged Property or damage in any other manner in excess of $5,000.00 or knowledge of the institution of any proceeding relating to condemnation or other taking of or damage or injury to all or any portion of the Mortgaged Property. Lender, in its sole and absolute discretion, may participate in any such proceedings and may join Borrower in adjusting any loss covered by insurance. Borrower covenants and agrees with Lender, at Lender's request, to make, execute, and deliver, at Borrower's expense, any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award or awards, causes of action, or claims of damages or proceeds to Lender free, clear, and discharged of any and all encumbrances of any kind or nature.

**5.2.** **Insurance Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Lender may become entitled with respect to the Mortgaged Property if any damage or injury occurs to the Mortgaged Property, other than by a partial condemnation or other partial taking of the Mortgaged Property, shall be **EXHIBIT TWO**

construction and completion of restoration and rebuilding of the Mortgaged Property shall be completed in accordance with plans and specifications and drawings submitted to Lender within 30 days after receipt by Lender of the restoration plan and thereafter approved by Lender, which plans, specifications, and drawings shall not be substantially modified, changed, or revised without Lender's prior written consent; (f) within 3 months after such damage, Borrower and a licensed contractor satisfactory to Lender enter into a fixed price or guaranteed maximum price contract satisfactory to Lender, providing for complete restoration in accordance with such restoration plan for an amount not to exceed the amount of funds held or to be held by Lender; (g) all restoration of the Improvements so damaged or destroyed shall be made with reasonable promptness and shall be of a value at least equal to the value of the Improvements so damaged or destroyed before such damage or destruction; (h) Lender reasonably determines that there is an identified source (whether from income from the Mortgaged Property, rental loss insurance, or another source) sufficient to pay all debt service and operating expenses of the Mortgaged Property during its restoration as required above; and (i) any and all funds that are made available for restoration and rebuilding under this paragraph 5 shall be disbursed, at Lender's sole and absolute discretion to Lender, through Lender, the Trustee, or a title insurance or trust company satisfactory to Lender, in accordance with standard construction lending practices, including a reasonable fee payable to Lender from such funds and, if Lender requests, mechanics' lien waivers and title insurance date-downs, and the provision of payment and performance bonds by Borrower, or in any other manner approved by Lender in Lender's sole and absolute discretion; or

    5.2.2.  If fewer than all conditions (a) through (i) in paragraph 5.2.1 are satisfied, then such payments shall be applied in the sole and absolute discretion of Lender (a) to the payment or prepayment, with any applicable prepayment premium, of any Indebtedness secured by this Deed of Trust in such order as Lender may determine, or (b) to the reimbursement of Borrower's expenses incurred in the rebuilding and restoration of the Mortgaged Property. If Lender elects under this paragraph 5.2.2 to make any funds available to restore the Mortgaged Property, then all of conditions (a) through (i) in paragraph 5.2.1 shall apply, except for such conditions that Lender, in its sole and absolute discretion, may waive.

    **5.3.**  **Material Loss Not Covered.**  If any material part of the Mortgaged Property is damaged or destroyed and the loss, measured by the replacement cost of the Improvements according to then current Governmental Requirements, is not adequately covered by insurance proceeds collected or in the process of collection, Borrower shall deposit with Lender, within 30 days after Lender's request, the amount of the loss not so covered.

    **5.4.**  **Total Condemnation Payments.**  All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a total condemnation or other total taking of the Mortgaged Property shall be paid over to Lender and shall be applied first to reimbursement of all Lender's costs and expenses in connection with their recovery, and shall then be applied to the payment of any Indebtedness secured by this Deed of Trust in such order as Lender may determine, until the Indebtedness secured by this Deed of Trust has been paid and satisfied in full. Any surplus remaining after payment and satisfaction of the Indebtedness secured by this Deed of Trust shall be paid to Borrower as its interest may then appear.

    **5.5.**  **Partial Condemnation Payments.**  All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments ("funds") that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a partial condemnation or other partial taking of the Mortgaged Property, unless Borrower and Lender otherwise agree in writing, shall be divided into two portions, one equal to the principal balance of the Note at the time of receipt of such funds and the other equal to the amount by which such funds exceed the principal balance of the Note at the time of receipt of such funds.  The first such portion shall be applied to the sums secured by this Deed of Trust, whether or not then due, including but not limited to principal, accrued interest, and advances, and in such order or combination as Lender may determine, with the balance of the funds paid to Borrower.  Any dispute as to the fair market value of the Mortgaged Property shall be settled by arbitration in accordance with the Real Estate Valuation Arbitration Rules of the American Arbitration Association.

    **5.6.**  **No Cure or Waiver of Default.** Any application of such amounts or any portion of it to any Indebtedness secured by this Deed of Trust shall not be construed to cure or waive any default or notice of default under this Deed of Trust or invalidate any act done under any such default or notice.

    **6.**  **Taxes and Other Sums Due.**  Borrower shall promptly pay, satisfy, and discharge: (a) all Impositions affecting the Mortgaged Property before they become delinquent; (b) such other amounts, chargeable against Borrower or the Mortgaged Property, as Lender reasonably deems necessary to protect and preserve the Mortgaged Property, this Deed of Trust, or Lender's security for the performance of the Obligations; (c) all encumbrances, charges, and liens on the Mortgaged Property, with interest, which in Lender's judgment are, or appear to be, prior or superior to the lien of this Deed of Trust or all costs necessary to obtain protection against such lien or charge by title insurance endorsement or surety company bond; (d) such other charges as Lender deems reasonable for services rendered by Lender at Borrower's request; and (e) all costs, fees, and expenses incurred by Lender in connection with this Deed

7.    **Leases of Mortgaged Property by Borrower.**  At Lender's request, Borrower shall furnish Lender with executed copies of all Leases of the Mortgaged Property or any portion of it then in force. If Lender so requires, all Leases later entered into by Borrower are subject to Lender's prior review and approval and must be acceptable to Lender in form and content.  Each Lease must specifically provide, inter alia, that (a) it is subordinate to the lien of this Deed of Trust; (b) the tenant attorns to Lender (and Borrower consents to any such attornment), such attornment to be effective on Lender's acquisition of title to the Mortgaged Property; (c) the tenant agrees to execute such further evidence of attornment as Lender may from time to time request; (d) the tenant's attornment shall not be terminated by foreclosure; and (e) Lender, at Lender's option, may accept or reject such attornment. If Borrower learns that any tenant proposes to do, or is doing, any act that may give rise to any right of setoff against rent, Borrower shall immediately (i) take measures reasonably calculated to prevent the accrual of any such right of setoff; (ii) notify Lender of all measures so taken and of the amount of any setoff claimed by any such tenant; and (iii) within 10 days after the accrual of any right of setoff against rent, reimburse any tenant who has acquired such right, in full, or take other measures that will effectively discharge such setoff and ensure that rents subsequently due shall continue to be payable without claim of setoff or deduction.

At Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all Leases of the Mortgaged Property, and all security deposits made by tenants in connection with such Leases. On assignment to Lender of any such Lease, Lender shall succeed to all rights and powers of Borrower with respect to such Lease, and Lender, in Lender's sole and absolute discretion, shall have the right to modify, extend, or terminate such Lease and to execute other further leases with respect to the Mortgaged Property that is the subject of such assigned Lease.

Neither Borrower, tenant nor any other occupant of the Mortgaged Property shall use the Mortgaged Property, except in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations; nor shall Borrower, tenant or any other occupant cause the Mortgaged Property to become subject to any use that is not in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations.

If Borrower suspects any tenant or other occupant of the Mortgaged Property is using the Mortgaged Property in a manner that is not in compliance with any Governmental Requirement to which Borrower, tenant, or any other occupant of the Mortgaged Property is subject, Borrower shall immediately take appropriate action to remedy the violation, and shall notify Lender of any potential violation within one (1) day of discovery of any such potential violation. In accordance with section 19.13 below, any potential violation by a tenant or any other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Note and this Deed of Trust, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in Section 21.

8.    **Right to Collect and Receive Rents.**  Despite any other provision of this Deed of Trust, Lender grants permission to Borrower to collect and retain the Rents of the Mortgaged Property as they become due and payable; however, such permission to Borrower shall be automatically revoked on default by Borrower in payment of any Indebtedness secured by this Deed of Trust or in the performance of any of the Obligations, and Lender shall have the rights set forth in the Revised Code of Oregon regardless of whether declaration of default has been delivered to Trustee as provided in  paragraph 21 of this Deed of Trust, and without regard to the adequacy of the security for the Indebtedness secured by this Deed of Trust. Failure of or discontinuance by Lender at any time, or from time to time, to collect any such Rents shall not in any manner affect the subsequent enforcement by Lender at any time, or from time to time, of the right, power, and authority to collect these Rents. The receipt and application by Lender of all such Rents under this Deed of Trust, after execution and delivery of declaration of default and demand for sale as provided in this Deed of Trust or during the pendency of trustee's sale proceedings under this Deed of Trust, shall neither cure such breach or default nor affect such sale proceedings, or any sale made under them, but such Rents, less all costs of operation, maintenance, collection, and Attorney Fees, when received by Lender, may be applied in reduction of the entire Indebtedness from time to time secured by this Deed of Trust, in such order as Lender may decide. Nothing in this Deed of Trust, nor the exercise of Lender's right to collect, nor an assumption by Lender of any tenancy, lease, or option, nor an assumption of liability under, nor a subordination of the lien or charge of this Deed of Trust to, any such tenancy, lease, or option, shall be, or be construed to be, an affirmation by Lender of any tenancy, lease, or option.

If the Rents of the Mortgaged Property are not sufficient to meet the costs, if any, of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an Indebtedness of Borrower to Lender secured by this Deed of Trust. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable on notice from Lender to Borrower requesting such payment and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to Governmental Requirements, in which event the amounts shall bear interest at the highest rate that may be collected from Borrower under Governmental Requirements.

possession or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it.

During an Event of Default, any and all Rents collected or received by Borrower shall be accepted and held for Lender in trust and shall not be commingled with Borrower's funds and property, but shall be promptly paid over to Lender.

9.     **Funds for Taxes and Insurance.**  If Borrower is in default under this Deed of Trust or any of the Loan Documents, regardless of whether the default has been cured, then Lender may at any subsequent time, at its option to be exercised on 30 days written notice to Borrower, require Borrower to deposit with Lender or its designee, at the time of each payment of an installment of interest or principal under the Note, an additional amount sufficient to discharge the obligations of Borrower under the Note and this Deed of Trust as they become due.  The calculation of the amount payable and of the fractional part of it to be deposited with Lender shall be made by Lender in its sole and absolute discretion.  These amounts shall be held by Lender or its designee not in trust and not as agent of Borrower and shall not bear interest, and shall be applied to the payment of any of the Obligations under the Loan Documents in such order or priority as Lender shall determine. If at any time within 30 days before the due date of these obligations the amounts then on deposit shall be insufficient to pay the obligations under the Note and this Deed of Trust in full, Borrower shall deposit the amount of the deficiency with Lender within 10 days after Lender's demand. If the amounts deposited are in excess of the actual obligations for which they were deposited, Lender may refund any such excess, or, at its option, may hold the excess in a reserve account, not in trust and not bearing interest, and reduce proportionately the required monthly deposits for the ensuing year. Nothing in this paragraph shall be deemed to affect any right or remedy of Lender under any other provision of this Deed of Trust or under any statute or rule of law to pay any such amount and to add the amount so paid to the Indebtedness secured by this Deed of Trust.  Lender shall have no obligation to pay insurance premiums or taxes except to the extent the fund established under this paragraph is sufficient to pay such premiums or taxes, to obtain insurance, or to notify Borrower of any matters relative to the insurance or taxes for which the fund is established under this paragraph.

Lender or its designee shall hold all amounts so deposited as additional security for the sums secured by this Deed of Trust. Lender may, in its sole and absolute discretion and without regard to the adequacy of its security under this Deed of Trust, apply such amounts or any portion of it to any Indebtedness secured by this Deed of Trust, and such application shall not be construed to cure or waive any default or notice of default under this Deed of Trust.

If Lender requires deposits to be made under this paragraph 9, Borrower shall deliver to Lender all tax bills, bond and assessment statements, statements for insurance premiums, and statements for any other obligations referred to above as soon as Borrower receives such documents.

If Lender sells or assigns this Deed of Trust, Lender shall have the right to transfer all amounts deposited under this paragraph 9 to the purchaser or assignee. After such a transfer, Lender shall be relieved and have no further liability under this Deed of Trust for the application of such deposits, and Borrower shall look solely to such purchaser or assignee for such application and for all responsibility relating to such deposits.

10.     **Assignment of Causes of Action, Awards, and Damages.**  All causes of action, and all sums due or payable to Borrower for injury or damage to the Mortgaged Property, or as damages incurred in connection with the transactions in which the Loan secured by this Deed of Trust was made, including, without limitation, causes of action and damages for breach of contract, fraud, concealment, construction defects, or other torts, or compensation for any conveyance in lieu of condemnation, are assigned to Lender, and all proceeds from such causes of action and all such sums shall be paid to Lender for credit against the Indebtedness secured by this Deed of Trust. Borrower shall notify Lender immediately on receipt by Borrower of notice that any such sums have become due or payable and, immediately on receipt of any such sums, shall promptly remit such sums to Lender.

After deducting all expenses, including Attorney Fees, incurred by Lender in recovering or collecting any sums under this paragraph 10, Lender may apply or release the balance of any funds received by it under this paragraph, or any part of such balance, as it elects. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any cause of action assigned to it under this paragraph and may make any compromise or settlement in such action whatsoever. Borrower covenants that it shall execute and deliver to Lender such further assignments of any such compensation awards, damages, or causes of action as Lender may request from time to time. If Lender fails or does not elect to prosecute any such action or proceeding and Borrower elects to do so, Borrower may conduct the action or proceeding at its own expense and risk.

11.     **Defense of Deed of Trust; Litigation.**  Borrower shall give Lender immediate written notice of any action or proceeding (including, without limitation, any judicial, whether civil, criminal, or probate, or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Deed of Trust, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents. Despite any other provision of this Deed of Trust, Borrower agrees that Lender

Lender or Trustee in the Mortgaged Property is directly questioned in such action or proceeding, including, without limitation, any action for the condemnation or partition of all or any portion of the Mortgaged Property and any action brought by Lender to foreclose this Deed of Trust or to enforce any of its terms or provisions.

12.    **Borrower's Failure to Comply With Deed of Trust.** If Borrower fails to make any payment or do any act required by this Deed of Trust, or if there is any action or proceeding (including, without limitation, any judicial or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Deed of Trust, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Note or this Deed of Trust, Lender or Trustee may (but is not obligated to) (a) make any such payment or do any such act in such manner and to such extent as either deems necessary to preserve or protect the Mortgaged Property, this Deed of Trust, or Lender's security for the performance of Borrower's Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, Lender and Trustee being authorized to enter on the Mortgaged Property for any such purpose; and (b) in exercising any such power, pay necessary expenses, retain attorneys, and pay Attorney Fees incurred in connection with such action, without notice to or demand on Borrower and without releasing Borrower from any Obligations or Indebtedness.

13.    **Sums Advanced to Bear Interest and to Be Secured by Deed of Trust.** At Lender's request, Borrower shall immediately pay any sums advanced or paid by Lender or Trustee under any provision of this Deed of Trust or the other Loan Documents. Until so repaid, all such sums and all other sums payable to Lender or Trustee shall be added to, and become a part of, the Indebtedness secured by this Deed of Trust and bear interest from the date of advancement or payment by Lender or Trustee at the same rate as provided in the Note, unless payment of interest at such rate would be contrary to Governmental Requirements. All sums advanced by Lender under this Deed of Trust or the other Loan Documents, whether or not required to be advanced by Lender under the terms of this Deed of Trust or the other Loan Documents, shall conclusively be deemed to be mandatory advances required to preserve and protect this Deed of Trust and Lender's security for the performance of the Obligations and payment of the Indebtedness, and shall be secured by this Deed of Trust to the same extent and with the same priority as the principal and interest payable under the Note.

14.    **Inspection of Mortgaged Property.** Lender may make, or authorize other persons, including, but not limited to, appraisers and prospective purchasers at any foreclosure sale commenced by Lender, to enter on or inspect the Mortgaged Property at reasonable times and for reasonable durations. Borrower shall permit all such entries and inspections to be made as long as Lender has given Borrower written notice of such inspection at least 24 hours before the entry and inspection.

15.    **Financial Statements; Estoppel Certificates.**

    15.1.    **Borrower's Financial Statements.** On receipt of Lender's written request and without expense to Lender, Borrower shall furnish to Lender (a) an annual statement of the operation of the Mortgaged Property prepared and certified by Borrower, showing in reasonable detail satisfactory to Lender total Rents received and total expenses together with an annual balance sheet and profit and loss statement, within 90 days after the close of each fiscal year of Borrower, beginning with the fiscal year first ending after the date of recordation of this Deed of Trust; (b) within 30 days after the end of each calendar quarter (March 31, June 30, September 30, December 31) interim statements of the operation of the Mortgaged Property showing in reasonable detail satisfactory to Lender total Rents and other income and receipts received and total expenses for the previous quarter, certified by Borrower; and (c) copies of Borrower's annual state and federal income tax returns within 30 days after filing them. Borrower shall keep accurate books and records, and allow Lender, its representatives and agents, on notice, at any time during normal business hours, access to such books and records regarding acquisition, construction, and development of the Mortgaged Property, including any supporting or related vouchers or papers, shall allow Lender to make extracts or copies of any such papers, and shall furnish to Lender and its agents convenient facilities for the audit of any such statements, books, and records.

    15.2.    **Recordkeeping.** Borrower shall keep adequate records and books of account in accordance with generally accepted accounting principles and practices and shall permit Lender, by its agents, accountants, and attorneys, to examine Borrower's records and books of account and to discuss the affairs, finances, and accounts of Borrower with the officers of Borrower, at such reasonable times as Lender may request.

    15.3.    **Guarantors' Financial Statements.** Except to the extent already required by paragraph 15.1, Borrower, its controlling shareholders, and all guarantors of the Indebtedness, if any, shall deliver to Lender with reasonable promptness after the close of their respective fiscal years a balance sheet and profit and loss statement, prepared by an independent certified public accountant satisfactory to Lender, setting forth in each case, in comparative form, figures for the preceding year, which statements shall be accompanied by the unqualified opinion of such accountant as to their accuracy. Throughout the term of this Deed of Trust, Borrower and any guarantor shall deliver, with reasonable promptness, to Lender such other information with respect to Borrower or guarantor as Lender may from time to time request.

Documents are unmodified and in full force and effect, or that the Loan Documents are in full force and effect as modified and specifying all modifications asserted by Borrower. Such certificate shall also recite the amount of the Indebtedness and cover other matters with respect to the Indebtedness or Obligations as Lender may reasonably require, the date(s) through which payments due on the Indebtedness have been paid and the amount(s) of any payments previously made on the Indebtedness. The certificate shall include a detailed statement of any right of setoff, counterclaim, or other defense that Borrower contends exists against the Indebtedness or the Obligations; a statement that such person knows of no Event of Default or prospective Event of Default that has occurred and is continuing, or, if any Event of Default or prospective Event of Default has occurred and is continuing, a statement specifying the nature and period of its existence and what action Borrower has taken or proposes to take with respect to such matter; and, except as otherwise specified, a statement that Borrower has fulfilled all Obligations that are required to be fulfilled on or before the date of such certificate.

     **15.5.**   **Failure to Deliver Estoppel Certificate.** If Borrower fails to execute and deliver the certificate required by paragraph 15.4 within such 10-day period, (a) the Loan Documents shall, as to Borrower, conclusively be deemed to be either in full force and effect, without modification, or in full force and effect, modified in the manner and to the extent specified by Lender, whichever Lender reasonably and in good faith may represent; (b) the Indebtedness shall, as to Borrower, conclusively be deemed to be in the amount specified by Lender and no setoffs, counterclaims, or other defenses exist against the Indebtedness; and (c) Borrower shall conclusively be deemed to have irrevocably constituted and appointed Lender as Borrower's special attorney-in-fact to execute and deliver such certificate to any third party.

     **15.6.**   **Reliance on Estoppel Certificate.** Borrower and Lender expressly agree that any certificate executed and delivered by Borrower, or any representation in lieu of a certificate made by Lender under paragraph 15.5, may be relied on by any prospective purchaser or any prospective assignee of any interest of Lender in the Note and other Indebtedness secured by this Deed of Trust or in the Mortgaged Property, and by any other person, without independent investigation or examination, to verify the accuracy, reasonableness, or good faith of the recitals in the certificate or representation.

     **15.7.**   **No Waiver of Default or Rights.** Lender's exercise of any right or remedy provided by this paragraph 15 shall not constitute a waiver of, or operate to cure, any default by Borrower under this Deed of Trust, or preclude any other right or remedy that is otherwise available to Lender under this Deed of Trust or Governmental Requirements.

**16.**   **Uniform Commercial Code Security Agreement.** This Deed of Trust is intended to be and shall constitute a security agreement under the Oregon Uniform Commercial Code for any of the Personalty specified as part of the Mortgaged Property that, under Governmental Requirements, may be subject to a security interest under the Oregon Uniform Commercial Code, and Borrower grants to Lender a security interest in those items. Borrower authorizes Lender to file financing statements in all states, counties, and other jurisdictions as Lender may elect, without Borrower's signature if permitted by law. Borrower agrees that Lender may file this Deed of Trust, or a copy of it, in the real estate records or other appropriate index or in the Office of the Secretary of State of the State of Oregon and such other states as the Lender may elect, as a financing statement for any of the items specified above as part of the Mortgaged Property. Any reproduction of this Deed of Trust or executed duplicate original of this Deed of Trust, or a copy certified by a County Recorder in the State of Oregon, or of any other security agreement or financing statement, shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, at Lender's request, any UCC financing statements, as well as any extensions, renewals, and amendments, and copies of this Deed of Trust in such form as Lender may require to perfect a security interest with respect to the Personalty. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created any other security interest in the items, including any replacements and additions.

     On any Event of Default, Lender shall have the remedies of a secured party under the Oregon Uniform Commercial Code and, at Lender's option, may also invoke the remedies in paragraph 21 of this Deed of Trust as to such items. In exercising any of these remedies, Lender may proceed against the items of Mortgaged Property and any items of Personalty separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Oregon Uniform Commercial Code or of the remedies in paragraph 21 of this Deed of Trust.

**17.**   **Fixture Filing.** This Deed of Trust constitutes a financing statement filed as a fixture filing under ORS § 79.0502, as amended or recodified from time to time, covering any portion of the Mortgaged Property that now is or later may become a fixture attached to the Mortgaged Property or to any Improvement.

**18.**   **Waiver of Statute of Limitations.** Borrower waives the right to assert any statute of limitations as a defense to the Loan Documents and the Obligations secured by this Deed of Trust, to the fullest extent permitted by Governmental Requirements.

**19.**   **Events of Default.** The term Event of Default as used in this Deed of Trust means the occurrence

action, such as being bonded, or is not otherwise satisfied or disposed of to Lender's satisfaction within 30 days after entry of the judgment, order, or decree.

**19.4.    Voluntary Bankruptcy.** If Borrower or any guarantor (a) seeks entry of an order for relief as a debtor in a proceeding under the Bankruptcy Code; (b) seeks, consents to, or does not contest the appointment of a receiver or trustee for itself or for all or any part of its property; (c) files a petition seeking relief under the bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or any other competent jurisdiction; (d) makes a general assignment for the benefit of its creditors; or (e) states in writing its inability to pay its debts as they mature.

**19.5.    Involuntary Bankruptcy.** If (a) a petition is filed against Borrower or any guarantor seeking relief under any bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or other competent jurisdiction; or (b) a court of competent jurisdiction enters an order, judgment, or decree appointing, without the consent of Borrower or any guarantor, a receiver or trustee for it, or for all or any part of its property; and (c) such petition, order, judgment, or decree is not discharged or stayed within 30 days after its entry.

**19.6.    Foreclosure of Other Liens.** If the holder of any lien or security interest on the Mortgaged Property (without implying Lender's consent to the existence, placing, creating, or permitting of any lien or security interest) institutes foreclosure or other proceedings to enforce its remedies thereunder and any such proceedings are not stayed or discharged within 30 days after institution of such foreclosure proceedings.

**19.7.    Sale, Lease, Encumbrance, or Other Transfer.** Any sale, lease, exchange, assignment, conveyance, encumbrance (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of this Deed of Trust) (other than a Permitted Encumbrance), transfer of possession, or other disposition of all or any portion of the Land or Improvements or any of Borrower's interest in the Land or Improvement without Lender's prior written consent, or any sale, lease, exchange, assignment, conveyance, encumbrance (other than a Permitted Encumbrance), or other disposition of any portion of the Personalty, without Lender's prior written consent.

**19.8.    Title and Lien Priority.** If Borrower's title to any or all of the Mortgaged Property or the status of this Deed of Trust as a first and prior lien and security interest on the Mortgaged Property is endangered in any manner, and Borrower fails to cure the same on Lender's demand; provided, however, that Borrower shall not be in default under this paragraph if Borrower is diligently pursuing a contest or cure of such title or lien issue and Borrower has posted adequate security to protect Lender's rights, interest, and priority under this Deed of Trust, as determined by Lender.

**19.9.    Other Defaults.** The occurrence of an Event of Default or any default, as defined or described in the other Loan Documents, or the occurrence of a default on any Indebtedness or Obligations.

**19.10.    Levy on Assets.** A levy on any of the assets of Borrower or any guarantor, and such levy is not stayed or abated within 30 days after such levy.

**19.11.    Breach of Representations.** The breach of any representation, warranty, or covenant in this Deed of Trust or other Loan Documents.

**19.12.    Default Under Prior Deed of Trust, Security Instrument, or Lien.** The failure to pay on a timely basis, or the occurrence of any other default under any note, deed of trust, contract of sale, lien, charge, encumbrance, or security interest encumbering or affecting the Mortgaged Property and having priority over the lien of this Deed of Trust.

**19.13    Violation of Governmental Requirements.** The failure of Borrower, any tenant, or any other occupant of the Mortgaged Property to comply with any Governmental Requirement. In accordance with section 7 above, any potential violation by a tenant or other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Note and this Deed of Trust, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in Section 21.

**20.    Acceleration on Transfer or Encumbrance.**

**20.1.    Acceleration on Transfer or Encumbrance of Mortgaged Property.** If Borrower sells, contracts to sell, gives an option to purchase, conveys, leases with an option to purchase, encumbers (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of this Deed of Trust), or alienates the Mortgaged Property, or any interest in it, or suffers its title to, or any interest in, the Mortgaged Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of beneficial interests in Borrower; or if Borrower changes or permits to be changed the character or use of the Mortgaged Property, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Mortgaged Property; or if title to such Mortgaged Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due

of the same priority as this Deed of Trust has on the Mortgaged Property and is not subject to being subordinated or its priority affected under any Governmental Requirements.

      **20.3.**   **Permitted Encumbrances.** If Lender consents in writing, which consent may not be unreasonably withheld, the due-on-encumbrance provision set forth in paragraph 20.1 shall not apply to a junior voluntary deed of trust or mortgage lien in favor of another lender encumbering the Mortgaged Property (the principal balance of any such junior encumbrance shall be added to the principal balance of the Indebtedness for purposes of determining compliance with the financial covenants of the Note); as long as Borrower gives Lender at least 30 days written notice of the further encumbrance and reimburses Lender for all out-of-pocket costs and expenses incurred in connection with such encumbrance.

**21.**    **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Deed of Trust (but not prior to acceleration under Section 20.1 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Mortgaged Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Deed of Trust without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

      If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Mortgaged Property to be sold and shall cause such notice to be recorded in each county in which any part of the Mortgaged Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Mortgaged Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Mortgaged Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Mortgaged Property at any sale.

      Trustee shall deliver to the purchaser Trustee's deed conveying the Mortgaged Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Deed of Trust; (c) to all persons having recorded liens subsequent to the interest of the Trustee in this Deed of Trust as their interests may appear in the order of their priority; and (d) the surplus, if any, to the trustor of this Deed of Trust or to the successor in interest of the trustor entitled to such surplus.

**22.**    **Borrower's Obligation to Notify Lender.**

      **22.1**   **Bankruptcy, Insolvency, Transfer, or Encumbrance.** Borrower shall notify Lender in writing, at or before the time of the occurrence of any event described in Section 19 and 20 of this Deed of Trust, of such event and shall promptly furnish Lender with any and all information on such event that Lender may request.

      **22.2**   **Government Notice.** Borrower shall give immediate written notice to Lender of any notice, proceeding or inquiry by any Governmental Authority. Borrower shall provide such notice to Lender within five (5) days of Borrower's knowledge, constructive or actual, of any such notice, proceeding or inquiry by any Government Authority.

**23.**    **Waiver of Marshaling.** Despite the existence of interests in the Mortgaged Property other than that created by this Deed of Trust, and despite any other provision of this Deed of Trust, if Borrower defaults in paying the Indebtedness or in performing any Obligations, Lender shall have the right, in Lender's sole and absolute discretion, to establish the order in which the Mortgaged Property will be subjected to the remedies provided in this Deed of Trust and to establish the order in which all or any part of the Indebtedness secured by this Deed of Trust is satisfied from the proceeds realized on the exercise of the remedies provided in this Deed of Trust. Borrower and any person who now has or later acquires any interest in the Mortgaged Property with actual or constructive notice of this Deed of Trust waives any and all rights to require a marshaling of assets in connection with the exercise of any of the remedies provided in this Deed of Trust or otherwise provided by Governmental Requirements.

**24.**    **Environmental Matters.**

      **24.1.**   **Borrower's Representations and Warranties.** Borrower represents and warrants to Lender that:

          **24.1.1.** The Mortgaged Property and Borrower are not in violation of any En

24.1.5. To the best of Borrower's knowledge and belief, no real property adjoining the Mortgaged Property is being used, or has ever been used at any previous time, for the disposal, storage, treatment, processing, or other handling of Hazardous Substances, nor is any other real property adjoining the Mortgaged Property affected by Hazardous Substances contamination.

24.1.6. No investigation, administrative order, consent order or agreement, litigation, or settlement with respect to Hazardous Substances or Hazardous Substances contamination is proposed, threatened, anticipated, or in existence regarding the Mortgaged Property. The Mortgaged Property is not currently on, and to Borrower's knowledge, after diligent investigation and inquiry, has never been on, any federal or state "Superfund" or "Superlien" list.

24.1.7. Neither Borrower nor, to the best of Borrower's knowledge and belief, any tenant of any portion of the Mortgaged Property has received any notice from any Governmental Authority regarding any violation of any Environmental Laws.

24.1.8. The use that Borrower makes and intends to make of the Mortgaged Property shall not result in the disposal or release of any Hazardous Substances on, in, or to the Mortgaged Property.

24.1.9. Borrower shall not cause any violation of any Environmental Laws, nor permit any tenant of any portion of the Mortgaged Property to cause such a violation, nor permit any environmental liens to be placed on any portion of the Mortgaged Property.

24.1.10. Neither Borrower nor any third party shall use, generate, manufacture, store, release, discharge, or dispose of any Hazardous Substance on, under, or about the Mortgaged Property, or transport any Hazardous Substance to or from the Mortgaged Property.

**24.2.    Survival of Representations and Warranties.** The foregoing representations and warranties shall be continuing and shall be true and correct for the period from the date of this instrument to the release of this Deed of Trust (whether by payment of the Indebtedness secured by this Deed of Trust or foreclosure or action in lieu of foreclosure), and these representations and warranties shall survive such release.

**24.3.    Notice to Lender.** Borrower shall give prompt written notice to Lender of:

24.3.1. Any proceeding or inquiry by any Governmental Authority (including, without limitation, the Oregon State Department of Environmental Quality) regarding the presence or threatened presence of any Hazardous Substance on the Mortgaged Property;

24.3.2. All claims made or threatened by any third party against Borrower or the Mortgaged Property relating to any loss or injury resulting from any Hazardous Substance;

24.3.3. Borrower's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Mortgaged Property that could cause it or any part of it to be subject to any restrictions on the ownership, occupancy, transferability, or use of the Mortgaged Property under any Environmental Laws.

**24.4.    Lender's Right to Join Legal Actions.** Lender shall have the right, at its option, but at Borrower's sole cost and expense, to join and participate in, as a party if it so elects, any legal proceedings or actions initiated by or against Borrower or the Mortgaged Property in connection with any Environmental Laws.

**24.5.    Borrower's Indemnity.** Borrower shall indemnify, defend, and hold harmless Lender, its directors, officers, employees, agents, successors, and assigns from and against any loss, damage, cost, expense, or liability directly or indirectly arising from or attributable to the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal, or presence of a Hazardous Substance on, under, or about the Mortgaged Property, or any order, consent decree, or settlement relating to the cleanup of a Hazardous Substance, or any claims of loss, damage, liability, expense, or injury relating to or arising from, directly or indirectly, any disclosure by Lender to anyone of information, whether true or not, relative to a Hazardous Substance or Environmental Law violation, including, without limitation, Attorney Fees. This indemnity shall survive the release of this Deed of Trust (whether by payment of the Indebtedness secured by this Deed of Trust or foreclosure or action in lieu of foreclosure).

**25.    Trustee.** The Trustee shall be deemed to have accepted the terms of this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The Trustee shall not be obligated to notify any party to this Deed of Trust of any pending sale under any other deed of trust or of any action or proceeding in which Borrower, Lender, or Trustee is a party, unless such sale relates to or reasonably might affect the Mortgaged Property, this Deed of Trust, Lender's security for the payment of the Indebtedness and the performance of the Obligations, or the rights or powers of Lender or Trustee under the Loan Documents, or unless such action or proceeding has been instituted by Trustee against the Mortgaged Property, Borrower, or Lender.

**26.    Power of Trustee to Reconvey or Consent.** At any time, without liability and without notice to Borrower, on Lender's written request and presentation of the Note and this Deed of Trust to Trustee for endorsement, and without altering or affecting (a) the personal liability of Borrower or any other person for the payment of the Indebtedness secured by this Deed of Trust, or (b) the lien of this Deed of Trust on the remainder of the Mortgaged Property as security for the repayment of the full amount of the Indebtedness then or later secured by this Deed of Trust, (c) or any right or power of Lender or Trustee with respect to

Lender may charge such person or persons a fee in the amount of Two Hundred Fifty and 00/100 Dollars ($250.00) plus all recording costs for reconveying the Mortgaged Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. Such request and reconveyance shall operate as a reassignment of the Rents assigned to Lender in this Deed of Trust.

28.     **Substitution of Trustee.** Lender, at Lender's option, may from time to time, by written instrument, substitute a successor or successors to any Trustee named in or acting under this Deed of Trust, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties in which the Mortgaged Property is located, shall constitute conclusive proof of the proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the predecessor Trustee, succeed to all right, title, estate, powers, and duties of such predecessor Trustee, including, without limitation, the power to reconvey the Mortgaged Property. To be effective, the instrument must contain the names of the original Borrower, Trustee, and Lender under this Deed of Trust, the book and page or instrument or document number at which, and the county or counties in which, this Deed of Trust is recorded, and the name and address of the substitute Trustee. If any notice of default has been recorded under this Deed of Trust, this power of substitution cannot be exercised until all costs, fees, and expenses of the then acting Trustee have been paid. On such payment, the then acting Trustee shall endorse receipt of the payment on the instrument of substitution. The procedure provided in this paragraph for substitution of Trustees is not exclusive of other provisions for substitution provided by Governmental Requirements.

29.     **No Waiver by Lender.** No waiver by Lender of any right or remedy provided by the Loan Documents or Governmental Requirements shall be effective unless such waiver is in writing and signed by two authorized officers of Lender. Waiver by Lender of any right or remedy granted to Lender under the Loan Documents or Governmental Requirements as to any transaction or occurrence shall not be deemed a waiver of any future transaction or occurrence. The acceptance of payment of any sum secured by this Deed of Trust after its due date, or the payment by Lender of any Indebtedness or the performance by Lender of any Obligations of Borrower under the Loan Documents, on Borrower's failure to do so, or the addition of any payment so made by Lender to the Indebtedness secured by this Deed of Trust, or the exercise of Lender's right to enter the Mortgaged Property and receive and collect the Rents from it, or the assertion by Lender of any other right or remedy under the Loan Documents, shall not constitute a waiver of Lender's right to require prompt performance of all other Obligations of Borrower under the Loan Documents and payment of the Indebtedness, or to exercise any other right or remedy under the Loan Documents for any failure by Borrower to timely and fully pay the Indebtedness and perform its Obligations under the Loan Documents. Lender may waive any right or remedy under the Loan Documents or Governmental Requirements without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or other interest in the Mortgaged Property that is junior to the lien of this Deed of Trust, and without incurring liability to Borrower or any other person by so doing.

30.     **Consents and Modifications; Borrower and Lien Not Released.** Despite Borrower's default in the payment of any Indebtedness secured by this Deed of Trust or in the performance of any Obligations under this Deed of Trust or Borrower's breach of any obligation, covenant, or agreement in the Loan Documents, Lender, at Lender's option, without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or interest in the Mortgaged Property that is junior to the lien of this Deed of Trust, and without incurring liability to Borrower or any other person by so doing, may from time to time (a) extend the time for payment of all or any portion of Borrower's Indebtedness under the Loan Documents; (b) accept a renewal note or notes, or release any person from liability, for all or any portion of such Indebtedness; (c) agree with Borrower to modify the terms and conditions of payment under the Loan Documents; (d) reduce the amount of the monthly installments due under paragraph 9 of this Deed of Trust; (e) reconvey or release other or additional security for the repayment of Borrower's Indebtedness under the Loan Documents; (f) approve the preparation or filing of any map or plat with respect to the Mortgaged Property; (g) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Deed of Trust; and (h) agree with Borrower to modify the term, the rate of interest, or the period of amortization of the Note or alter the amount of the monthly installments payable under the Note. No action taken by Lender under this paragraph shall be effective unless it is in writing, subscribed by Lender, and, except as expressly stated in such writing, no such action will impair or affect (i) Borrower's obligation to pay the Indebtedness secured by this Deed of Trust and to observe all Obligations of Borrower contained in the Loan Documents; (ii) the guaranty of any Person of the payment of the Indebtedness secured by this Deed of Trust; or (iii) the lien or priority of the lien of this Deed of Trust. At Lender's request, Borrower shall promptly pay Lender a reasonable service charge, together with all insurance premiums and Attorney Fees as Lender may have advanced, for any action taken by Lender under this paragraph.

Whenever Lender's consent or approval is specified as a condition of any provision of this Deed of Trust, such consent or approval shall not be effective unless such consent or approval is in writing,

stated in the Note, even if Borrower has defaulted in payment or in the performance of any agreement under this Deed of Trust and Lender, for that reason or by reason of paragraphs 20 and 21 of this Deed of Trust, shall have declared all sums secured by this Deed of Trust immediately due and payable.

34.    **Additional Borrower Representations.**  To induce Lender to enter into this Deed of Trust, the Note, and the other Loan Documents and to make the Loan, Borrower makes the following representations and warranties, which are deemed made as of both the date and the recordation of this Deed of Trust:

34.1.    **Capacity.**  Borrower and the individuals executing Loan Documents on Borrower's behalf have the full power, authority, and legal right to execute and deliver, and to perform and observe the provisions of this Deed of Trust, the Note, the other Loan Documents, and any other document, agreement, certificate, or instrument executed in connection with the Loan, and to carry out the contemplated transactions.

34.2.    **Authority and Enforceability.**  Borrower's execution, delivery, and performance of this Deed of Trust, the Note, the other Loan Documents, and any other document, agreement, certificate, or instrument executed in connection with the Loan have been duly authorized by all necessary corporate or other business entity action and do not and shall not require any registration with, consent, or approval of, notice to, or any action by any Person or Governmental Authority. Borrower has obtained or will obtain on or before the recordation of this Deed of Trust all necessary Governmental Authority and other approvals necessary for Borrower to comply with the Loan Documents. This Deed of Trust, the Note, and the other Loan Documents executed in connection with the Loan, when executed and delivered by Borrower, shall constitute the legal, valid, binding, and joint and several obligations of Borrower enforceable in accordance with their respective terms.

34.3.    **Compliance With Other Instruments.**  The execution and delivery of this Deed of Trust and the other Loan Documents, and compliance with their respective terms, and the issuance of the Note and other Loan Documents as contemplated in this Deed of Trust, shall not result in a breach of any of the terms or conditions of, or result in the imposition of, any lien, charge, or encumbrance (except as created by this Deed of Trust and the other Loan Documents) on any properties of Borrower, or constitute a default (with due notice or lapse of time or both) or result in an occurrence of an event for which any holder or holders of indebtedness may declare the same due and payable under, any indenture, agreement, order, judgment, or instrument to which Borrower is a party or by which Borrower or its properties may be bound or affected.

34.4.    **Compliance With Law.**  The execution and delivery of this Deed of Trust, the Note, and the other Loan Documents, or any other document, agreement, certificate, or instrument to which Borrower is bound in connection with the Loan, do not conflict with, result in a breach or default under, or create any lien or charge under any provision of any Governmental Requirements to which it is subject and shall not violate any of the Governmental Requirements.

34.5.    **Material Adverse Events.**  Since the date of the financial statements delivered to Lender before recordation of this Deed of Trust, neither the condition (financial or otherwise) nor the business of Borrower and the Mortgaged Property have been materially adversely affected in any way.

34.6.    **Litigation.**  There are no actions, suits, investigations, or proceedings pending or, to Borrower's knowledge after due inquiry and investigation, threatened against or affecting Borrower at law or in equity, before or by any Person or Governmental Authority, that, if adversely determined, would have a material adverse effect on the business, properties, or condition (financial or otherwise) of Borrower or on the validity or enforceability of this Deed of Trust, any of the other Loan Documents, or the ability of Borrower to perform under any of the Loan Documents.

34.7.    **No Untrue Statements.**  All statements, representations, and warranties made by Borrower in this Deed of Trust or any other Loan Document and any other agreement, document, certificate, or instrument previously furnished or to be furnished by Borrower to Lender under the Loan Documents (a) are and shall be true, correct, and complete in all material respects at the time they were made and on and as of the recordation of this Deed of Trust, (b) do not and shall not contain any untrue statement of a material fact, and (c) do not and shall not omit to state a material fact necessary to make the information in them neither misleading nor incomplete. Borrower understands that all such statements, representations, and warranties shall be deemed to have been relied on by Lender as a material inducement to make the Loan.

34.8.    **Policies of Insurance.**  Each copy of the insurance policies relating to the Mortgaged Property delivered to Lender by Borrower (a) is a true, correct, and complete copy of the respective original policy in effect on the date of this Deed of Trust, and no amendments or modifications of said documents or instruments not included in such copies have been made, except as stated in this paragraph 34.8 and (b) has not been terminated and is in full force and effect. Borrower is not in default in the observance or performance of its material obligations under said documents or instruments and Borrower has done all things required to be done as of the date of this Deed of Trust to keep unimpaired its rights thereunder.

34.9.    **Financial Statements.**  All financial statements furnished to Lender are true and correct in all material respects, are prepared in accordance with generally accepted accounting principles, and do not omit any material fact the omission of which makes said statement or statements misleading. There are no facts that have not been disclosed to Lender by Borrower in writing that materially or adver-

Trust with the county recorder, Lender shall have a valid, first priority, perfected security interest in the Water Rights.

**34.11.    Taxes.** Borrower has filed or caused to be filed all tax returns that are required to be filed by Borrower under the Governmental Requirements of each Governmental Authority with taxing power over Borrower, and Borrower has paid, or made provision for the payment of, all taxes, assessments, fees, and other governmental charges that have or may have become due under said returns, or otherwise, or under any assessment received by Borrower except that such taxes, if any, as are being contested in good faith and as to which adequate reserves (determined in accordance with generally accepted accounting principles) have been provided.

**34.12.    Leases.** If the Mortgaged Property includes a leasehold estate, Borrower has not and shall not surrender, terminate, cancel, waive, accept waiver, change, supplement, grant subleases of, alter, surrender, or amend, and shall comply with all terms, covenants, and conditions in the Leasehold.

**34.13.    Further Acts.** Borrower shall, at its sole cost and expense, and without expense to Trustee or Lender, do, execute, acknowledge, and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers, and assurances as Trustee or Lender shall from time to time require, for the purpose of better assuring, conveying, assigning, transferring, pledging, mortgaging, warranting, and confirming to Trustee the Mortgaged Property and rights, and as to Lender the security interest as to the Personalty, conveyed or assigned by this Deed of Trust or intended now or later so to be, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust, or for filing, registering, or recording this Deed of Trust and, on demand, shall execute and deliver, and authorizes Lender to execute in the name of Borrower, to the extent it may lawfully do so, one or more financing statements, chattel mortgages, or comparable security instruments, to evidence more effectively the lien of this Deed of Trust on the Mortgaged Property.

**34.14.    Filing Fees.** Borrower shall pay all filing, registration, or recording fees, all Governmental Authority stamp taxes and other fees, taxes, duties, imposts, assessments, and all other charges incident to, arising from, or in connection with the preparation, execution, delivery, and enforcement of the Note, this Deed of Trust, the other Loan Documents, any supplemental deed of trust or mortgage, or any instrument of further assurance.

**34.15.    Entity Compliance.** As long as it is the owner of the Mortgaged Property, Borrower, if a corporation, limited liability company, or partnership, shall do all things necessary to preserve and keep in full force and effect its existence, franchises, rights, and privileges as such entity under the laws of the state of its incorporation or formation, and shall comply with all Governmental Requirements of any Governmental Authority applicable to Borrower or to the Mortgaged Property or any part of it.

**35.    Governing Law; Consent to Jurisdiction and Venue.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Mortgaged Property, this Deed of Trust will be governed by the laws of the state in which the Mortgaged Property is located. In all other respects, this Deed of Trust, the Note and all other documents related to the transaction are by agreement of the parties governed by the State of Oregon, unless expressly provided otherwise. The Parties agree that jurisdiction and venue for any dispute, claim or controversy arising, other than with respect to perfection and enforcement of Lender's rights against the Mortgaged Property, shall be the County in which notice shall been sent to Lender pursuant this Deed of Trust, or the applicable federal district court that covers said County, and Borrower submits to personal jurisdiction in that forum for any and all purposes. Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

BORROWER'S INITIALS: _____

**36.    Taxation of Deeds of Trust.** In the event of the enactment of any law deducting from the value of the Mortgaged Property any mortgage lien on it, or imposing on Lender the payment of all or part of the taxes, charges, or assessments previously paid by Borrower under this Deed of Trust, or changing the law relating to the taxation of mortgages, debts secured by mortgages, or Lender's interest in the Mortgaged Property so as to impose new incidents of tax on Lender, then Borrower shall pay such taxes or assessments or shall reimburse Lender for them; provided, however, that if in the opinion of Lender's counsel such payment cannot lawfully be made by Borrower, then Lender may, at Lender's option, declare all sums secured by this Deed of Trust to be immediately due and payable without notice to Borrower. Lender may invoke any remedies permitted by this Deed of Trust.

**37.    Mechanics' Liens.** Borrower shall pay from time to time when due, all lawful claims and demands of mechanics, materialmen, laborers, and others that, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part of it, or on the Rents arising therefrom, and in general shall do or cause to be done everything necessary so that the lien and security interest of this Deed of Trust shall be fully preserved, at Borrower's expense, without expense to Lender; provided, however, that if Governmental Requirements empower Borrower to discharge of record any mechanics', laborer's, materialman's, or other lien against the Mortgaged Property by the posting of a bond or other **EXHIBIT TWO**

39.   **Liability for Acts or Omissions.**  Lender shall not be liable or responsible for its acts or omissions under this Deed of Trust, except for Lender's own gross negligence or willful misconduct, or be liable or responsible for any acts or omissions of any agent, attorney, or employee of Lender, if selected with reasonable care.

40.   **Notices.**  Except for any notice required by Governmental Requirements to be given in another manner, (a) all notices required or permitted by the Loan Documents shall be in writing; (b) each notice shall be sent (i) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (ii) by certified United States mail, postage prepaid, return receipt requested; or (iii) by nationally recognized overnight delivery service, marked for next-business-day delivery; and (c) all notices shall be addressed to the appropriate party at its address as follows or such other addresses as may be designated by notice given in compliance with this provision:

|   |   |
|---|---|
| Lender: | PacWest Funding Inc dba Precision Capital<br>At the address provided above |
| Borrower: | Northwest Investment Holdings, LLC, an Oregon limited liability company<br>At the address provided above |

Notices will be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery; or (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending.

To the extent permitted by Governmental Requirements, if there is more than one Borrower, notice to any Borrower shall constitute notice to all Borrowers. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address(es).

41.   **Statement of Obligations.**  Except as otherwise provided by Governmental Requirements, at Lender's request, Borrower shall promptly pay to Lender such fee as may then be provided by law as the maximum charge for each statement of obligations, Lender's statement, Lender's demand, payoff statement, or other statement on the condition of, or balance owed, under the Note or secured by this Deed of Trust.

42.   **Application of Payments.**  Except as otherwise expressly provided by Governmental Requirements or any other provision of this Deed of Trust, all payments received by Lender from Borrower under the Loan Documents shall be applied by Lender in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender and interest under any provision of this Note or the Deed of Trust, in such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.

43.   **Remedies Are Cumulative.**  Each remedy in this Deed of Trust is separate and distinct and is cumulative to all other rights and remedies provided by this Deed of Trust or by Governmental Requirements, and each may be exercised concurrently, independently, or successively, in any order whatsoever.

44.   **Obligations of Borrower Joint and Several.**  If more than one Person is named as Borrower, each obligation of Borrower under this Deed of Trust shall be the joint and several obligations of each such Person.

45.   **Severability.**  If any provision of the Loan Documents, or the application of them to the circumstances, is held void, invalid, or unenforceable by a court of competent jurisdiction, the Loan Documents, and the applications of such provision to other parties or circumstances, shall not be affected thereby, the provisions of the Loan Documents being severable in any such instance.

46.   **Delegation of Authority.**  Whenever this Deed of Trust provides that Borrower authorizes and appoints Lender as Borrower's attorney-in-fact to perform any act for or on behalf of Borrower or in the name, place, and stead of Borrower, Borrower expressly understands and agrees that this authority shall be deemed a power coupled with an interest and such power shall be irrevocable.

47.   **General Provisions.**

    47.1.   **Successors and Assigns.**  Subject to paragraphs 19 and 20 of this Deed of Trust, this Deed of Trust applies to, inures to the benefit of, and binds, the respective heirs, legatees, devisees, administrators, executors, successors, and assigns of each party to this Deed of Trust.

    47.2.   **Meaning of Certain Terms.**  As used in this Deed of Trust and unless the context otherwise provides, the words "herein," "hereunder" and "hereof" mean and include this Deed of Trust as a whole, rather than any particular provision of it.

    47.3.   **Authorized Agents.**  In exercising any right or remedy, or taking any action provided in this Deed of Trust, Lender may act through its employees, agents, or independent contractors, as Lender expressly authorizes.

    47.4.   **Gender and Number.**  Wherever the context so requires in this Deed of Trust, the

48.    **Improper Financial Transactions.**

48.1    Borrower is, and shall remain at all times, in full compliance with all applicable laws and regulations of the United States of America that prohibit, regulate or restrict financial transactions, and any amendments or successors thereto and any applicable regulations promulgated thereunder (collectively, the "Financial Control Laws"), including but not limited to those related to money laundering offenses and related compliance and reporting requirements (including any money laundering offenses prohibited under the Money Laundering Control Act, 18 U.S.C. Section 1956 and 1957 and the Bank Secrecy Act, 31 U.S.C. Sections 5311 et seq.) and the Foreign Assets Control Regulations, 31 C.F.R. Section 500 et seq.

48.2    Borrower represents and warrants that: Borrower is not a Barred Person (hereinafter defined); Borrower is not owned or controlled, directly or indirectly, by any Barred Person; and Borrower is not acting, directly or indirectly, for or on behalf of any Barred Person.

48.3    Borrower represents and warrants that it understands and has been advised by legal counsel on the requirements of the Financial Control Laws.

48.4    Under any provision of this Deed of Trust or any of the other Loan Documents where Lender shall have the right to approve or consent to any particular action, including, without limitation any (A) sale, transfer, assignment of the Mortgaged Property, or any direct or indirect ownership interest in Borrower, (B) leasing of the Mortgaged Property, or any portion thereof, or (C) incurring any additional financing secured by Mortgaged Property, or any portion thereof, or by any direct or indirect ownership interest in Borrower, Lender shall have the right to withhold such approval or consent, in its sole discretion, if the granting of such approval or consent could be construed as a violation of any of the Financial Control Laws.

48.5    Borrower covenants and agrees that it will upon request provide Lender with (or cooperate with Lender in obtaining) information required by Lender for purposes of complying with any Financial Control Laws.

48.6    As used in this Deed of Trust, the term "Barred Person" shall mean (A) any person, group or entity named as a "Specially Designated National and Blocked Person" or as a person who commits, threatens to commit, supports, or is associated with terrorism as designated by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), (B) any person, group or entity named in the lists maintained by the United States Department of Commerce (Denied Persons and Entities), (C) any government or citizen of any country that is subject to a United States Embargo identified in regulations promulgated by OFAC, and (D) any person, group or entity named as a denied or blocked person or terrorist in any other list maintained by any agency of the United States government.

49.    **Dispute Resolution; Waiver of Right to Jury Trial**

49.1    **ARBITRATION.**    CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO ARBITRATE ANY DISPUTES TO RESOLVE ANY CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT).

49.2    **WAIVER OF RIGHT TO JURY TRIAL.**    TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED ON OR ARISING FROM THIS DEED OF TRUST. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. BORROWER AND, BY ITS ACCEPTANCE OF THE BENEFITS OF THIS DEED OF TRUST, LENDER EACH (A) ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR BORROWER AND LENDER TO ENTER INTO A BUSINESS RELATIONSHIP, THAT BORROWER AND LENDER HAVE ALREADY RELIED ON THIS WAIVER BY ENTERING INTO THIS DEED OF TRUST OR ACCEPTING ITS BENEFITS, AS THE CASE MAY BE, AND THAT EACH SHALL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS, AND (B) FURTHER WARRANTS AND REPRESENTS THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS DEED OF TRUST.

BORROWER'S INITIALS: _____

49.3    **PROVISIONAL REMEDIES; FORECLOSURE AND INJUNCTIVE RELIEF.**
Nothing in Section 49.2, above, shall be deemed to apply to or limit the right of Lender to: (a) exercise self-help remedies, (b) foreclose judicially or nonjudicially against any real or personal property EXHIBIT B, Page TWO

any such action, to require submission the dispute, claim or controversy occasioning resort to such remedies to any proceeding referred to in Section 49.2, above.

**50.     Contractual Right to Appoint a Receiver Upon Default.** Upon an Event of Default under this Deed of Trust or a breach of any clause of any agreement signed in connection with the loan to Borrower, Borrower agrees that Lender may appoint a receiver to control the Mortgaged Property within seven (7) days of any default. Borrower agrees to cooperate with the receiver and turn over all control to said receiver and otherwise cooperate with the receiver appointed by Lender.

**51.     Protective Advances.** This Deed of Trust secures any advances Lender, at its discretion, may make under Sections 12 and 13 of this Deed of Trust to protect Lender's interest in the Mortgaged Property and rights under this Deed of Trust.

**52.     Required Evidence of Property Insurance.**

**WARNING**

**UNLESS YOU PROVIDE US WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY OUR CONTRACT OR LOAN AGREEMENT, WE MAY PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT OUR INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT YOUR INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE WE PURCHASE MAY NOT PAY ANY CLAIM YOU MAKE OR ANY CLAIM MADE AGAINST YOU. YOU MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT YOU HAVE OBTAINED PROPERTY COVERAGE ELSEWHERE.**

**YOU ARE RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY US. THE COST OF THIS INSURANCE MAY BE ADDED TO YOUR CONTRACT OR LOAN BALANCE. IF THE COST IS ADDED TO YOUR CONTRACT OR LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING CONTRACT OR LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE YOUR PRIOR COVERAGE LAPSED OR THE DATE YOU FAILED TO PROVIDE PROOF OF COVERAGE.**

**THE COVERAGE WE PURCHASE MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE YOU CAN OBTAIN ON YOUR OWN AND MAY NOT SATISFY ANY NEED FOR PROPERTY DAMAGE COVERAGE OR ANY MANDATORY LIABILITY INSURANCE REQUIREMENTS IMPOSED BY APPLICABLE LAW.**

**53.     NOTICE TO THE BORROWER.** Do not sign this loan agreement before you read it. The loan agreement provides that the Borrower must deliver to the Lender written notice five (5) calendar days prior to prepayment of any portion of the principal amount.

**54.     INTEREST IN TITLE.** BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010. THIS INSTRUMENT DOES NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930, AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.

**55.     MODIFICATIONS.** UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY LENDER CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY LENDER OR AN AUTHORIZED AGENT THEREOF TO BE ENFORCEABLE.

IN WITNESS WHEREOF, Borrower accepts and agrees to the terms and covenants contained in this Deed of Trust and has executed and delivered this Deed of Trust as of the date first written above.

**BORROWER:**

NORTHWEST INVESTMENT HOLDINGS, LLC, AN OREGON LIMITED LIABILITY COMPANY

Kristen Bernard , Member/Manager

STATE OF ___W A_____ )
                                             ) ss.
COUNTY OF ___Pierce___ )

On _8 2 19_, 20___ before me, _Maryanne Spence____
personally appeared ___Kristen Bernard_____
_____, who proved to
me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___W A____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____                    (Seal)

# EXHIBIT "A"
## LEGAL DESCRIPTION

A tract of land in Section 11, Township 1 South, Range 2 East of the Willamette Meridian, in the City of Portland, County of Multnomah and State of Oregon, described as follows:

Beginning at a point which is South 0° 06' West 789.88 feet from the intersection of the South line of SE Powell
Blvd with the East line of O'Conner Park; thence South 0° 06' West 82.31 feet; thence South 89° 25' 30" East 136.80 feet; thence North 0° 06' East 82.31 feet; thence North 89° 25' 30" West 136.80 feet to the point of beginning.

# EXHIBIT THREE

## BUSINESS PURPOSE OF LOAN CERTIFICATION

| Lender:<br>PacWest Funding Inc dba Precision Capital | Borrower:<br>Northwest Investment Holdings, LLC, an Oregon<br>limited liability company |
|---|---|
| Date:<br>July 31, 2019 | Property Address:<br>3610 SE 141st Ave, Portland, OR 97236 |

Borrower certifies to Lender and its successors and assigns the following as true and correct:

1.      Borrower has applied for and has obtained or may obtain a loan in the principal amount of $420,000 (the "Note").   That amount will be secured by the Property (the "Deed of Trust") (the Note and Deed of Trust are collectively referred to as the "Loan").

2.      Lender has stressed to Borrower the importance of knowing the primary purpose of this Loan.  Borrower knows that the legal responsibilities of the Lender very considerably depending upon whether a loan is a consumer loan, which is for personal, household or family purposes, or a business loan, which is for every other purpose.

3.      Borrower has previously represented to Lender and again represent to Lender in this certification, its successors and assigns, that ALL of the purposes of the Loan, exclusive of commissions and loan expenses incurred to obtain the Loan are:

| Purpose | Approximate Amount |
|---|---|
| Business Purpose solely to invest & refurbish investment properties. | $90,000 |
|  |  |

4.      NO part of the proceeds of the Loan are intended to be used for a consumer purpose except the following. If there are no consumer purposes for the loan proceeds, please indicate "N/A" or "NONE" below:

1

© 2007 Geraci Law Firm; All Rights Reserved.
Business Purpose of Loan Certification
Loan No. PC0719AD

Rev. 05/08

EXHIBIT THREE
2 of 3

| Purpose | Approximate Amount |
|---|---|
| N/A | |
| | |

     Borrower declares under penalty of perjury under the laws of the state in which the Property is located that the foregoing is true and correct.

Dated: _8/2/2019_

**BORROWER:**
NORTHWEST INVESTMENT HOLDINGS, LLC, AN OREGON LIMITED LIABILITY COMPANY

_Kristen Bernard_
Kristen  Bernard , Member/Manager

# EXHIBIT FOUR

## ARBITRATION AGREEMENT

THIS ARBITRATION AGREEMENT ("Agreement") is entered into as of July 31, 2019, and is by and among Northwest Investment Holdings, LLC, an Oregon limited liability company ("Borrower(s)"); Kristen Bernard, (collectively referred to herein as "Guarantor"); and, PacWest Funding Inc dba Precision Capital ("Lender"). (Borrower, Guarantor, and Lender are collectively referred to herein as "Parties" and individually as a "Party").

### RECITALS

A.     Borrower has obtained or will obtain a mortgage loan from Lender as evidenced by that certain Promissory Note of even date, executed by Borrower (the "Note"), which is secured by the Security Instrument. The Note and Security Instrument are collectively referred to herein as the "Loan."

A.     To further induce Lender to make the Loan, Guarantor has delivered or will deliver to Lender a Guaranty guaranteeing Borrower's performance on the Loan.

B.     All parties wish to arbitrate any and all disputes among them that may arise out of the Loan.

### AGREEMENT

NOW, THEREFORE, in consideration of these Recitals and of the Lender agreeing to make the Loan to Borrower, and other valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

1.     <u>Mutual Agreement To Arbitrate Disputes</u>. The Parties agree that any Claim, defined below, involving the Loan, including, but not limited to claims arising from the origination, documentation, disclosure, servicing, collection or any other aspect of the Loan transaction or the coverage or enforceability of this Agreement, shall be resolved exclusively by binding arbitration under the terms of this Agreement.  This Agreement shall also be binding on the agents, successors and assigns of the parties and the Loan.

2.     <u>Claim Defined</u>.

   2.1     "Claim" shall include, but not be limited, to:

       2.1.1.   Any claimed wrongdoing, such as misrepresentation, negligence, breach of contract, breach of fiduciary duty, unconscionability, fraud in the inducement, rescission, breach of the covenant of good faith and fair dealing and unfair business practices.

       2.1.2.   Any claimed violation of state or federal laws, including, but not limited to consumer credit, truth-in-lending, civil rights, equal opportunity, real estate settlement, housing discrimination laws, fair lending acts, licensing, loan regulation and unfair business practices acts.

   2.2.    "Claim" shall not include:

       2.2.1.   Actions by the Lender to judicially or non-judicially foreclose on the note and Security Instrument for the Loan, to enjoin waste, to collect rents, interpleader actions or actions for a receiver, to recover possession, ejectment or relief from the automatic stay in bankruptcy, or to obtain relief through governmental agencies.

       2.2.2.   Actions for provisional remedies such as a temporary restraining order or preliminary injunction or for a permanent injunction based upon an arbitration award.

---

1

© 2007 Geraci Law Firm; All Rights Reserved.
Compliance Agreement
Loan No. PC0719AD

Rev. 05/11

3. **ARBITRATION OF DISPUTES.** TO THE EXTENT A PREDISPUTE WAIVER OF THE RIGHT TO TRIAL BY JURY IS NOT ENFORCEABLE UNDER APPLICABLE LAW, ANY AND ALL DISPUTES, CONTROVERSIES OR CLAIMS ARISING OUT OF OR RELATING TO THE LOAN DOCUMENTS OR TRANSACTIONS CONTEMPLATED THEREBY, INCLUDING, WITHOUT LIMITATION, THE MAKING, PERFORMANCE, OR INTERPRETATION OF THE LOAN DOCUMENTS, SHALL BE RESOLVED BY BINDING ARBITRATION. UNLESS OTHERWISE AGREED ON, THE ARBITRATION SHALL BE CONDUCTED IN ACCORDANCE WITH THE THEN-CURRENT ARBITRATION PROCEDURES SET FORTH UNDER OREGON LAW. JUDGMENT ON THE ARBITRATION AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. UNLESS OTHERWISE AGREED BY THE PARTIES, THE ARBITRATION SHALL BE HELD BEFORE A SINGLE ARBITRATOR SELECTED AS FOLLOWS: THE DISPUTING PARTIES SHALL, WITHIN TEN (10) BUSINESS DAYS FROM THE DATE ARBITRATION IS REQUESTED BY EITHER PARTY, AGREE UPON AN ARBITRATOR. IF THE PARTIES CANNOT SO AGREE, THEN EACH PARTY, WITHIN FIVE (5) BUSINESS DAYS THEREAFTER, SHALL NAME AN ARBITRATOR WHO SHALL BE AN ATTORNEY LICENSED TO PRACTICE IN OREGON AND EXPERIENCED AND QUALIFIED IN REAL ESTATE MATTERS OF THE TYPE CONTEMPLATED BY THE LOAN DOCUMENTS OR A RETIRED OREGON SUPERIOR OR APPELLATE COURT JUDGE. THOSE TWO NAMED ARBITRATORS SHALL THEN, WITHIN FIVE (5) BUSINESS DAYS, SELECT A THIRD ARBITRATOR WHO SHALL BE QUALIFIED AS DEFINED ABOVE, AND SUCH THIRD ARBITRATOR SHALL BE THE SOLE ARBITRATOR TO HEAR AND DETERMINE THE DISPUTE. IF ANY PARTY HERETO FAILS TO NAME AN ARBITRATOR WITHIN THE TIME LIMIT PROVIDED IN THIS SECTION, THEN THE ARBITRATOR TIMELY NAMED BY THE OTHER PARTY SHALL HEAR AND DECIDE THE DISPUTE. IF THE ARBITRATION IS COMMENCED, THE PARTIES AGREE TO PERMIT DISCOVERY PROCEEDINGS OF THE TYPE PROVIDED BY OREGON LAW BOTH IN ADVANCE OF, AND DURING RECESSES OF, THE ARBITRATION HEARINGS. ALL FACTS AND OTHER INFORMATION RELATING TO ANY ARBITRATION ARISING UNDER THIS DECLARATION SHALL BE KEPT CONFIDENTIAL TO THE FULLEST EXTENT PERMITTED BY LAW. THE DECISION OR THE ARBITRATOR(S) SHALL FOLLOW THE LAW, SHALL BE RENDERED WITHIN TEN (10) BUSINESS DAYS FOLLOWING THE CONCLUSION OF THE ARBITRATION, AND SHALL BE SET FORTH IN A WRITTEN OPINION STATING THE FINDINGS OF FACT OR THE ARBITRATOR(S) AND LEGAL AUTHORITIES THAT ARE THE BASIS OF THE DECISION. THE VENUE FOR ANY SUCH ARBITRATION SHALL BE THE COUNTY IN WHICH NOTICE SHALL BE SENT TO LENDER PURSUANT THE NOTE, OR THE APPLICABLE FEDERAL DISTRICT COURT THAT COVERS SAID COUNTY, AND EACH PARTY SUBMITS TO PERSONAL JURISDICTION IN THAT FORUM FOR ANY AND ALL PURPOSES. EACH PARTY WAIVES ANY RIGHT IT MAY HAVE TO ASSERT THE DOCTRINE OF FORUM NON CONVENIENS OR TO OBJECT TO SUCH VENUE. THE COSTS OF THE ARBITRATOR SHALL BE SPLIT EQUALLY BY THE PARTIES BUT SHALL BE A RECOVERABLE COST FOR THE PARTY PREVAILING IN THE ARBITRATION.

BORROWER'S INITIALS: _____   _____

4. **Attorneys' Fees.** Whether or not legal action is commenced, dismissed, or pursued to judgment, including any arbitration, Lender shall be entitled to payment of all fees and costs (including, without limitation, attorneys' fees and costs) that may be incurred by Lender in connection with the enforcement of any of the Loan Documents, and the protection of Lender's rights under the Loan Documents (whether in state, federal, Bankruptcy Court proceedings or arbitration/mediation).

In addition to the aforementioned fees, costs, and expenses, Lender in any lawsuit or other dispute shall be entitled to its attorneys' fees, and all other fees, costs, and expenses incurred in any post-judgment proceedings to collect or enforce any judgment. This provision for the recovery of post-judgment fees, costs, and expenses is separate and several and shall survive the merger of the Loan Documents into any judgment on the Note, Guaranty, Security Instrument, or any other Loan Documents.

2

© 2007 Geraci Law Firm; All Rights Reserved.
Compliance Agreement
Loan No. PC0719AD

Rev. 05/11

5.    **WAIVER.** THE PARTIES HEREBY FREELY WAIVE THE RIGHT TO TRIAL BY JUDGE OR JURY, THE RIGHT TO APPEAL, PRETRIAL DISCOVERY AND APPLICATION OF THE RULES OF EVIDENCE.

6.    **Capitalized Terms.** Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Security Instrument executed of even date herewith.

*(Signature page(s) follow)*

---

3

© 2007 Geraci Law Firm; All Rights Reserved.
Compliance Agreement
Loan No. PC0719AD

Rev. 05/11

IN WITNESS WHEREOF, the parties have carefully read, fully understand and agree to the above.

**BORROWER:**
Northwest Investment Holdings, LLC, an Oregon limited liability company

_Kristen Bernard_
Kristen  Bernard , Member/Manager

**GUARANTOR:**
Kristen  Bernard

_Kristen Bernard_
Kristen  Bernard

LENDER:

PacWest Funding Inc dba Precision Capital

By: _____
    Mariska Crain, Production Manager

4

© 2007 Geraci Law Firm; All Rights Reserved.
Compliance Agreement
Loan No. PC0719AD

Rev. 05/11

# EXHIBIT FIVE

| Multnomah County Official Records<br>E Murray, Deputy Clerk | **2019-096232** |
| --- | --- |
| | 09/12/2019 08:32:47 AM |
| MORT-ASGN   Pgs=2 Stn=26 ATAH<br>$10.00 $11.00 $6.00 $60.00 | $87.00 |

**Grantor:**
Precision Capital
Re: Loan PC0719AD
Re: Property at 3610 SE 141st Ave
4710 Village Plaza Loop #100
Eugene, OR  97401

**Beneficiary:**
PC0719AD Joint Venture
4710 Village Plaza Loop #100
Eugene, OR  97401

**After recording return to:**
PacWest Funding Inc., dba Precision Capital
4710 Village Plaza Loop #100
Eugene, OR  97401

## ASSIGNMENT OF TRUST DEED BY BENEFICIARY

**FOR VALUE RECEIVED,** the undersigned beneficiary, PacWest Funding, Inc., an Oregon Corporation, dba Precision Capital, whose address is 4710 Village Plaza Loop #100, Eugene, OR, 97401, under that certain trust deed dated July 31, 2019, executed and delivered by Northwest Investment Holdings, LLC, an Oregon Limited Liability Company, Grantor, whose address is Po Box 1152 Gig Harbor, WA 98335, to Dean S. Kaufman, Attorney at Law, Trustee, and PacWest Funding, Inc. an Oregon corporation dba Precision Capital, whose address is 4710 Village Plaza Loop, Suite 100, Eugene, OR 97401, as Beneficiary, and recorded on August 5, 2019, in Recording No. 2019-080959, of the Official Records of Multnomah County, Oregon, conveying real property in said county, described as follows:

### SEE ATTACHED EXHIBIT "A"

hereby grants, assigns, transfers, and sets over to PC0719AD Joint Venture, whose address (as indicated above) is 4710 Village Plaza Loop, #100, Eugene, OR 97401, all its beneficial interest in and under said trust deed, together with the note or notes, monies, and obligations therein described or referred to, with the interest, and all rights and benefits whatsoever accrued or to be accrued under said trust deed.

In construing this instrument and whenever the context hereof so requires, the masculine gender includes the feminine and the neuter, and the singular number includes the plural.

Until a change is requested, all tax statements are to be sent to the following address:

### 4710 VILLAGE PLAZA LOOP #100, EUGENE, OR  97401

THE PROPERTY DESCRIBED IN THIS INSTRUMENT MAY NOT BE WITHIN A FIRE PROTECTION DISTRICT PROTECTING STRUCTURES. THE PROPERTY IS SUBJECT TO LAND USE LAWS AND REGULATIONS THAT, IN FARM OR FOREST ZONES, MAY NOT AUTHORIZE CONSTRUCTION OR SITING OF A RESIDENCE AND THAT LIMIT LAWSUITS AGAINST FARMING OR FOREST PRACTICES AS DEFINED IN ORS 30.930, IN ALL ZONES. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, AND SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009.  BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO VERIFY THE EXISTENCE OF FIRE PROTECTION FOR STRUCTURES AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, AND SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009.

By: Mariska Crain, Production Manager
Precision Capital

STATE OF OREGON, County of Lane ) ss.

On the 11th day of September, 2019, personally appeared before me the above-named, Mariska Crain, Production Manager   of Precision Capital, who declared the foregoing instrument to be his voluntary act and deed.

Notary Public for Oregon
My commission expires:   12/11/2022

OFFICIAL STAMP
ALLISON EMILY BEARD
NOTARY PUBLIC-OREGON
COMMISSION NO. 981978
MY COMMISSION EXPIRES DECEMBER 11, 2022

ASSIGNMENT OF TRUST DEED BY BENEFICIARY/Assignment of Trust Deed by Beneficiary

**EXHIBIT "A"**
**LEGAL DESCRIPTION**

A tract of land in Section 11, Township 1 South, Range 2 East of the Willamette Meridian, in the City of Portland, County of Multnomah and State of Oregon, described as follows:

Beginning at a point which is South 0° 06' West 789.88 feet from the intersection of the South line of SE Powell Blvd with the East line of O'Conner Park; thence South 0° 06' West 82.31 feet; thence South 89° 25' 30" East 136.80 feet; thence North 0° 06' East 82.31 feet; thence North 89° 25' 30" West 136.80 feet to the point of beginning.

EXHIBIT FIVE
3 of 3

# EXHIBIT SIX

| Multnomah County Official Records<br>E Murray, Deputy Clerk | **2022-111533** |
| --- | --- |
| | 12/29/2022 09:06:56 AM |
| MORT-SUBS   Pgs=2 Stn=67 ATMH<br>$10.00 $11.00 $10.00 $60.00 | $91.00 |

**RECORDING REQUESTED BY AND
AFTER RECORDING RETURN TO:**
Christopher R. Ambrose, Esq.
Ambrose Law Group LLC
2900 NW Clearwater Drive, Ste. 320
Bend, OR 97703

## APPOINTMENT OF SUCCESSOR TRUSTEE

    THE UNDERSIGNED is/are the assignee beneficiary(ies) under the Trust Deed (the "Trust Deed") described below and the Note secured thereby. The undersigned hereby appoints Christopher R. Ambrose as successor trustee of the Trust Deed, to have all the powers of said original trustee.

| | |
| --- | --- |
| BORROWER/GRANTOR | Northwest Investment Holdings, LLC |
| ORIGINAL TRUSTEE | Dean S. Kaufman |
| BENEFICIARY(IES) | PacWest Funding, Inc., dba Precision Capital |
| ASSIGNEE BENEFICIARY | PC0719AD Joint Venture |
| TRUST DEED DATED | August 2, 2019 |
| TRUST DEED RECORDED | August 5, 2019 |
| REFERENCE NUMBER | 2019-080959 |
| SUBJECT PROPERTY | 3610 SE 141st Ave., Portland, OR 97236, more particularly described as PARTITION PLAT 2020-11, LOT 1, in the City of Portland, County of Multnomah, and State of Oregon., APN R703496 |
| | Alternative APN: R649920410 |
| COUNTY OF RECORDING | Multnomah County |
| STATE OF RECORDING | Oregon |

DATED: December **28**, 2022.

PC0719AD Joint Venture
By: PacWest Funding, Inc.
Its: Authorize Representative

By: _Pam Stoepfl_

Its: _Director of Capital_

[ ACKNOWLEDGMENT APPEARS ON FOLLOWING PAGE]

PAGE 1 - APPOINTMENT OF SUCCESSOR TRUSTEE

STATE OF OREGON       )
                                 ) ss
County of _____Lane_____    )

On the 28th day of December, 2022, before me, personally appeared _____ Pam Hoepfl _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same on behalf of PacWest Funding, Inc., an Oregon corporation, authorized representative for PC0719AD Joint Venture.

WITNESS my hand and official seal.

Notary Public - State of Oregon
My Commission Expires: _May 13, 2024_



OFFICIAL STAMP
SIMON THALER
NOTARY PUBLIC - OREGON
COMMISSION NO. 999931
MY COMMISSION EXPIRES    MAY 13, 2024

PAGE 2 - APPOINTMENT OF SUCCESSOR TRUSTEE

EXHIBIT SIX
3 of 3

# EXHIBIT SEVEN

## RECORDING COVER SHEET
## ORS 205.234

This cover sheet has been prepared by the person presenting the attached instrument for recording. Any error in this cover sheet DOES NOT affect the transaction(s) contained in the instrument itself.

AFTER RECORDING, RETURN TO:
Christopher R. Ambrose, Trustee
312 NW 10th Avenue, Suite 200
Portland, Oregon 97209

Multnomah County Official Records
J.D. Riddle, Deputy Clerk
**2024-010370**
02/22/2024 04:13:22 PM

NOT-DEF          Pgs=6 Stn=10 ATCG
$30.00 $11.00 $10.00 $60.00          $111.00

Please print or type information.

1.    AFTER RECORDING RETURN TO - Required by ORS 205.180(4) & 205.238:

      Name: Ambrose, Christopher R., Successor Trustee
      Address: 312 NW 10th Avenue, Suite 200, Portland, Oregon 97209

2.    TITLE(S) OF THE TRANSACTION(S) - Required by ORS 205.234(1)(a)

      Document Title(s): NOTICE OF DEFAULT AND ELECTION TO SELL

3.    DIRECT PARTY/GRANTOR:

      Name: Ambrose, Christopher R., Successor Trustee
      Address: 312 NW 10th Avenue, Suite 200, Portland, Oregon 97209

4.    INDIRECT PARTY/GRANTEE:

      Name: The Public
      Name: Northwest Investment Holdings, LLC, an Oregon limited liability company
      Address: PO Box 1152, Gig Harbor, WA 98335

5.    Property:    3610 SE 141st Ave., Portland, OR 97236
                   Legal: Partition Plat 2020-11, Lot 11, in the City of Portland and County
                   of Multnomah and State of Oregon
                   APN: R703496

6.    True and actual consideration (per ORS 93.030(5): *Not applicable*
7.    Send tax statements to: *Not applicable*
8.    Satisfaction of order or warrant (per ORS 205.125(1)(e): *Not applicable*
9.    The amount of the monetary obligation imposed by order or warrant: *Not applicable*
10.   Is instrument being re-recorded: *No.*

Recording Requested By and
After Recording, Return to:

Christopher R. Ambrose
Ambrose Law Group LLC
312 NW 10th Avenue, Suite 200
Portland, OR 97209-3121

## NOTICE OF DEFAULT AND ELECTION TO SELL

RE:

Trust Deed from:

Northwest Investment Holdings, LLC, an
Oregon limited liability company,

        Grantor,

To:

Christopher R. Ambrose,

        Successor Trustee.

      Reference is made to that certain Trust Deed (the "Trust Deed") made by Northwest
Investment Holdings, LLC, an Oregon limited liability company, as grantor (the "Grantor"),
to Dean S. Kaufman, Attorney at Law, as the trustee, in favor of PacWest Funding, Inc.,
an Oregon corporation, dba Precision Capital, as beneficiary, dated July 31, 2019, and
recorded on August 5, 2019, as Instrument No. 2019-080959, in the Official Records of
Multnomah County, Oregon, covering the Grantor's interest in the following described real
property situated in the above-mentioned county and state, to-wit:

### LEGAL DESCRIPTION

      A tract of land in Section 11, Township 1 South, Range 2
East of the Willamette Meridian, in the City of Portland,
County of Multnomah and State of Oregon, Described as
follows:
           Beginning at a point which is South 0° 06' West 789.88 feet
           from the intersection of the South line of SE Powell Blvd with

I:\73094\12\FORECLOS\00925588.WPD

the East line of O'Conner Park; thence South 0° 06' West 82.31 feet; thence South 89° 25' 30" East 136.80 feet; thence North 0° 06' East 82.31 feet; thence North 89° 25' 30" West 136.80 feet to the point of beginning.

Commonly known as 3610 SE 141st Ave., Portland, OR 97236

All beneficial right, title, and interest in the Trust Deed was assigned to PC0719AD Joint Venture, (the "Beneficiary"), by Assignment of Trust Deed by PacWest Funding, Inc. dba Precision Capital, Beneficiary, dated July 31, 2019, and recorded September 12, 2019, in the records of Multnomah County, Oregon, as Instrument Number 2019-096232. The current trustee under the Trust Deed is Christopher R. Ambrose (the "Trustee"). The undersigned hereby certifies that no assignments of the Trust Deed by the Trustee or by the Beneficiary and no appointments of a successor trustee have been made, except the foregoing and as are or will be recorded in the Records of the county or counties in which the Property is situated. Further, no action has been instituted to recover the debt, or any part thereof, now remaining secured by the Trust Deed, or, if such action has been instituted, such action has been dismissed except as permitted by ORS 86.735(4).

There is a default by Grantor owing an obligation, performance of which is secured by the Trust Deed, with respect to provisions therein which authorize sale in the event of default of such provisions. The default for which foreclosure is made is Grantor's failure to pay when due the following sums, or as a result of the following action or inaction:

1. Failing to provide the payoff of the underlying loan by the maturity date of September 1, 2022, as extended by modifications to February 1, 2024.
2. Failing to provide the late charges associated with the payoff and prior monthly installments.
3. Failing to provide NSF fees.
4. Failing to provide collection and related charges.

By reason of the default, the Beneficiary has declared all sums owing on the obligation secured by the Trust Deed immediately due and payable, those sums being the following estimated amounts, to-wit:

1. Unpaid Principal:                                                    $ 420,000.00

2. Accrued and Unpaid Interest (through and including         $147,508.47
   February 22, 2024, at continuing at the per diem rate
   of $139.88):

3. Trustee's Sale Guarantee Report:                              $1,300.00

PAGE 2 - NOTICE OF DEFAULT

I:\73094\12\FORECLOS\00925588.WPD

| | | |
|---|---|---|
| 4. | Late Charges: | $419.66 |
| 5. | Misc. Charges (collection costs, NSF fees): | $31,859.46 |
| 6. | Foreclosure Legal Fees and Costs (Present Foreclosure): | $2,500.00 |
| 7. | Subtotal: | $603,587.59 |
| 8. | Plus title expenses, trustee's fees, recording fees, and attorneys' fees incurred herein by reason of said default and any further sums advanced by the Beneficiary for the protection of the Property and its interest therein. | |

Notice hereby is given that the Beneficiary and Trustee, by reason of the default, have elected and do hereby elect to foreclose the Trust Deed by advertisement and sale pursuant to ORS 86.705 to 86.795, and to cause to be sold at public auction to the highest bidder for cash the interest in the Property which Grantor had, or had the power to convey, at the time of the execution by Grantor of the Trust Deed, together with any interest Grantor or Grantor's successor in interest acquired after the execution of the Trust Deed, to satisfy the obligations secured by the Trust Deed, and the expenses of the sale, including the compensation of the Trustee as provided by law, and the reasonable fees of Trustee's attorneys.

The sale will be held at the hour of 11:00 a.m., in accord with the standard of time established by ORS 187.110, on June 27, 2024, at the following place: the front outside entrance to the Multnomah County Courthouse, located at 1200 SW First Avenue, Portland, Oregon 97204.

Other than as shown of record, neither the Beneficiary nor the Trustee has any actual notice of any person having or claiming to have any lien upon or interest in the Property hereinabove described subsequent to the interest of the Trustee in the Trust Deed, or of any successor in interest to Grantor or of any lessee or other person in possession of or occupying the Property, except:

| Name and Last Known Address | Nature of Right, Lien or Interest |
|---|---|
| None | None |

Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the Trust Deed reinstated by payment to the Beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing any other default complained of herein

PAGE 3 - NOTICE OF DEFAULT

I:\73094\12\FORECLOS\00925588.WPD

EXHIBIT SEVEN
5 of 7

that is capable of being cured by tendering the performance required under the obligation or Trust Deed, and in addition to paying the sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and Trust Deed, together with trustee's and attorney fees, subject to the limitations, as applicable, imposed by ORS 86.753.

In construing this notice, the singular includes the plural, the word "Grantor" includes any successor in interest to the Grantor as well as any other person owing an obligation, the performance of which is secured by the Trust Deed, and the words "Trustee" and "Beneficiary" include their respective successors in interest, if any.

Without limiting the Trustee's disclaimer of representations or warranties, Oregon law requires the Trustee to state in this notice that some residential property sold at a trustee's sale may have been used in manufacturing methamphetamines, the chemical components of which are known to be toxic. Prospective purchasers of residential property should be aware of this potential danger before deciding to place a bid for this property at the trustee's sale.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

Dated: February 22, 2024.

Successor Trustee:

Christopher R. Ambrose

STATE OF OREGON    )
                   ) ss:
County of Deschutes )

On February 22, 2024, before me, personally appeared Christopher R. Ambrose, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity and that by his signature on the instrument, the person or entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

OFFICIAL STAMP
DIANA GRACE SMITH
NOTARY PUBLIC-OREGON
COMMISSION NO. 1021409
MY COMMISSION EXPIRES FEBRUARY 14, 2026

Notary Public - State of Oregon
My Commission Expires: February 14, 2026

PAGE 4 – NOTICE OF DEFAULT

I:\73094\12\FORECLOS\00925588.WPD

EXHIBIT SEVEN
6 of 7

**CONTACT INFORMATION (INCLUDING MAILING ADDRESS) FOR TRUSTEE:**

Christopher R. Ambrose
Ambrose Law Group LLC
312 NW 10th Avenue, Suite 200
Portland, Oregon 97209-3121
Phone: 503.467.7209
Fax:    503.222.0984
Email:  crambrose@ambroselaw.com

# EXHIBIT EIGHT

## RECORDING COVER SHEET
## ORS 205.234

This cover sheet has been prepared by the person presenting the attached instrument for recording. Any error in this cover sheet DOES NOT affect the transaction(s) contained in the instrument itself.

AFTER RECORDING, RETURN TO:

Christopher R. Ambrose, Trustee
312 NW 10th Avenue, Suite 200
Portland, Oregon 97209

Please print or type information.

| Multnomah County Official Records<br>E. Murray, Deputy Clerk | **2024-043172** |
|---|---|
| | 07/22/2024 09:10:09 AM |
| DEED-DEED     Pgs=5 Stn=68 ATJN<br>$25.00 $11.00 $10.00 $60.00 $20.00 | **$126.00** |

1.  AFTER RECORDING RETURN TO - Required by ORS 205.180(4) & 205.238:
    Name: Ambrose, Christopher R., Trustee
    Address: 312 NW 10th Avenue, Suite 200, Portland, Oregon 97209

2.  TITLE(S) OF THE TRANSACTION(S) - Required by ORS 205.234(1)(a)

    Document Title(s): TRUSTEE'S DEED AS A RESULT OF FORECLOSURE

3.  DIRECT PARTY/GRANTOR:
    Name: Christopher R. Ambrose, Successor Trustee
    Address: 312 NW 10th Ave., Ste. 200, Portland, OR 97209

4.  INDIRECT PARTY/GRANTEE:
    Name: The Public
    Name: Northwest Investment Holdings LLC
    Address: 870 NW Fir Ave., Warrenton, OR 97146

5.  Property:     3610 SE 141st Ave., Portland, OR 97236
                   Legal: Parcels 1 and 2, Partition Plat 2020-11, in the City of Portland and
                   County of Multnomah and State of Oregon
                   APN: R703496 and R703497

6.  True and actual consideration (per ORS 93.030(5): *Not applicable*

7.  Send tax statements to: *Not applicable*

8.  Satisfaction of order or warrant (per ORS 205.125(1)(e): *Not applicable*

9.  The amount of the monetary obligation imposed by order or warrant: *Not applicable*

10. Is instrument being re-recorded: *No.*

REQUESTED BY AND WHEN
RECORDED, RETURN TO:
Ambrose Law Group LLC
Attn.: Christopher R. Ambrose, Esq.
312 NW 10th Avenue, Suite 200
Portland, OR 97209
(503) 467-7210
crambrose@ambroselaw.com

SEND TAX NOTICES TO:
PacWest Funding, Inc. dba Precision Capital
4710 Village Plaza Loop, Suite 100
Eugene, OR 97401

## TRUSTEE'S DEED AS A RESULT OF FORECLOSURE

The Grantor, Christopher R. Ambrose, appointed as successor trustee ("Trustee") under that certain Trust Deed (the "Trust Deed"), as hereinafter particularly described, in consideration of the premises and payment recited below, hereby grants and conveys, without warranty, to PC0719AD Joint Venture (the "Grantee") that certain real property, situated in the County of Multnomah, State of Oregon, described as follows:

<u>Legal Description:</u>

Originally described as:
A tract of land in Section 11, Township 1 South, Range 2
East of the Willamette Meridian, in the City of Portland,
County of Multnomah and State of Oregon, Described as
follows:
Beginning at a point which is South 0° 06' West 789.88 feet from the
intersection of the South line of SE Powell Blvd with the East line of O'Conner
Park; thence South 0° 06' West 82.31 feet; thence South 89° 25' 30" East 136.80
feet; thence North 0° 06' East 82.31 feet; thence North 89° 25' 30" West 136.80
feet to the point of beginning.
Commonly known as 3610 SE 141st Ave., Portland, OR 97236

Now legally described as follows:
Parcels 1 and 2, PARTITION PLAT NO. 2020-11, recorded February 21, 2020
as Recorder's No. 2020-021075, in the City of Portland, County of Multnomah
and State of Oregon.

APN Nos. R703496 and R703497

### RECITALS:

PAGE 1 - TRUSTEE'S DEED - 3610 SE 141st Ave., Portland, OR 97236

1.    This conveyance is made pursuant to the powers, including the power of sale, conferred upon said Trustee by that certain Trust Deed (the "Trust Deed") made by Northwest Investment Holdings, LLC, an Oregon limited liability company, as grantor (the "Grantor"), to Dean S. Kaufman, Attorney at Law, as the trustee, in favor of Pac West Funding, Inc., an Oregon corporation, dba Precision Capital, as beneficiary, dated July 31, 2019, and recorded on August 5, 2019, as Instrument No. 2019-080959, in the Official Records of Multnomah County, Oregon. All beneficial right, title, and interest in the Trust Deed was assigned to PC0719AD Joint Venture by Assignment of Trust Deed by Beneficiary dated July 21, 2019, and recorded September 12, 2019, in the records of Multnomah County, Oregon as Instrument No. 2019-096232. The current trustee under the Trust Deed is Christopher R. Ambrose pursuant to an Appointment of Successor Trustee dated December 28, 2022, recorded December 29, 2022, as instrument number 2022-111533, in the official records of Multnomah County, Oregon.

2.    The Trust Deed was executed to secure, together with other undertakings and obligations set forth in the Trust Deed, the payment of a secured Promissory Note (the "Note') in the sum of $420,000.00, as modified, with interest thereon, according to the terms thereof, in favor of the Beneficiary, and to secure any other sums of money which might become due and payable under the terms of the Trust Deed.

3.    The Trust Deed provides that the Property is not used principally for agricultural or farming purposes.

4.    Default having occurred and the obligations secured and/or covenants of the Grantor, as set forth in the Notice of Default and Election to Sell described below, which the terms of the Trust Deed make operative the power of sale, the Trustee caused to be recorded a Notice of Default and Election to Sell dated February 22, 2024 (the "Notice of Default and Election to Sell"), recorded February 22, 2022, as Instrument No. 2024-010372 in the official records of Multnomah County, Oregon.

5.    The Trustee, in its aforesaid Notice of Default and Election to Sell, fixed the place of sale as the front outside entrance to the Multnomah County Courthouse located at 1200 SW First Avenue, Portland, Oregon, a public place, at 11 o'clock a.m. on Thursday, June 27, 2024, and in accordance with law caused copies of the statutory Trustee's Notice of Sale to be transmitted by mail to all persons entitled thereto and either posted or served in accordance with law.

6.    During foreclosure, no action was pending on any obligations secured by the Trust Deed.

7.    After the recording of the foregoing Notice of Default and Election to Sell as aforesaid, the undersigned Trustee gave notice to the Grantor and occupant(s), if any, as required by and in accordance with ORS Sections 86.764 by mailing said notice by both first class and certified mail with return receipt requested. The mailing of said notices is shown by an affidavit of mailing recorded prior to the sale date. In addition, the undersigned Trustee gave notice of the time for and place of sale of said real property as fixed by the Trustee and as required by law; copies of the Trustee's Notice of Sale were served pursuant to ORCP 7D.(2) and 7D.(3) or mailed by both first class and certified mail with return receipt requested, to the last-known address(es) of the persons or the legal representatives, if any,

PAGE 2 - TRUSTEE'S DEED - 3610 SE 141st Ave., Portland, OR 97236

required by ORS 86.774, at least 120 days before the date the property was sold, and the Trustee's Notice of Sale was mailed by first class and certified mail with return receipt requested, to the last-known address of the guardian, conservator, administrator, or executor of any person required by ORS 86.705 through 86.815, if any, promptly after the Trustee received knowledge of the disability, insanity or death of any such person; the Notice of Sale was served upon occupants of the property described in the Trust deed, if any, in the manner in which a summons is served pursuant to ORCP 7D.(2) and 7D.(3) at least 120 days before the date the property was sold, or, if vacant, a notice of non-occupancy was recorded. If the foreclosure proceedings were stayed and released from stay, copies of an amended Notice of Sale in the form required by ORS 86.705 through 86.815 were mailed by registered or certified mail to the last-known address of those persons listed in ORS 86.705 through 86.815 and to the address provided by each person who was present at the time and place set for the sale which was stayed within 30 days after the release from stay. Further, the Trustee published a copy of said notice of sale in a newspaper of general circulation in each county in which the said real property is situated, once a week for four successive weeks; the last publication of said notice occurred more than twenty days prior to the date of such sale. The mailing, service and publication of said notice are shown by one or more affidavits or proof of service duly recorded prior to the date of sale in the records of said county, together with the said notice of default and election to sell and the Trustee's Notice of Sale, being now referred to and incorporated in and made a part of this Trustee's Deed as fully as if set out herein verbatim. The undersigned Trustee has no actual notice of any person, other than the persons named in said affidavits and proofs as having or claiming a lien on or interest in said described real property, entitled to notice pursuant to ORS 86.705 through 86.815.

    8.      In the event the Property is a residential trust deed within the meaning ORS 86.705 through 86.815, notice under ORS 86.756 was provided.

    9.      All legal requirements and all provisions of the Trust Deed have been complied with, as to acts to be performed and notices to be given, as provided in ORS 86.705, et seq.

    10.     The Trustee postponed the sale pursuant to both public proclamation, and written notice to the grantor and all interested and required parties, pursuant to a postponement or series of postponements pursuant to and in accordance with ORS 86.782(2). The final sale date was postponed to 11:00 a.m. on Monday, July 15, 2024.

    11.     The defaults specified in the Trustee's Notice of Sale, not having been cured five days prior to the date of Trustee's Sale and said obligations secured by the Trust Deed remaining unpaid, at 11:00 a.m. on Monday, July 15, 2024, the date of sale, which was not less than 120 days from the date of recording the Notice of Default and Election to Sell, the Trustee then and there sold at public auction to PC0719AD Joint Venture, the highest bidder therefore, the above described property for the sum of Five Hundred Thirty-Five Thousand Five Hundred and no/100ths Dollars ($535,500.00).

THIS INSTRUMENT WILL NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY APPROVED USES

PAGE 3 - TRUSTEE'S DEED - 3610 SE 141st Ave., Portland, OR 97236

DATED this 19th day of July, 2024.

Trustee:

By: _____

Christopher R. Ambrose, Trustee

STATE OF OREGON          )
                                          ) ss
County of Deschutes        )

On this day personally appeared before me **Christopher R. Ambrose**, known by me to be the person who executed the within and foregoing instrument, and acknowledged that he signed the same as his free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this 19th day of July, 2024.

OFFICIAL STAMP
DIANA GRACE SMITH
NOTARY PUBLIC-OREGON
COMMISSION NO. 1021409
MY COMMISSION EXPIRES FEBRUARY 14, 2026

_____
NOTARY PUBLIC for the State of Oregon
My commission expires: _February 14, 2026_

PAGE 4 - TRUSTEE'S DEED - 3610 SE 141st Ave., Portland, OR 97236

EXHIBIT EIGHT
6 of 6

# EXHIBIT NINE

## PROMISSORY NOTE SECURED BY DEED OF TRUST
*(36 Month Term / Interest Only Payments / 36 Month Balloon Payment   )*

$346,500                         Multnomah County, OR                         September 25, 2019

### Loan Number: PC0919H

*Property Address:*      *6100 SE 140th Ave, Portland, OR 97236*

FOR VALUE RECEIVED, the undersigned, Northwest Investment Holdings, LLC, an Oregon limited liability company ("Borrower"), hereby promises to pay to PacWest Funding Inc dba Precision Capital, or order ("Lender"), the principal sum of THREE HUNDRED FORTY-SIX THOUSAND FIVE HUNDRED AND 00/100 DOLLARS ($346,500), together with interest on the unpaid principal balance of this Note, as follows:

    **1.**    <u>**Interest**</u>. Interest on the unpaid principal balance will accrue from the date the proceeds have been distributed to or on behalf of the Borrower (the "Date of Advance") at an annual rate equal to TWELVE AND 24/100 percent (12.240%)* **if the borrower elects not to pay by electronic funds transfer or ACH.**  Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days before the first full payment cycle, monthly interest is calculated by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days.  Interest for the odd days before the first full month is calculated on the basis of the actual days and a 360-day year.  All interest payable under this Note is computed using this method.

    **\*Notwithstanding the foregoing, should Borrower elect to make payments by electronic funds transfer by automated clearing house ("ACH Payments") which shall be automatically withdrawn on the first of each month (or the date within the grace period selected by the borrower) in which payment is due, the interest rate shall be reduced by Zero and 25/100 Percent (0.25%) to ELEVEN AND 99/100 percent (11.990%) ("Interest Rate Reduction"). This Interest Rate Reduction shall terminate should Borrower fail to maintain sufficient funds in its account for the ACH Payments.**

**2.**    <u>**Payment Obligations**</u>.

    **2.1**    <u>**Payments**</u>.  Interest-only payments shall be due and payable in consecutive monthly installments of $3,462.11 on the 1st day of each month beginning on NOVEMBER 1, 2019. Such payments shall continue until the entire indebtedness evidenced by this Note and all accrued and unpaid interest and fees are fully paid, with any unpaid principal and interest due and payable on OCTOBER 1, 2022 (the "Maturity Date").

    In accordance with Section 1 above, should Borrower NOT elect the option to make ACH Payments, interest-only payments shall be calculated on the higher rate above due and payable in the amount of $3,534.30 on the 1st day of each month beginning on NOVEMBER 1, 2019. Should Borrower fail to maintain sufficient funds in its account for the ACH Payments, Borrower shall pay to Lender a non-sufficient funds ("NSF") fee

---

1

© 2007 Geraci Law Firm; All Rights Reserved.
Note
Loan No. PC0919H

Rev. 01/16
Borrowers Initials

in the amount of Fifty and 00/100 Dollars ($50.00) per each returned payment, and the Reduction in the Interest Rate shall terminate and Borrower shall make the full interest-only payment in the amount of $3,534.30 for the remainder of the loan term.

Payments due under the Note shall be made in U.S. currency. Borrower shall at all times maintain a valid account to be used for ACH Payments. Borrower's failure to maintain a valid account to be used for ACH Payments shall be a Default under paragraph 4 of this Note. Lender reserves the right, in its sole and absolute discretion, to require payment in any other manner.

**2.1.1    Collection Costs.** In addition to any amounts due above, Borrower shall be responsible for all of Lender's actual collection costs, including those costs incurred due to an Event of Default. Collection costs include a Servicing Fee in the amount of Seventy-Five and 00/100 Dollars ($75.00), a Force Placement Fee in the amount of Two Hundred Fifty and 00/100 Dollars ($250.00), and any other cost associated with the servicing and collection efforts taken on behalf of the Loan.

**2.2    Balloon Payment.** The payment schedule contained in this loan requires that Borrower make a balloon payment of THREE HUNDRED FORTY-SIX THOUSAND FIVE HUNDRED AND 00/100 ($346,500) on the Maturity Date plus any unpaid but accrued interest, fees and charges due under this Note.

**2.3    Delivery of Payments.**    Payments shall be made to Lender at Lender's address, which is provided in paragraph 11 of this Note, or to another address if so designated by Lender. Payments due under this Note shall be made to Lender by electronic funds transfer by automated clearing house payments ("ACH Payments"). Borrower shall at all times maintain a valid account to be used for ACH Payments and shall ensure sufficient funds in the account to cover the amount of each payment or debit entry. Borrower's failure to maintain a valid account to be used for ACH Payments or failure to deposit and/or maintain sufficient funds in the account for each debit entry, shall be a Default under paragraph 4 of this Note. Lender reserves the right, in its sole and absolute discretion, to require payment in any other manner

**2.4    Order of Application of Payments.** Each payment under this Note shall be credited in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender and interest under any provision of this Note or the Security Instrument, in such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.

**2.5    Conditional Right to Extension.** Borrower shall have the right to request one twelve (12) to twenty-four (24) month extension of the Maturity Date of the Note if and only if the Lender consents to the extension and all of the following conditions are met:

(a)    Borrower delivers to Lender a written request for an extension with the Extension Fee referenced in Subsection 2.5.2 below no later than forty-five (45) days prior to the Maturity Date, for each extension request;

(a)    Borrower has made all of the payments due under the Note on or before the date they were due;

(b)    Borrower and any guarantor have complied with all of the covenants of and is currently not in default under the Note, the Security Instrument, and all Loan Documents;

(c)    Borrower delivers to Lender written confirmation that any and all property taxes and assessments due and owing on the Property have been paid;

---

2

© 2007 Geraci Law Firm; All Rights Reserved.
Note
Loan No. PC0919H

Rev. 01/16
Borrowers Initials

(d)    Borrower delivers to Lender written confirmation that all insurance policies required under the Security Instrument are paid and in effect during the twelve (12) month period following the date of the extension request;

(e)    Borrower and any guarantor's credit rating have not materially changed since the execution of the Note;

(f)    If requested, Borrower and any guarantor provide to Lender updated financial statements that indicate that there is no material change in the financial condition of Borrower or any guarantor since execution of the Note;

(g)    Lender determines, in its reasonable discretion, that there has not been a material negative change to the physical condition or value of the Property, other than a change lender has authorized in writing;

(h)    Borrower has agreed to pay the costs associated with the loan extension, inclusive of an extension endorsement to the Lender's title insurance policy; the fees charged by the County Recorder to record the extension agreement; notary fees; all escrow fees inclusive of messenger and handling fees; legal fees; and, the fee charged for the preparation of the extension agreement;

(i)    Lender confirms that Borrower has not permitted any further encumbrances or liens to be recorded against the Property.

**2.5.1    Time of Extension**. If Borrower satisfies each condition set forth above for the extension, and the Lender consents to an extension request, Borrower shall have the right to up to one twenty-four (24) to thirty-six (36) month extension of the Maturity Date (an "Extension").

**2.5.2    Extension Fee**. As consideration to Lender for granting an Extension, Borrower shall pay to Lender in good funds One and 00/100 Percent (1.0%) of the outstanding principal balance of the Note as an extension fee ("Extension Fee") for the Extension granted. The Extension Fee is due and payable with the written request for extension described in Subsection 2.5(a) above.

**3.    Late Charge.** Borrower acknowledges that default in the payment of any sum due under this Note will result in losses and additional expenses to Lender in servicing the indebtedness evidenced by this Note, handling such delinquent payments, and meeting its other financial obligations. Borrower further acknowledges that the extent of such loss and additional expenses is extremely difficult and impractical to ascertain. Borrower acknowledges and agrees that, if any payment due under this Note is not received by Lender within fifteen (15) days when due, a charge of 5 cents ($0.05) for each dollar ($1.00) that is not paid when due would be a reasonable estimate of expenses so incurred (the "Late Charge"). Without prejudicing or affecting any other rights or remedies of Lender, Borrower shall pay the Late Charge to Lender as liquidated damages to cover expenses incurred in handling such delinquent payment.

**4.    Default.** On (a) Borrower's failure to pay any installment or other sum due under this Note when due and payable (whether by extension, acceleration, or otherwise), (b) an Event of Default (as defined in the Security Instrument, or (c) any breach of any other promise or obligation in this Note or in any other instrument now or hereafter securing the indebtedness evidenced by this Note, then, and in any such event, Lender may, at its option, declare this Note (including, without limitation, all accrued interest) due and payable immediately regardless of the Maturity Date. Borrower expressly waives notice of the exercise of this option.

3

 Rev. 01/16
Borrowers Initials

5.    **Prepayment.** Borrower may prepay this Note in whole or in part at any time without penalty.  All prepayments of principal on this Note shall be applied to the most remote principal installment or installments then unpaid.

6.    **Interest on Default.**  If Borrower is in default under this Note, as that event is contemplated under Section 4 of this Note, or defaults under any other clause of the Security Instrument, or all other instruments and agreements required to be executed by Borrower or any guarantor in connection with the Note (collectively, along with the Note, the "Loan Documents), then the entire unpaid principal balance shall automatically bear an annual interest rate (instead of the rate specified in Section 1) equal to the lesser of (a) The Note rate plus FIVE AND 00/100 PERCENT (5.00%) or (b) the maximum interest rate allowed by law (the "Default Rate"). If the Maturity Date is accelerated pursuant to Section 4, the unpaid principal shall accrue interest at the Default Rate only until the default is cured and the Security Instrument is reinstated. Borrower acknowledges and agrees that it would be extremely difficult or impractical to fix the actual damages resulting from Borrower's failure to pay the principal, accrued interest and other sums due on the Maturity Date, and therefore Borrower shall pay interest at the Default Rate not as a penalty, but for purposes of defraying the expenses incident to handling the past due principal, accrued interest and other sums due under this Promissory Note. Interest at the Default Rate represents the reasonable estimate of the loss that may be sustained by Lender due to the failure of Borrower to pay the principal, accrued interest and other sums due on the Maturity Date. Interest at the Default Rate shall be payable by Borrower without prejudice to the rights of Lender to collect any other amounts to be paid under this Promissory Note (including, without limitation, late charges pursuant to Section 3, above) or the Security Instrument.

7.    **Interest on Interest.** If any interest payment under this Note is not paid when due, the unpaid interest shall be added to the principal of this Note, shall become and be treated as principal, and shall thereafter bear like interest.

8.    **Due-on-Sale.**  If Borrower sells, contracts to sell, gives an option to purchase, conveys, leases with an option to purchase, encumbers (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of the Security Instrument), or alienates the Property, or any interest in it, or suffers its title to, or any interest in, the Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of beneficial interests in Borrower; or if Borrower changes or permits to be changed the character or use of the Property, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Property; or if title to such Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at Lender's option, may, without prior notice, declare all sums secured by the Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Security Instrument, including those in Section 21 of the Security Instrument.

9.    **Attorney Fees.** Borrower agrees to pay the following costs, expenses, and attorney fees paid or incurred by Lender, or adjudged by a court: (a) reasonable costs of collection and costs, expenses, and attorney fees paid or incurred in connection with the collection or enforcement of this Note, whether or not suit is filed; (b) reasonable costs,

---

4

© 2007 Geraci Law Firm; All Rights Reserved.
Note
Loan No. PC0919H

Rev. 01/16
Borrowers Initials

expenses, and attorney fees paid or incurred in connection with representing Lender in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Note; (c) reasonable costs, expenses, and attorney fees incurred to protect the lien of the Security Instrument; and (d) costs of suit and such sum as the court may adjudge as attorney fees in any action to enforce payment of this Note or any part of it.

**10.    Waiver.** Borrower, endorsers, and all other persons liable or to become liable on this Note waive diligence, presentment, protest and demand, and also notice of protest, demand, nonpayment, dishonor and maturity and consents to any extension of the time or terms of payment hereof, any and all renewals or extensions of the terms hereof, any release of all or any part of the security given for this Note, any acceptance of additional security of any kind and any release of any party liable under this Note. Any such renewals or extensions may be made without notice to Borrower.

**11.    Notice.** Any notice required to be provided in this Note shall be given in writing and shall be sent (a) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (b) by first-class certified United States mail, postage prepaid, return receipt requested; or (c) by a nationally recognized overnight courier service, marked for next day business delivery. All notices shall be addressed to the party to whom such notice is to be given at the following addresses:

|  | |
|---|---|
| Lender: | PacWest Funding Inc dba Precision Capital<br>4710 Village Plaza Loop Suite 100<br>Eugene, OR 97401 |
| Borrower: | Northwest Investment Holdings, LLC, an Oregon<br>limited liability company<br>3403 Ross Ave<br>Gig Harbor, WA 98332 |

or to such other address as a party may designate by written notice to the other. All notices shall be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery; (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending.

**12.    Secured by Security Instrument.** This Note is secured by, among other things, that certain Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Security Instrument") of even date herewith made by Borrower, as trustor, for the benefit of Lender, as beneficiary.

**13.    Forbearance Not a Waiver.** If Lender delays in exercising or fails to exercise any of its rights under this Note, such delay or failure shall not constitute a waiver of any Lender rights or of any breach, default, or failure of condition under this Note. No waiver by Lender of any of its rights or of any such breach, default, or failure of condition shall be effective, unless the waiver is expressly stated in a writing signed by Lender.

---

5

© 2007 Geraci Law Firm; All Rights Reserved.
Note
Loan No. PC0919H

Rev. 01/16
Borrowers Initials

**14.    Assignment.** This Note inures to and binds the heirs, legal representatives, successors, and assigns of Borrower and Lender; provided, however, that Borrower may not assign this Note or any proceeds of it, or assign or delegate any of its rights or obligations, without Lender's prior written consent in each instance. Lender in its sole discretion may transfer this Note, and may sell or assign participations or other interests in all or any part of this Note, all without notice to or the consent of Borrower.

**15.    Governing Law and Venue.** Notwithstanding the location of the Property, this Note and all attendant loan documents were negotiated and executed in the State of Oregon; and, it is the express intent of the Parties hereto that this Note shall be construed and enforceable according to the laws of thereof for all purposes. The Parties agree that jurisdiction and venue for any dispute, claim or controversy arising, other than with respect to perfection and enforcement of Lender's rights against the Property, shall be the county in which notice shall be sent to Lender pursuant this Note, or the applicable federal district court that covers said county, and Borrower submits to personal jurisdiction in that forum for any and all purposes. Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

BORROWER'S INITIALS: _____  _____

**16.    Reserved.**

**17.    Usury.** All agreements between Borrower and Lender are expressly limited, so that in no event or contingency, whether because of the advancement of the proceeds of this Note, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to Lender for the use, forbearance, or retention of the money to be advanced under this Note exceed the highest lawful rate permissible under applicable usury laws. If, under any circumstances, fulfillment of any provision of this Note or the Security Instrument securing this Note or any other agreement pertaining to this Note, after timely performance of such provision is due, shall involve exceeding the limit of validity prescribed by law that a court of competent jurisdiction deems applicable, then, ipso facto, the obligations to be fulfilled shall be reduced to the limit of such validity. If, under any circumstances, Lender shall ever receive as interest an amount that exceeds the highest lawful rate, the amount that would be excessive interest shall be applied to reduce the unpaid principal balance under this Note and not to pay interest, or, if such excessive interest exceeds the unpaid principal balance under this Note, such excess shall be refunded to Borrower. This provision shall control every other provision of all agreements between Borrower and Lender.

**18.    Time Is of the Essence.** Time is of the essence with respect to all obligations of Borrower under this Note.

**19.    Cross-Default.** Any default under the terms of any loan agreement, promissory note, deed of trust, mortgage, lease, conditional sale contract or other agreement, document or instrument evidencing, governing or securing any indebtedness owing by Borrower or any Affiliate of Borrower to Lender or any Affiliate of Lender; shall, at Lender's option, constitute a default under this Note. The following definitions shall apply to this Section:

---

6

© 2007 Geraci Law Firm; All Rights Reserved.
Note
Loan No. PC0919H



Rev. 01/16
Borrowers Initials

"**Affiliate**" means, with respect to any Person, any other Person that is directly or indirectly Controlling, Controlled by or under common Control with, such Person.

"**Control**" and derivative terms means the possession, directly or indirectly, and acting either alone or together with others, of the power or authority to direct or cause the direction of the management, material policies, material business decisions or the affairs of a Person, whether through the ownership of equity securities or interests, by contract or other means.

"**Person**" means any natural person, business, corporation, company, and or association, limited liability company, partnership, limited partnership, limited liability partnership, joint venture, business enterprise, trust, government authority or other legal entity.

BORROWER'S INITIALS: _____  _____

20.    **Dispute Resolution: Waiver of Right to Jury Trial**

    **20.1    ARBITRATION.** CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO ARBITRATE ANY DISPUTES TO RESOLVE ANY CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT).

    **20.2    WAIVER OF RIGHT TO JURY TRIAL.** TO THE EXTENT PERMITTED BY SAID APPLICABLE LAW, BORROWER, ANY GUARANTOR, AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED ON OR ARISING FROM THIS NOTE. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. BORROWER AND, BY ITS ACCEPTANCE OF THE BENEFITS OF THIS NOTE, LENDER EACH (A) ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR BORROWER AND LENDER TO ENTER INTO A BUSINESS RELATIONSHIP, THAT BORROWER AND LENDER HAVE ALREADY RELIED ON THIS WAIVER BY ENTERING INTO THIS NOTE OR ACCEPTING ITS BENEFITS, AS THE CASE MAY BE, AND THAT EACH SHALL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS, AND (B) FURTHER WARRANTS AND REPRESENTS THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING,

---

7

© 2007 Geraci Law Firm; All Rights Reserved.
Note
Loan No. PC0919H

Rev. 01/16
Borrowers Initials

EXHIBIT NINE
8 of 10

AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS NOTE.

BORROWER'S INITIALS: _____

**21.    Representation on Use of Proceeds**. Borrower represents and warrants to Lender that the proceeds of this Note will be used solely for business, commercial investment, or similar purposes, and that no portion of it will be used for personal, family, or household purposes.

**22.    Assignment**. Holder may, at its sole option, assign this Note and/or designate any other person or entity as the holder hereof.

**23.    No Modifications or Amendments; No Waiver**. Except as specified herein, this Note may not be amended, modified or changed, nor shall any waiver of the provisions hereof be effective, except only by an instrument in writing signed by the party against whom enforcement of any waiver, amendment, change, modification or discharge is sought. Additionally, a waiver of any provision in one event shall not be construed as a waiver of any other provision at any time, as a continuing waiver, or as a waiver of such provision on a subsequent event.

**24.    Severability.** Any provision of this Note which shall be held by a court of competent jurisdiction to be invalid, void or illegal shall in no way affect, impair or invalidate any other provision or term hereof, and such other provisions or terms shall remain in full force and effect.

**25.    Successors and Assigns.** Whenever used herein, the terms "Lender" and "Borrower" shall be deemed to include their respective heirs, personal representatives, successors and assigns.

**26.    Cooperation.** Borrower acknowledges that Lender and its successors and assigns may (a) sell, transfer, or assign the Security Instrument, this Note, and other Loan Documents to one or more investors as a whole loan, in a rated or unrated public offering or private placement; (b) participate the Loan secured by the Security Instrument to one or more investors in a rated or unrated public offering or private placement; (c) deposit the Security Instrument, this Note, and other Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets in a rated or unrated public offering or private placement; or (d) otherwise sell the Note or interest therein to investors in a rated or unrated public offering or private placement. (The transactions referred to in clauses (a)-(d) are hereinafter referred to as "Secondary Market Transactions.") Borrower shall, at Lender's expense, cooperate in good faith with Lender in effecting any such Secondary Market Transaction and shall cooperate in good faith to implement all requirements reasonably imposed by the participants involved in any Secondary Market Transaction (including, without limitation, a rating agency and/or an institutional purchaser, participant, or investor) including, without limitation, all structural or other changes to the Note, modifications to any documents evidencing or securing the Note, delivery of opinions of counsel acceptable to the rating agency or such other purchasers, participants or investors, and addressing such matters as the rating agency or such other purchasers, participants, or investors may require; provided, however, that the Borrower shall not be required to modify any documents evidencing or securing the Note that would modify (i) the interest rate payable under this Note, (ii) the

8


Rev. 01/16
Borrowers Initials

stated maturity of this Note, (iii) the amortization of principal of this Note, or (iv) any other material terms or covenants of the Note. Borrower shall provide such information and documents relating to Borrower, the Property, the Leases, and any lessees as Lender or the rating agency or such other purchasers, participants, or investors may reasonably request in connection with a Secondary Market Transaction. Lender shall have the right to provide to the rating agency or prospective purchasers, participants, or investors any information in its possession including, without limitation, financial statements relating to Borrower, the Property, and any lessee. Borrower acknowledges that certain information regarding the Note and the parties thereto and the Property may be included in a private placement memorandum, prospectus, or other disclosure documents.

27.    **Obligations of Borrower Joint and Several**.  If more than one Person is named as Borrower, each obligation of Borrower under this Note shall be the joint and several obligations of each such Person.

28.    **Capitalized Terms**.  Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Security Instrument executed of even date herewith. WITNESS THE HAND AND SEAL OF THE UNDERSIGNED.

**BORROWER:**

NORTHWEST INVESTMENT HOLDINGS, LLC, AN OREGON LIMITED LIABILITY COMPANY

_____    _____
Kristen  Bernard , Manager

_____    _____

© 2007 Geraci Law Firm; All Rights Reserved.
Note
Loan No. PC0919H

Rev. 01/16
Borrowers Initials

# EXHIBIT TEN

<table>
<tr><td colspan="2">Multnomah County Official Records<br>E Murray, Deputy Clerk</td><td>**2019-104513**</td></tr>
<tr><td colspan="3">09/30/2019 02:51:34 PM</td></tr>
<tr><td>MORT-MORT   Pgs=23 Stn=56 ATKW</td><td></td><td></td></tr>
<tr><td>$115.00 $15.00 $11.00 $6.00 $60.00</td><td></td><td>**$207.00**</td></tr>
</table>

RECORDING REQUESTED BY:

Dean S. Kaufman, Attorney at Law
4710 Village Plaza Loop, Suite 100
Eugene OR 97401

WHEN RECORDED, RETURN TO:

PacWest Funding Inc dba Precision Capital
4710 Village Plaza Loop Suite 100
Eugene, OR 97401

Loan Number: PC0919H
Property Address: 6100 SE 140th Ave,
Portland, OR 97236

*CHICAGO TITLE 4725180013㳘-42*

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT
### (*Commercial*)

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH
THE OREGON UNIFORM COMMERCIAL CODE

    This Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Deed of Trust") is made as of September 25, 2019, among Northwest Investment Holdings, LLC, an Oregon limited liability company,  , as trustor ("Borrower"), whose address is, 3403 Ross Ave, Gig Harbor, WA 98332; Dean S. Kaufman, Attorney at Law, as trustee ("Trustee") whose address is 4710 Village Plaza Loop, Suite 100, Eugene, OR 97401; and PacWest Funding Inc dba Precision Capital, as beneficiary ("Lender"), whose address is 4710 Village Plaza Loop Suite 100, Eugene, OR 97401.

**TRANSFER OF RIGHTS IN THE PROPERTY**

    To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower irrevocably GRANTS, BARGAINS, SELLS, AND CONVEYS to Trustee the Mortgaged Property, in trust, with power of sale and right of entry, subject only to the Permitted Encumbrances, to have and to hold the Mortgaged Property to Trustee, its successors in trust, and the Trustee's assigns forever, and Borrower does hereby bind itself, its successors, and its assigns to warrant and forever defend the title to the Mortgaged Property to Trustee against anyone lawfully claiming it or any part of it; provided, however, that if the Indebtedness is paid in full as and when it becomes due and payable and the Obligations are performed on or before the date they are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate; otherwise, they shall remain in full force and effect. As additional security for the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower grants to Lender a security interest in the Personalty, Fixtures, Leases, and Rents under the Uniform Commercial Code in effect in the State of Oregon.  Borrower further grants, bargains, conveys, assigns, transfers, and sets over to Trustee, acting as both a trustee and an agent for Lender under this Deed of Trust, a security interest in and to all of Borrower's right, title, and interest in, to, and under the Personalty, Fixtures, Leases, Rents, and Mortgaged Property (to the extent characterized as personal property) to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

    Borrower agrees to execute and deliver, from time to time, such further instruments, including, but not limited to, security agreements, assignments, and UCC financing statements, as may be requested by Lender to confirm the lien of this Deed of Trust on any of the Mortgaged Property.

    Borrower further irrevocably grants, transfers, and assigns to Lender the Rents. This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property under the Oregon Revised Statutes.

    TO MAINTAIN AND PROTECT THE SECURITY OF THIS DEED OF TRUST, TO SECURE THE FULL AND TIMELY PERFORMANCE BY BORROWER OF EACH AND EVERY OBLIGATION, COVENANT, AND AGREEMENT OF BORROWER UNDER THE LOAN DOCUMENTS, AND AS ADDITIONAL CONSIDERATION FOR THE INDEBTEDNESS AND OBLIGATIONS EVIDENCED BY THE LOAN DOCUMENTS, BORROWER HEREBY COVENANTS, REPRESENTS, AND AGREES AS FOLLOWS:

**1. Definitions.**  For purposes of this Deed of Trust, each of the following terms shall have the following respective meanings:

EXHIBIT TEN
2 of 25

RECORDING REQUESTED BY:

Dean S. Kaufman, Attorney at Law
4710 Village Plaza Loop, Suite 100
Eugene OR 97401

WHEN RECORDED, RETURN TO:

PacWest Funding Inc dba Precision Capital
4710 Village Plaza Loop Suite 100
Eugene, OR 97401

Loan Number: PC0919H
Property Address: 6100 SE 140th Ave,
Portland, OR 97236

*CHICAGO TITLE 47251800/399-42*

# DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT
### (Commercial)

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH
THE OREGON UNIFORM COMMERCIAL CODE.

This Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Deed of Trust") is made as of September 25, 2019, among Northwest Investment Holdings, LLC, an Oregon limited liability company,  , as trustor ("Borrower"), whose address is, 3403 Ross Ave, Gig Harbor, WA 98332; Dean S. Kaufman, Attorney at Law, as trustee ("Trustee") whose address is 4710 Village Plaza Loop, Suite 100, Eugene, OR 97401; and PacWest Funding Inc dba Precision Capital, as beneficiary ("Lender"), whose address is 4710 Village Plaza Loop Suite 100, Eugene, OR 97401.

## TRANSFER OF RIGHTS IN THE PROPERTY

To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower irrevocably GRANTS, BARGAINS, SELLS, AND CONVEYS to Trustee the Mortgaged Property, in trust, with power of sale and right of entry, subject only to the Permitted Encumbrances, to have and to hold the Mortgaged Property to Trustee, its successors in trust, and the Trustee's assigns forever, and Borrower does hereby bind itself, its successors, and its assigns to warrant and forever defend the title to the Mortgaged Property to Trustee against anyone lawfully claiming it or any part of it; provided, however, that if the Indebtedness is paid in full as and when it becomes due and payable and the Obligations are performed on or before the date they are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate; otherwise, they shall remain in full force and effect. As additional security for the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower grants to Lender a security interest in the Personalty, Fixtures, Leases, and Rents under the Uniform Commercial Code in effect in the State of Oregon. Borrower further grants, bargains, conveys, assigns, transfers, and sets over to Trustee, acting as both a trustee and an agent for Lender under this Deed of Trust, a security interest in and to all of Borrower's right, title, and interest in, to, and under the Personalty, Fixtures, Leases, Rents, and Mortgaged Property (to the extent characterized as personal property) to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

Borrower agrees to execute and deliver, from time to time, such further instruments, including, but not limited to, security agreements, assignments, and UCC financing statements, as may be requested by Lender to confirm the lien of this Deed of Trust on any of the Mortgaged Property.

Borrower further irrevocably grants, transfers, and assigns to Lender the Rents. This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property under the Oregon Revised Statutes.

TO MAINTAIN AND PROTECT THE SECURITY OF THIS DEED OF TRUST, TO SECURE THE FULL AND TIMELY PERFORMANCE BY BORROWER OF EACH AND EVERY OBLIGATION, COVENANT, AND AGREEMENT OF BORROWER UNDER THE LOAN DOCUMENTS, AND AS ADDITIONAL CONSIDERATION FOR THE INDEBTEDNESS AND OBLIGATIONS EVIDENCED BY THE LOAN DOCUMENTS, BORROWER HEREBY COVENANTS, REPRESENTS, AND AGREES AS FOLLOWS:

1. **Definitions.** For purposes of this Deed of Trust, each of the following terms shall have the following

     **1.2.**    "**Borrower**." The named Borrower in this Deed of Trust and the obligor under the Note, whether or not named as Borrower in this Deed of Trust, and subject to paragraph 19 and paragraph 20 of this Deed of Trust, the heirs, legatees, devisees, administrators, executors, successors in interest to the Mortgaged Property, and the assigns of any such person.

     **1.3.**    "**Default Rate**." The Default Rate as defined in the Note.

     **1.4.**    "**Event of Default**." An Event of Default as defined in paragraph 19 of this Deed of Trust.

     **1.5.**    "**Environmental Laws**." Any Governmental Requirements pertaining to health, industrial hygiene, or the environment, including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) as amended (42 United States Code ("U.S.C.") §§ 9601-9675); the Resource Conservation and Recovery Act of 1976 (RCRA) (42 U.S.C. §§ 6901-6992k); the Hazardous Materials Transportation Act (49 U.S.C. §§ 5101-5127); the Federal Water Pollution Control Act (33 U.S.C. §§ 1251-1376); the Clean Air Act (42 U.S.C. §§ 7401-7671q); the Toxic Substances Control Act (15 U.S.C. §§ 2601-2692); the Refuse Act (33 U.S.C. §§ 407-426p); the Emergency Planning and Community Right-To-Know Act (42 U.S.C. §§ 11001-11050); the Safe Drinking Water Act (42 U.S.C. §§ 300f-300j); the Federal Hazardous Waste Management Act as regulated by the Oregon Department of Environmental Quality; and, the environmental laws in effect in the State of Oregon as set forth in the Oregon Revised Statutes and the Oregon Administrative Rules.

     **1.6.**    "**Fixtures**." All right, title, and interest of Borrower in and to all materials, supplies, equipment, apparatus, and other items now or later attached to, installed on or in the Land or the Improvements, or that in some fashion are deemed to be fixtures to the Land or Improvements under the laws of the State of Oregon, including the Oregon Uniform Commercial Code. "Fixtures" includes, without limitation, all items of Personalty to the extent that they may be deemed Fixtures under Governmental Requirements.

     **1.7.**    "**Governmental Authority**." Any and all courts, boards, agencies, commissions, offices, or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city, or otherwise) whether now or later in existence.

     **1.8.**    "**Governmental Requirements**." Any and all laws, statutes, codes, ordinances, regulations, enactments, decrees, judgments, and orders of any Governmental Authority.

     **1.9.**    "**Hazardous Substance**." Any and all (a) substances defined as "hazardous substances," "hazardous materials," "toxic substances," or "solid waste" in CERCLA, RCRA, and the Hazardous Materials Transportation Act (49 United States Code §§5101-5127), and in the regulations promulgated under those laws; (b) substances defined as "hazardous waste" in ORS § 466.005 and in the rules adopted by the Oregon Environmental Quality Commission and the regulations implemented by the Oregon Department of Environmental Quality; (c) substances listed in the United States Department of Transportation Table (49 Code of Federal Regulations § 172.101 and amendments); (d) substances defined as "infectious waste," "regulated medical waste," "biomedical waste," or "biohazardous waste" in the Oregon Revised Statutes and Oregon Administrative Rules; (f) asbestos-containing materials; (g) polychlorinated biphenyl; (h) underground storage tanks, whether empty, filled, or partially filled with any substance; (i) petroleum and petroleum products, including crude oil or any fraction thereof, natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel, or any such mixture; and (j) such other substances, materials, and wastes that are or become regulated under applicable local, state, or federal law, or that are classified as hazardous or toxic under any Governmental Requirements or that, even if not so regulated, are known to pose a hazard to the health and safety of the occupants of the Mortgaged Property or of real property adjacent to it.

     **1.10.**    "**Impositions**." All real estate and personal property taxes, water, gas, sewer, electricity, and other utility rates and charges; charges imposed under any subdivision, planned unit development, or condominium declaration or restrictions; charges for any easement, license, or agreement maintained for the benefit of the Mortgaged Property, and all other taxes, charges, and assessments and any interest, costs, or penalties of any kind and nature that at any time before or after the execution of this Deed of Trust may be assessed, levied, or imposed on the Mortgaged Property or on its ownership, use, occupancy, or enjoyment.

     **1.11.**    "**Improvements**." Any and all buildings, structures, improvements, fixtures, and appurtenances now and later placed on the Mortgaged Property, including, without limitation, all apparatus and equipment, whether or not physically affixed to the land or any building, which is used to provide or supply air cooling, air conditioning, heat, gas, water, light, power, refrigeration, ventilation, laundry, drying, dish washing, garbage disposal, or other services; and all elevators, escalators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, partitions, ducts, compressors, plumbing, ovens, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pictures, antennas, pools, spas, pool and spa operation and maintenance equipment and apparatus, and trees and plants located on the Mortgaged Property, all of which, including replacements and additions, shall conclusively be deemed to be affixed to and be part of the Mortgaged Property conveyed to Trustee under this Deed of Trust.

     **1.12.**    "**Indebtedness**." The principal of, interest on, and all other amounts and payments due under or evidenced by the following:

are secured by the terms of this Deed of Trust, including, but not limited to, funds advanced to protect the security or priority of the Deed of Trust; and

1.InterestRate. Any amendment, modification, extension, rearrangement, restatement, renewal, substitution, or replacement of any of the foregoing.

**1.13.** "**Land**." The real estate or any interest in it described in Exhibit A attached to this Deed of Trust and made a part of it, together with all Improvements and Fixtures and all rights, titles, and interests appurtenant to it.

**1.14.** "**Leases**." Any and all leases, subleases, licenses, concessions, or other agreements (written or verbal, now or later in effect) that grant a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Mortgaged Property, and all other agreements, including, but not limited to, utility contracts, maintenance agreements, and service contracts that in any way relate to the use, occupancy, operation, maintenance, enjoyment, or ownership of the Mortgaged Property, except any and all leases, subleases, or other agreements under which Borrower is granted a possessory interest in the Land.

**1.15.** "**Legal Requirements**." Collectively, (a) any and all present and future judicial decisions, statutes, rulings, rules, regulations, permits, certificates, or ordinances of any Governmental Authority in any way applicable to Borrower, any guarantor (with respect to the Indebtedness or the Mortgaged Property), or the Mortgaged Property, including, but not limited to, those concerning its ownership, use, occupancy, possession, operation, maintenance, alteration, repair, or reconstruction, (b) Borrower's or guarantor's presently or subsequently effective bylaws and articles of incorporation, or any instruments establishing any partnership, limited partnership, same), (c) any and all Leases and other contracts (written or oral) of any nature to which Borrower or any guarantor may be bound, and (d) any and all restrictions, reservations, conditions, easements, or other covenants or agreements now or later of record affecting the Mortgaged Property.

**1.16.** "**Lender**." The named Lender in this Deed of Trust and the owner and holder (including a pledgee) of any Note, Indebtedness, or Obligations secured by this Deed of Trust, whether or not named as Lender in this Deed of Trust, and the heirs, legatees, devisees, administrators, executors, successors, and assigns of any such person.

**1.17.** "**Loan**." The extension of credit made by Lender to Borrower under the terms of the Loan Documents.

**1.18.** "**Loan Documents**." Collectively, this Deed of Trust, the Note, and all other instruments and agreements required to be executed by Borrower or any guarantor in connection with the Loan.

**1.19.** "**Riders to the Deed of Trust**." "Riders" means all riders to this Security Instrument that are executed by the Borrower. The following riders are to be executed by the Borrower (check riders as applicable):

( ) **PUD**
( ) **CONDOMINIUM**

**1.20.** "**Mortgaged Property**." The Land, Improvements, Fixtures, Personalty, Leases, and Rents located in the City of Portland, County of Multnomah, State of Oregon that is described as follows:

SEE EXHIBIT "A," ATTACHED HERETO AND MADE A PART HEREOF,

commonly known as 6100 SE 140th Ave, Portland, OR 97236 (the "Mortgaged Property");

together with:

1.20.1. All right, title, and interest (including any claim or demand or demand in law or equity) that Borrower now has or may later acquire in or to such Mortgaged Property; all easements, rights, privileges, tenements, hereditaments, and appurtenances belonging or in any way appertaining to the Mortgaged Property; all of the estate, right, title, interest, claim, demand, reversion, or remainder of Borrower in or to the Mortgaged Property, either at law or in equity, in possession or expectancy, now or later acquired; all crops growing or to be grown on the Mortgaged Property; all development rights or credits and air rights; all water and water rights (whether or not appurtenant to the Mortgaged Property) and shares of stock pertaining to such water or water rights, ownership of which affects the Mortgaged Property; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Mortgaged Property and all royalties and profits from any such rights or shares of stock; all right, title, and interest of Borrower in and to any streets, ways, alleys, strips, or gores of land adjoining the Land or any part of it that Borrower now owns or at any time later acquires and all adjacent lands within enclosures or occupied by buildings partly situated on the Mortgaged Property;

1.20.2. All intangible Mortgaged Property and rights relating to the Mortgaged Property or its operation or used in connection with it, including, without limitation, permits, licenses, plans, specifications, construction contracts, subcontracts, bids, deposits for utility services, installations, refunds due Borrower, trade names, trademarks, and service marks;

1.20.3. All of the right, title, and interest of Borrower in and to the land lying in the bed of any street, road, highway, or avenue in front of or adjoining the Land;

1.20.5. All certificates of deposit of Borrower in Lender's possession and all bank accounts of Borrower with Lender and their proceeds, and all deposits of Borrower with any Governmental Authority and/or public utility company that relate to the ownership of the Mortgaged Property;

1.20.6. All Leases of the Mortgaged Property or any part of it now or later entered into and all right, title, and interest of Borrower under such Leases, including cash or securities deposited by the tenants to secure performance of their obligations under such Leases (whether such cash or securities are to be held until the expiration of the terms of such Leases or applied to one or more of the installments of rent coming due immediately before the expiration of such terms), all rights to all insurance proceeds and unearned insurance premiums arising from or relating to the Mortgaged Property, all other rights and easements of Borrower now or later existing pertaining to the use and enjoyment of the Mortgaged Property, and all right, title, and interest of Borrower in and to all declarations of covenants, conditions, and restrictions as may affect or otherwise relate to the Mortgaged Property;

1.20.7. Any and all proceeds of any insurance policies covering the Mortgaged Property, whether or not such insurance policies were required by Lender as a condition of making the loan secured by this Deed of Trust or are required to be maintained by Borrower as provided below in this Deed of Trust; which proceeds are assigned to Lender, and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of such insurance policies from the insurers issuing the same and to give proper receipts and acquittances for such policies, and to apply the same as provided below;

1.20.8. If the Mortgaged Property includes a leasehold estate, all of Borrower's right, title, and interest in and to the lease, more particularly described in Exhibit A attached to this Deed of Trust (the Leasehold) including, without limitation, the right to surrender, terminate, cancel, waive, change, supplement, grant subleases of, alter, or amend the Leasehold;

1.20.9. All plans and specifications for the Improvements; all contracts and subcontracts relating to the Improvements; all deposits (including tenants' security deposits; provided, however, that if Lender acquires possession or control of tenants' security deposits Lender shall use the tenants' security deposits only for such purposes as Governmental Requirements permit), funds, accounts, contract rights, instruments, documents, general intangibles, and notes or chattel paper arising from or in connection with the Land or other Mortgaged Property; all permits, licenses, certificates, and other rights and privileges obtained in connection with the Land or other Mortgaged Property; all soils reports, engineering reports, land planning maps, drawings, construction contracts, notes, drafts, documents, engineering and architectural drawings, letters of credit, bonds, surety bonds, any other intangible rights relating to the Land and Improvements, surveys, and other reports, exhibits, or plans used or to be used in connection with the construction, planning, operation, or maintenance of the Land and Improvements and all amendments and modifications; all proceeds arising from or by virtue of the sale, lease, grant of option, or other disposition of all or any part of the Land, Fixtures, Personalty, or other Mortgaged Property (consent to same is not granted or implied); and all proceeds (including premium refunds) payable or to be payable under each insurance policy relating to the Land, Fixtures, Personalty, or other Mortgaged Property;

1.20.10. All trade names, trademarks, symbols, service marks, and goodwill associated with the Mortgaged Property and any and all state and federal applications and registrations now or later used in connection with the use or operation of the Mortgaged Property;

1.20.11. All tax refunds, bills, notes, inventories, accounts and charges receivable, credits, claims, securities, and documents of all kinds, and all instruments, contract rights, general intangibles, bonds and deposits, and all proceeds and products of the Mortgaged Property;

1.20.12. All money or other personal property of Borrower (including, without limitation, any instrument, deposit account, general intangible, or chattel paper, as defined in the Oregon Uniform Commercial Code) previously or later delivered to, deposited with, or that otherwise comes into Lender's possession;

1.20.13. All accounts, contract rights, chattel paper, documents, instruments, books, records, claims against third parties, money, securities, drafts, notes, proceeds, and other items relating to the Mortgaged Property;

1.20.14. All construction, supply, engineering, and architectural contracts executed and to be executed by Borrower for the construction of the Improvements; and

1.20.15. All proceeds of any of the foregoing.

As used in this Deed of Trust, "Mortgaged Property" is expressly defined as meaning all or, when the context permits or requires, any portion of it and all or, when the context permits or requires, any interest in it.

**1.21.** "**Note**." The Promissory Note dated September 25, 2019 payable by Borrower to the order of Lender which matures on OCTOBER 1, 2022, in the principal amount of THREE HUNDRED FORTY-SIX THOUSAND FIVE HUNDRED AND 00/100 DOLLARS ($346,500), evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments to the Promissory Note.

**1.22.** "**Obligations**." Any and all of the covenants, warranties, representations, and other obligations (other than to repay the Indebtedness) made or undertaken by Borrower to Lender or Trustee as set forth in the Loan Documents; any lease, sublease, or other agreement under which Borrower is granted a possessory interest in the Land; each obligation, covenant, and agreement of Borrower in the Loan Documents or in any other document executed by Borrower in connection with the loan(s) secured by this

charges to Lender whether or not set forth in this Deed of Trust; and charges, as allowed by law, when they are made for any statement regarding the obligations secured by this Deed of Trust.

The Obligations specifically exclude the Environmental Indemnity Agreement dated the date of this Deed of Trust, executed by Borrower and any guarantor of the Loan, which is not secured by this Deed of Trust.

**1.23.** "**Permitted Encumbrances.**" At any particular time, (a) liens for taxes, assessments, or governmental charges not then due and payable or not then delinquent; (b) liens, easements, encumbrances, and restrictions on the Mortgaged Property that are allowed by Lender to appear in Schedule B, with Parts I and II of an ALTA title policy to be issued to Lender following recordation of the Deed of Trust; and (c) liens in favor of or consented to in writing by Lender.

**1.24.** "**Person.**" Natural persons, corporations, partnerships, unincorporated associations, joint ventures, and any other form of legal entity.

**1.25.** "**Personalty.**" All of the right, title, and interest of Borrower in and to all tangible and intangible personal property, whether now owned or later acquired by Borrower, including, but not limited to, water rights (to the extent they may constitute personal property), all equipment, inventory, goods, consumer goods, accounts, chattel paper, instruments, money, general intangibles, letter-of-credit rights, deposit accounts, investment property, documents, minerals, crops, and timber (as those terms are defined in the Oregon Uniform Commercial Code) and that are now or at any later time located on, attached to, installed, placed, used on, in connection with, or are required for such attachment, installation, placement, or use on the Land, the Improvements, Fixtures, or on other goods located on the Land or Improvements, together with all additions, accessions, accessories, amendments, modifications to the Land or Improvements, extensions, renewals, and enlargements and proceeds of the Land or Improvements, substitutions for, and income and profits from, the Land or Improvements. The Personalty includes, but is not limited to, all goods, machinery, tools, equipment (including fire sprinklers and alarm systems); building materials, air conditioning, heating, refrigerating, electronic monitoring, entertainment, recreational, maintenance, extermination of vermin or insects, dust removal, refuse and garbage equipment; vehicle maintenance and repair equipment; office furniture (including tables, chairs, planters, desks, sofas, shelves, lockers, and cabinets); safes, furnishings, appliances (including ice-making machines, refrigerators, fans, water heaters, and incinerators); rugs, carpets, other floor coverings, draperies, drapery rods and brackets, awnings, window shades, venetian blinds, curtains, other window coverings; lamps, chandeliers, other lighting fixtures; office maintenance and other supplies; loan commitments, financing arrangements, bonds, construction contracts, leases, tenants' security deposits, licenses, permits, sales contracts, option contracts, lease contracts, insurance policies, proceeds from policies, plans, specifications, surveys, books, records, funds, bank deposits; and all other intangible personal property. Personalty also includes any other portion or items of the Mortgaged Property that constitute personal property under the Oregon Uniform Commercial Code.

**1.26.** "**Rents.**" All rents, issues, revenues, income, proceeds, royalties, profits, license fees, prepaid municipal and utility fees, bonds, and other benefits to which Borrower or the record title owner of the Mortgaged Property may now or later be entitled from or which are derived from the Mortgaged Property, including, without limitation, sale proceeds of the Mortgaged Property; any room or space sales or rentals from the Mortgaged Property; and other benefits paid or payable for using, leasing, licensing, possessing, operating from or in, residing in, selling, mining, extracting, or otherwise enjoying or using the Mortgaged Property.

**1.27.** "**Water Rights.**" All water rights of whatever kind or character, surface or underground, appropriative, decreed, or vested, that are appurtenant to the Mortgaged Property or otherwise used or useful in connection with the intended development of the Mortgaged Property.

Any terms not otherwise defined in this Deed of Trust shall have the meaning given them in the Note dated of even date herewith between Borrower and Lender.

**2.** **Repair and Maintenance of Mortgaged Property.** Borrower shall (a) keep the Mortgaged Property in good condition and repair; (b) not substantially alter, remove, or demolish the Mortgaged Property or any of the Improvements except when incident to the replacement of Fixtures, equipment, machinery, or appliances with items of like kind; (c) restore and repair to the equivalent of its original condition all or any part of the Mortgaged Property that may be damaged or destroyed, including, but not limited to, damage from termites and dry rot, soil subsidence, and construction defects, whether or not insurance proceeds are available to cover any part of the cost of such restoration and repair, and regardless of whether Lender permits the use of any insurance proceeds to be used for restoration under paragraph 5 of this Deed of Trust; (d) pay when due all claims for labor performed and materials furnished in connection with the Mortgaged Property and not permit any mechanics' or materialman's lien to arise against the Mortgaged Property or furnish a loss or liability bond against such mechanics' or materialman's lien claims; (e) comply with all laws affecting the Mortgaged Property or requiring that any alterations, repairs, replacements, or improvements be made on it; (f) not commit or permit waste on or to the Mortgaged Property, or commit, suffer, or permit any act or violation of law to occur on it; (g) not abandon the Mortgaged Property; (h) cultivate, irrigate, fertilize, fumigate, and prune in accordance with prudent agricultural practices; (i) if required by Lender, provide for management satisfactory to Lender under a management contract approved by Lender; (j) notify Lender in writing of any condition at or on the Mortgaged Property that may have a significant and measurable effect on its market value; (k) if the

Trust, as specified in the loan application and the Loan Documents. Borrower shall not initiate or acquiesce in a change in the zoning classification of the Mortgaged Property without Lender's prior written consent.

**4.      Insurance.**

    **4.1.      Casualty Insurance.** Borrower shall at all times keep the Mortgaged Property insured for the benefit of Trustee and Lender as follows, despite Governmental Requirements that may detrimentally affect Borrower's ability to obtain or may materially increase the cost of such insurance coverage:

        4.1.1. Against damage or loss by fire and such other hazards (including lightning, windstorm, hail, explosion, riot, acts of striking employees, civil commotion, vandalism, malicious mischief, aircraft, vehicle, and smoke) as are covered by the broadest form of extended coverage endorsement available from time to time, in an amount not less than the full insurable value (as defined in paragraph 4.9 of the Mortgaged Property, with a deductible amount not to exceed an amount satisfactory to Lender;

        4.1.2. Rent loss or business interruption or use and occupancy insurance on such basis and in such amounts and with such deductibles as are satisfactory to Lender;

        4.1.3. Against damage or loss by flood if the Land is located in an area identified by the Secretary of Housing and Urban Development or any successor or other appropriate authority (governmental or private) as an area having special flood hazards and in which flood insurance is available under the National Flood Insurance Act of 1968 or the Flood Disaster Protection Act of 1973, as amended, modified, supplemented, or replaced from time to time, on such basis and in such amounts as Lender may require;

        4.1.4. Against damage or loss from (a) sprinkler system leakage and (b) boilers, boiler tanks, heating and air conditioning equipment, pressure vessels, auxiliary piping, and similar apparatus, on such basis and in such amounts as Lender may require;

        4.1.5. During any alteration, construction, or replacement of the Improvements, or any substantial portion of it, a Builder's All Risk policy with extended coverage with course of construction and completed value endorsements, for an amount at least equal to the full insurable value of the Improvements, and workers' compensation, in statutory amounts, with provision for replacement with the coverage described in paragraph 4.1, without gaps or lapsed coverage, for any completed portion of the Improvements; and

        4.1.6. Against damage or loss by earthquake, in an amount and with a deductible satisfactory to Lender, if such insurance is required by Lender in the exercise of its business judgment in light of the commercial real estate practices existing at the time the insurance is issued and in the County where the Land is located.

    **4.2.      Liability Insurance.** For Commercial Real Estate or Construction, Borrower shall procure and maintain workers' compensation insurance for Borrower's employees and comprehensive general liability insurance covering, as applicable, Borrower, Trustee, and Lender against claims for bodily injury or death or for damage occurring in, on, about, or resulting from the Mortgaged Property, or any street, drive, sidewalk, curb, or passageway adjacent to it, in standard form and with such insurance company or companies and in an amount approved by Lender, which insurance shall include completed operations, product liability, and blanket contractual liability coverage that insures contractual liability under the indemnifications set forth in this Deed of Trust and the Loan Documents (but such coverage or its amount shall in no way limit such indemnification).

    **4.3.      Other Insurance.** Borrower shall procure and maintain such other insurance or such additional amounts of insurance, covering Borrower or the Mortgaged Property, as (a) may be required by the terms of any construction contract for the Improvements or by any Governmental Authority, (b) may be specified in any other Loan Documents, or (c) may be required by Lender from time to time.

    **4.4.      Form of Policies.** All insurance required under this paragraph 4 shall be fully paid for and nonassessable. The policies shall contain such provisions, endorsements, and expiration dates as Lender from time to time reasonably requests and shall be in such form and amounts, and be issued by such insurance companies doing business in the State of Oregon, as Lender shall approve in Lender's sole and absolute discretion. Unless otherwise expressly approved in writing by Lender, each insurer shall have a Best Rating of Class A, Category VIII, or better. All policies shall (a) contain a waiver of subrogation endorsement; (b) provide that the policy will not lapse or be canceled, amended, or materially altered (including by reduction in the scope or limits of coverage) without at least 30 days prior written notice to Lender; (c) with the exception of the comprehensive general liability policy, contain a mortgagee's endorsement (438 BFU Endorsement or equivalent), and name Lender and Trustee as insureds; and (d) include such deductibles as Lender may approve. If a policy required under this paragraph contains a co-insurance or overage clause, the policy shall include a stipulated value or agreed amount endorsement acceptable to Lender.

    **4.5.      Duplicate Originals or Certificates.** Duplicate original policies evidencing the insurance required under this paragraph 4 and any additional insurance that may be purchased on the Mortgaged Property by or on behalf of Borrower shall be deposited with and held by Lender and, in addition, Borrower shall deliver to Lender (a) receipts evidencing payment of all premiums on the policies and (b) duplicate original renewal policies or a binder with evidence satisfactory to Lender of payment of all premiums at least 30 days before the policy expires. In lieu of the duplicate original policies to be

written notice from Lender, procure such additional coverage as Lender may require in Lender's sole and absolute discretion.

**4.7.     No Separate Insurance.**  Borrower shall not carry separate or additional insurance concurrent in form or contributing in the event of loss with that required under this paragraph 4 unless endorsed in favor of Trustee and Lender as required by this paragraph and otherwise approved by Lender in all respects.

**4.8.     Transfer of Title.**  In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Mortgaged Property in extinguishment, in whole or in part, of the Obligations and the Indebtedness, all right, title, and interest of Borrower in and to all insurance policies required under this paragraph 4 or otherwise then in force with respect to the Mortgaged Property and all proceeds payable under, and unearned premiums on, such policies shall immediately vest in the purchaser or other transferee of the Mortgaged Property.

**4.9.     Replacement Cost.**  For purposes of this paragraph 4, the term "full insurable value" means the actual cost of replacing the Mortgaged Property in question, without allowance for depreciation, as calculated from time to time (but not more often than once every calendar year) by the insurance company or companies holding such insurance or, at Lender's request, by appraisal made by an appraiser, engineer, architect, or contractor proposed by Borrower and approved by said insurance company or companies and Lender. Borrower shall pay the cost of such appraisal.

**4.10.     Approval Not Warranty.**  No approval by Lender of any insurer may be construed to be a representation, certification, or warranty of its solvency and no approval by Lender as to the amount, type, or form of any insurance may be construed to be a representation, certification, or warranty of its sufficiency.

**4.11.     Lender's Right to Obtain.**  Borrower shall deliver to Lender original policies or certificates evidencing such insurance at least 30 days before the existing policies expire. If any such policy is not so delivered to Lender or if any such policy is canceled, whether or not Lender has the policy in its possession, and no reinstatement or replacement policy is received before termination of insurance, Lender, without notice to or demand on Borrower, may (but is not obligated to) obtain such insurance insuring only Lender and Trustee with such company as Lender may deem satisfactory, and pay the premium for such policies, and the amount of any premium so paid shall be charged to and promptly paid by Borrower or, at Lender's option, may be added to the Indebtedness. Borrower acknowledges that, if Lender obtains insurance, it is for the sole benefit of Lender and Trustee, and Borrower shall not rely on any insurance obtained by Lender to protect Borrower in any way.

**4.12.     Duty to Restore After Casualty.**  If any act or occurrence of any kind or nature (including any casualty for which insurance was not obtained or obtainable) results in damage to or loss or destruction of the Mortgaged Property, Borrower shall immediately give notice of such loss or damage to Lender and, if Lender so instructs, shall promptly, at Borrower's sole cost and expense, regardless of whether any insurance proceeds will be sufficient for the purpose, commence and continue diligently to completion to restore, repair, replace, and rebuild the Mortgaged Property as nearly as possible to its value, condition, and character immediately before the damage, loss, or destruction.

**5.     Condemnation and Insurance Proceeds.**

**5.1.     Assignment to Lender.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of or damage or injury to the Mortgaged Property, or any part of it, or for conveyance in lieu of condemnation, are assigned to and shall be paid to Lender, regardless of whether Lender's security is impaired. All causes of action, whether accrued before or after the date of this Deed of Trust, of all types for damages or injury to the Mortgaged Property or any part of it, or in connection with any transaction financed by funds lent to Borrower by Lender and secured by this Deed of Trust, or in connection with or affecting the Mortgaged Property or any part of it, including, without limitation, causes of action arising in tort or contract or in equity, are assigned to Lender as additional security, and the proceeds shall be paid to Lender. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of such action. Borrower shall notify Lender in writing immediately on obtaining knowledge of any casualty damage to the Mortgaged Property or damage in any other manner in excess of $5,000.00 or knowledge of the institution of any proceeding relating to condemnation or other taking of or damage or injury to all or any portion of the Mortgaged Property. Lender, in its sole and absolute discretion, may participate in any such proceedings and may join Borrower in adjusting any loss covered by insurance. Borrower covenants and agrees with Lender, at Lender's request, to make, execute, and deliver, at Borrower's expense, any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award or awards, causes of action, or claims of damages or proceeds to Lender free, clear, and discharged of any and all encumbrances of any kind or nature.

**5.2.     Insurance Payments.**  All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Lender may become entitled with respect to the Mortgaged Property if any damage or injury occurs to the Mortgaged Property, other than by a partial condemnation or other partial taking of the Mortgaged Property, shall be paid over to Lender and shall be applied first toward reimbursement of all costs and expenses of Lender in connection with their recovery and disbursement, and shall then be applied as follows:

5.2.1.   Lender shall consent to the application of such payments to the restoration of the

construction and completion of restoration and rebuilding of the Mortgaged Property shall be completed in accordance with plans and specifications and drawings submitted to Lender within 30 days after receipt by Lender of the restoration plan and thereafter approved by Lender, which plans, specifications, and drawings shall not be substantially modified, changed, or revised without Lender's prior written consent; (f) within 3 months after such damage, Borrower and a licensed contractor satisfactory to Lender enter into a fixed price or guaranteed maximum price contract satisfactory to Lender, providing for complete restoration in accordance with such restoration plan for an amount not to exceed the amount of funds held or to be held by Lender; (g) all restoration of the Improvements so damaged or destroyed shall be made with reasonable promptness and shall be of a value at least equal to the value of the Improvements so damaged or destroyed before such damage or destruction; (h) Lender reasonably determines that there is an identified source (whether from income from the Mortgaged Property, rental loss insurance, or another source) sufficient to pay all debt service and operating expenses of the Mortgaged Property during its restoration as required above; and (i) any and all funds that are made available for restoration and rebuilding under this paragraph 5 shall be disbursed, at Lender's sole and absolute discretion to Lender, through Lender, the Trustee, or a title insurance or trust company satisfactory to Lender, in accordance with standard construction lending practices, including a reasonable fee payable to Lender from such funds and, if Lender requests, mechanics' lien waivers and title insurance date-downs, and the provision of payment and performance bonds by Borrower, or in any other manner approved by Lender in Lender's sole and absolute discretion; or

    5.2.2. If fewer than all conditions (a) through (i) in paragraph 5.2.1 are satisfied, then such payments shall be applied in the sole and absolute discretion of Lender (a) to the payment or prepayment, with any applicable prepayment premium, of any Indebtedness secured by this Deed of Trust in such order as Lender may determine, or (b) to the reimbursement of Borrower's expenses incurred in the rebuilding and restoration of the Mortgaged Property. If Lender elects under this paragraph 5.2.2 to make any funds available to restore the Mortgaged Property, then all of conditions (a) through (i) in paragraph 5.2.1 shall apply, except for such conditions that Lender, in its sole and absolute discretion, may waive.

    **5.3.**  **Material Loss Not Covered.** If any material part of the Mortgaged Property is damaged or destroyed and the loss, measured by the replacement cost of the Improvements according to then current Governmental Requirements, is not adequately covered by insurance proceeds collected or in the process of collection, Borrower shall deposit with Lender, within 30 days after Lender's request, the amount of the loss not so covered.

    **5.4.**  **Total Condemnation Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a total condemnation or other total taking of the Mortgaged Property shall be paid over to Lender and shall be applied first to reimbursement of all Lender's costs and expenses in connection with their recovery, and shall then be applied to the payment of any Indebtedness secured by this Deed of Trust in such order as Lender may determine, until the Indebtedness secured by this Deed of Trust has been paid and satisfied in full. Any surplus remaining after payment and satisfaction of the Indebtedness secured by this Deed of Trust shall be paid to Borrower as its interest may then appear.

    **5.5.**  **Partial Condemnation Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments ("funds") that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a partial condemnation or other partial taking of the Mortgaged Property, unless Borrower and Lender otherwise agree in writing, shall be divided into two portions, one equal to the principal balance of the Note at the time of receipt of such funds and the other equal to the amount by which such funds exceed the principal balance of the Note at the time of receipt of such funds. The first such portion shall be applied to the sums secured by this Deed of Trust, whether or not then due, including but not limited to principal, accrued interest, and advances, and in such order or combination as Lender may determine, with the balance of the funds paid to Borrower. Any dispute as to the fair market value of the Mortgaged Property shall be settled by arbitration in accordance with the Real Estate Valuation Arbitration Rules of the American Arbitration Association.

    **5.6.**  **No Cure or Waiver of Default.** Any application of such amounts or any portion of it to any Indebtedness secured by this Deed of Trust shall not be construed to cure or waive any default or notice of default under this Deed of Trust or invalidate any act done under any such default or notice.

  **6.**  **Taxes and Other Sums Due.** Borrower shall promptly pay, satisfy, and discharge: (a) all Impositions affecting the Mortgaged Property before they become delinquent; (b) such other amounts, chargeable against Borrower or the Mortgaged Property, as Lender reasonably deems necessary to protect and preserve the Mortgaged Property, this Deed of Trust, or Lender's security for the performance of the Obligations; (c) all encumbrances, charges, and liens on the Mortgaged Property, with interest, which in Lender's judgment are, or appear to be, prior or superior to the lien of this Deed of Trust or all costs necessary to obtain protection against such lien or charge by title insurance endorsement or surety company bond; (d) such other charges as Lender deems reasonable for services rendered by Lender at Borrower's request; and (e) all costs, fees, and expenses incurred by Lender in connection with this Deed of Trust, whether or not specified in this Deed of Trust.

    On Lender's request, Borrower shall promptly furnish Lender with all notices of sums due for any amounts specified in the preceding clauses 6(a) through (e), and, on payment, with written evidence of such

7.    **Leases of Mortgaged Property by Borrower.** At Lender's request, Borrower shall furnish Lender with executed copies of all Leases of the Mortgaged Property or any portion of it then in force. If Lender so requires, all Leases later entered into by Borrower are subject to Lender's prior review and approval and must be acceptable to Lender in form and content. Each Lease must specifically provide, inter alia, that (a) it is subordinate to the lien of this Deed of Trust; (b) the tenant attorns to Lender (and Borrower consents to any such attornment), such attornment to be effective on Lender's acquisition of title to the Mortgaged Property; (c) the tenant agrees to execute such further evidence of attornment as Lender may from time to time request; (d) the tenant's attornment shall not be terminated by foreclosure; and (e) Lender, at Lender's option, may accept or reject such attornment. If Borrower learns that any tenant proposes to do, or is doing, any act that may give rise to any right of setoff against rent, Borrower shall immediately (i) take measures reasonably calculated to prevent the accrual of any such right of setoff; (ii) notify Lender of all measures so taken and of the amount of any setoff claimed by any such tenant; and (iii) within 10 days after the accrual of any right of setoff against rent, reimburse any tenant who has acquired such right, in full, or take other measures that will effectively discharge such setoff and ensure that rents subsequently due shall continue to be payable without claim of setoff or deduction.

At Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all Leases of the Mortgaged Property, and all security deposits made by tenants in connection with such Leases. On assignment to Lender of any such Lease, Lender shall succeed to all rights and powers of Borrower with respect to such Lease, and Lender, in Lender's sole and absolute discretion, shall have the right to modify, extend, or terminate such Lease and to execute other further leases with respect to the Mortgaged Property that is the subject of such assigned Lease.

Neither Borrower, tenant nor any other occupant of the Mortgaged Property shall use the Mortgaged Property, except in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations; nor shall Borrower, tenant or any other occupant cause the Mortgaged Property to become subject to any use that is not in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations.

If Borrower suspects any tenant or other occupant of the Mortgaged Property is using the Mortgaged Property in a manner that is not in compliance with any Governmental Requirement to which Borrower, tenant, or any other occupant of the Mortgaged Property is subject, Borrower shall immediately take appropriate action to remedy the violation, and shall notify Lender of any potential violation within one (1) day of discovery of any such potential violation. In accordance with section 19.13 below, any potential violation by a tenant or any other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Note and this Deed of Trust, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in Section 21.

8.    **Right to Collect and Receive Rents.** Despite any other provision of this Deed of Trust, Lender grants permission to Borrower to collect and retain the Rents of the Mortgaged Property as they become due and payable; however, such permission to Borrower shall be automatically revoked on default by Borrower in payment of any Indebtedness secured by this Deed of Trust or in the performance of any of the Obligations, and Lender shall have the rights set forth in the Revised Code of Oregon regardless of whether declaration of default has been delivered to Trustee as provided in paragraph 21 of this Deed of Trust, and without regard to the adequacy of the security for the Indebtedness secured by this Deed of Trust. Failure of or discontinuance by Lender at any time, or from time to time, to collect any such Rents shall not in any manner affect the subsequent enforcement by Lender at any time, or from time to time, of the right, power, and authority to collect these Rents. The receipt and application by Lender of all such Rents under this Deed of Trust, after execution and delivery of declaration of default and demand for sale as provided in this Deed of Trust or during the pendency of trustee's sale proceedings under this Deed of Trust, shall neither cure such breach or default nor affect such sale proceedings, or any sale made under them, but such Rents, less all costs of operation, maintenance, collection, and Attorney Fees, when received by Lender, may be applied in reduction of the entire Indebtedness from time to time secured by this Deed of Trust, in such order as Lender may decide. Nothing in this Deed of Trust, nor the exercise of Lender's right to collect, nor an assumption by Lender of any tenancy, lease, or option, nor an assumption of liability under, nor a subordination of the lien or charge of this Deed of Trust to, any such tenancy, lease, or option, shall be, or be construed to be, an affirmation by Lender of any tenancy, lease, or option.

If the Rents of the Mortgaged Property are not sufficient to meet the costs, if any, of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an Indebtedness of Borrower to Lender secured by this Deed of Trust. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable on notice from Lender to Borrower requesting such payment and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to Governmental Requirements, in which event the amounts shall bear interest at the highest rate that may be collected from Borrower under Governmental Requirements.

Borrower expressly understands and agrees that Lender will have no liability to Borrower or any other person for Lender's failure or inability to collect Rents from the Mortgaged Property or for **EXHIBIT TEN** collect such Rents in an amount that is equal to the fair market rental value of the Mortgaged Property.

possession or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it.

During an Event of Default, any and all Rents collected or received by Borrower shall be accepted and held for Lender in trust and shall not be commingled with Borrower's funds and property, but shall be promptly paid over to Lender.

9.      **Funds for Taxes and Insurance.** If Borrower is in default under this Deed of Trust or any of the Loan Documents, regardless of whether the default has been cured, then Lender may at any subsequent time, at its option to be exercised on 30 days written notice to Borrower, require Borrower to deposit with Lender or its designee, at the time of each payment of an installment of interest or principal under the Note, an additional amount sufficient to discharge the obligations of Borrower under the Note and this Deed of Trust as they become due. The calculation of the amount payable and of the fractional part of it to be deposited with Lender shall be made by Lender in its sole and absolute discretion. These amounts shall be held by Lender or its designee not in trust and not as agent of Borrower and shall not bear interest, and shall be applied to the payment of any of the Obligations under the Loan Documents in such order or priority as Lender shall determine. If at any time within 30 days before the due date of these obligations the amounts then on deposit shall be insufficient to pay the obligations under the Note and this Deed of Trust in full, Borrower shall deposit the amount of the deficiency with Lender within 10 days after Lender's demand. If the amounts deposited are in excess of the actual obligations for which they were deposited, Lender may refund any such excess, or, at its option, may hold the excess in a reserve account, not in trust and not bearing interest, and reduce proportionately the required monthly deposits for the ensuing year. Nothing in this paragraph shall be deemed to affect any right or remedy of Lender under any other provision of this Deed of Trust or under any statute or rule of law to pay any such amount and to add the amount so paid to the Indebtedness secured by this Deed of Trust. Lender shall have no obligation to pay insurance premiums or taxes except to the extent the fund established under this paragraph is sufficient to pay such premiums or taxes, to obtain insurance, or to notify Borrower of any matters relative to the insurance or taxes for which the fund is established under this paragraph.

Lender or its designee shall hold all amounts so deposited as additional security for the sums secured by this Deed of Trust. Lender may, in its sole and absolute discretion and without regard to the adequacy of its security under this Deed of Trust, apply such amounts or any portion of it to any Indebtedness secured by this Deed of Trust, and such application shall not be construed to cure or waive any default or notice of default under this Deed of Trust.

If Lender requires deposits to be made under this paragraph 9, Borrower shall deliver to Lender all tax bills, bond and assessment statements, statements for insurance premiums, and statements for any other obligations referred to above as soon as Borrower receives such documents.

If Lender sells or assigns this Deed of Trust, Lender shall have the right to transfer all amounts deposited under this paragraph 9 to the purchaser or assignee. After such a transfer, Lender shall be relieved and have no further liability under this Deed of Trust for the application of such deposits, and Borrower shall look solely to such purchaser or assignee for such application and for all responsibility relating to such deposits.

10.      **Assignment of Causes of Action, Awards, and Damages.** All causes of action, and all sums due or payable to Borrower for injury or damage to the Mortgaged Property, or as damages incurred in connection with the transactions in which the Loan secured by this Deed of Trust was made, including, without limitation, causes of action and damages for breach of contract, fraud, concealment, construction defects, or other torts, or compensation for any conveyance in lieu of condemnation, are assigned to Lender, and all proceeds from such causes of action and all such sums shall be paid to Lender for credit against the Indebtedness secured by this Deed of Trust. Borrower shall notify Lender immediately on receipt by Borrower of notice that any such sums have become due or payable and, immediately on receipt of any such sums, shall promptly remit such sums to Lender.

After deducting all expenses, including Attorney Fees, incurred by Lender in recovering or collecting any sums under this paragraph 10, Lender may apply or release the balance of any funds received by it under this paragraph, or any part of such balance, as it elects. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any cause of action assigned to it under this paragraph and may make any compromise or settlement in such action whatsoever. Borrower covenants that it shall execute and deliver to Lender such further assignments of any such compensation awards, damages, or causes of action as Lender may request from time to time. If Lender fails or does not elect to prosecute any such action or proceeding and Borrower elects to do so, Borrower may conduct the action or proceeding at its own expense and risk.

11.      **Defense of Deed of Trust; Litigation.** Borrower shall give Lender immediate written notice of any action or proceeding (including, without limitation, any judicial, whether civil, criminal, or probate, or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Deed of Trust, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents. Despite any other provision of this Deed of Trust, Borrower agrees that Lender or Trustee may (but is not obligated to) commence, appear in, prosecute, defend, compromise, and settle, in Lender's or Borrower's name, and as attorney-in-fact for Borrower, and incur necessary costs and expenses, including Attorney Fees in so doing, any action or proceeding, whether a civil, criminal, or

otherwise, and whether or not the interest of Lender or Trustee in the Mortgaged Property is directly questioned in such action or proceeding, including, without limitation, any action for the condemnation or partition of all or any portion of the Mortgaged Property and any action brought by Lender to foreclose this Deed of Trust or to enforce any of its terms or provisions.

12.    **Borrower's Failure to Comply With Deed of Trust**. If Borrower fails to make any payment or do any act required by this Deed of Trust, or if there is any action or proceeding (including, without limitation, any judicial or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Deed of Trust, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Note or this Deed of Trust, Lender or Trustee may (but is not obligated to) (a) make any such payment or do any such act in such manner and to such extent as either deems necessary to preserve or protect the Mortgaged Property, this Deed of Trust, or Lender's security for the performance of Borrower's Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, Lender and Trustee being authorized to enter on the Mortgaged Property for any such purpose; and (b) in exercising any such power, pay necessary expenses, retain attorneys, and pay Attorney Fees incurred in connection with such action, without notice to or demand on Borrower and without releasing Borrower from any Obligations or Indebtedness.

13.    **Sums Advanced to Bear Interest and to Be Secured by Deed of Trust**. At Lender's request, Borrower shall immediately pay any sums advanced or paid by Lender or Trustee under any provision of this Deed of Trust or the other Loan Documents. Until so repaid, all such sums and all other sums payable to Lender or Trustee shall be added to, and become a part of, the Indebtedness secured by this Deed of Trust and bear interest from the date of advancement or payment by Lender or Trustee at the same rate as provided in the Note, unless payment of interest at such rate would be contrary to Governmental Requirements. All sums advanced by Lender under this Deed of Trust or the other Loan Documents, whether or not required to be advanced by Lender under the terms of this Deed of Trust or the other Loan Documents, shall conclusively be deemed to be mandatory advances required to preserve and protect this Deed of Trust and Lender's security for the performance of the Obligations and payment of the Indebtedness, and shall be secured by this Deed of Trust to the same extent and with the same priority as the principal and interest payable under the Note.

14.    **Inspection of Mortgaged Property**. Lender may make, or authorize other persons, including, but not limited to, appraisers and prospective purchasers at any foreclosure sale commenced by Lender, to enter on or inspect the Mortgaged Property at reasonable times and for reasonable durations. Borrower shall permit all such entries and inspections to be made as long as Lender has given Borrower written notice of such inspection at least 24 hours before the entry and inspection.

15.    **Financial Statements; Estoppel Certificates**.

     15.1.    **Borrower's Financial Statements**. On receipt of Lender's written request and without expense to Lender, Borrower shall furnish to Lender (a) an annual statement of the operation of the Mortgaged Property prepared and certified by Borrower, showing in reasonable detail satisfactory to Lender total Rents received and total expenses together with an annual balance sheet and profit and loss statement, within 90 days after the close of each fiscal year of Borrower, beginning with the fiscal year first ending after the date of recordation of this Deed of Trust; (b) within 30 days after the end of each calendar quarter (March 31, June 30, September 30, December 31) interim statements of the operation of the Mortgaged Property showing in reasonable detail satisfactory to Lender total Rents and other income and receipts received and total expenses for the previous quarter, certified by Borrower; and (c) copies of Borrower's annual state and federal income tax returns within 30 days after filing them. Borrower shall keep accurate books and records, and allow Lender, its representatives and agents, on notice, at any time during normal business hours, access to such books and records regarding acquisition, construction, and development of the Mortgaged Property, including any supporting or related vouchers or papers, shall allow Lender to make extracts or copies of any such papers, and shall furnish to Lender and its agents convenient facilities for the audit of any such statements, books, and records.

     15.2.    **Recordkeeping**. Borrower shall keep adequate records and books of account in accordance with generally accepted accounting principles and practices and shall permit Lender, by its agents, accountants, and attorneys, to examine Borrower's records and books of account and to discuss the affairs, finances, and accounts of Borrower with the officers of Borrower, at such reasonable times as Lender may request.

     15.3.    **Guarantors' Financial Statements**. Except to the extent already required by paragraph 15.1, Borrower, its controlling shareholders, and all guarantors of the Indebtedness, if any, shall deliver to Lender with reasonable promptness after the close of their respective fiscal years a balance sheet and profit and loss statement, prepared by an independent certified public accountant satisfactory to Lender, setting forth in each case, in comparative form, figures for the preceding year, which statements shall be accompanied by the unqualified opinion of such accountant as to their accuracy. Throughout the term of this Deed of Trust, Borrower and any guarantor shall deliver, with reasonable promptness, to Lender such other information with respect to Borrower or guarantor as Lender may from time to time request. All financial statements of Borrower or guarantor shall be prepared in accordance with generally accepted accounting principles and practices applied on a consistent basis and shall be delivered in duplicate. Documents and information submitted by Borrower to Lender are submitted confidentially, and Lender

Documents are unmodified and in full force and effect, or that the Loan Documents are in full force and effect as modified and specifying all modifications asserted by Borrower. Such certificate shall also recite the amount of the Indebtedness and cover other matters with respect to the Indebtedness or Obligations as Lender may reasonably require, the date(s) through which payments due on the Indebtedness have been paid and the amount(s) of any payments previously made on the Indebtedness. The certificate shall include a detailed statement of any right of setoff, counterclaim, or other defense that Borrower contends exists against the Indebtedness or the Obligations; a statement that such person knows of no Event of Default or prospective Event of Default that has occurred and is continuing, or, if any Event of Default or prospective Event of Default has occurred and is continuing, a statement specifying the nature and period of its existence and what action Borrower has taken or proposes to take with respect to such matter; and, except as otherwise specified, a statement that Borrower has fulfilled all Obligations that are required to be fulfilled on or before the date of such certificate.

        **15.5.**    <u>**Failure to Deliver Estoppel Certificate.**</u> If Borrower fails to execute and deliver the certificate required by paragraph 15.4 within such 10-day period, (a) the Loan Documents shall, as to Borrower, conclusively be deemed to be either in full force and effect, without modification, or in full force and effect, modified in the manner and to the extent specified by Lender, whichever Lender reasonably and in good faith may represent; (b) the Indebtedness shall, as to Borrower, conclusively be deemed to be in the amount specified by Lender and no setoffs, counterclaims, or other defenses exist against the Indebtedness; and (c) Borrower shall conclusively be deemed to have irrevocably constituted and appointed Lender as Borrower's special attorney-in-fact to execute and deliver such certificate to any third party.

        **15.6.**    <u>**Reliance on Estoppel Certificate.**</u> Borrower and Lender expressly agree that any certificate executed and delivered by Borrower, or any representation in lieu of a certificate made by Lender under paragraph 15.5, may be relied on by any prospective purchaser or any prospective assignee of any interest of Lender in the Note and other Indebtedness secured by this Deed of Trust or in the Mortgaged Property, and by any other person, without independent investigation or examination, to verify the accuracy, reasonableness, or good faith of the recitals in the certificate or representation.

        **15.7.**    <u>**No Waiver of Default or Rights.**</u> Lender's exercise of any right or remedy provided by this paragraph 15 shall not constitute a waiver of, or operate to cure, any default by Borrower under this Deed of Trust, or preclude any other right or remedy that is otherwise available to Lender under this Deed of Trust or Governmental Requirements.

**16.**    <u>**Uniform Commercial Code Security Agreement.**</u> This Deed of Trust is intended to be and constitute a security agreement under the Oregon Uniform Commercial Code for any of the Personalty specified as part of the Mortgaged Property that, under Governmental Requirements, may be subject to a security interest under the Oregon Uniform Commercial Code, and Borrower grants to Lender a security interest in those items. Borrower authorizes Lender to file financing statements in all states, counties, and other jurisdictions as Lender may elect, without Borrower's signature if permitted by law. Borrower agrees that Lender may file this Deed of Trust, or a copy of it, in the real estate records or other appropriate index or in the Office of the Secretary of State of the State of Oregon and such other states as the Lender may elect, as a financing statement for any of the items specified above as part of the Mortgaged Property. Any reproduction of this Deed of Trust or executed duplicate original of this Deed of Trust, or a copy certified by a County Recorder in the State of Oregon, or of any other security agreement or financing statement, shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, at Lender's request, any UCC financing statements, as well as any extensions, renewals, and amendments, and copies of this Deed of Trust in such form as Lender may require to perfect a security interest with respect to the Personalty. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created any other security interest in the items, including any replacements and additions.

        On any Event of Default, Lender shall have the remedies of a secured party under the Oregon Uniform Commercial Code and, at Lender's option, may also invoke the remedies in paragraph 21 of this Deed of Trust as to such items. In exercising any of these remedies, Lender may proceed against the items of Mortgaged Property and any items of Personalty separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Oregon Uniform Commercial Code or of the remedies in paragraph 21 of this Deed of Trust.

**17.**    <u>**Fixture Filing.**</u> This Deed of Trust constitutes a financing statement filed as a fixture filing under ORS § 79.0502, as amended or recodified from time to time, covering any portion of the Mortgaged Property that now is or later may become a fixture attached to the Mortgaged Property or to any Improvement.

**18.**    <u>**Waiver of Statute of Limitations.**</u> Borrower waives the right to assert any statute of limitations as a defense to the Loan Documents and the Obligations secured by this Deed of Trust, to the fullest extent permitted by Governmental Requirements.

**19.**    <u>**Events of Default.**</u> The term Event of Default as used in this Deed of Trust means the occurrence or happening, at any time and from time to time, of any one or more of the following:

        **19.1.**    <u>**Payment of Indebtedness.**</u> Borrower fails to pay any installment of interest or principal under the Note or any other Indebtedness when due and such failure continues for more than 10

action, such as being bonded, or is not otherwise satisfied or disposed of to Lender's satisfaction within 30 days after entry of the judgment, order, or decree.

19.4.     **Voluntary Bankruptcy.** If Borrower or any guarantor (a) seeks entry of an order for relief as a debtor in a proceeding under the Bankruptcy Code; (b) seeks, consents to, or does not contest the appointment of a receiver or trustee for itself or for all or any part of its property; (c) files a petition seeking relief under the bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or any other competent jurisdiction; (d) makes a general assignment for the benefit of its creditors; or (e) states in writing its inability to pay its debts as they mature.

19.5.     **Involuntary Bankruptcy.** If (a) a petition is filed against Borrower or any guarantor seeking relief under any bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or other competent jurisdiction; or (b) a court of competent jurisdiction enters an order, judgment, or decree appointing, without the consent of Borrower or any guarantor, a receiver or trustee for it, or for all or any part of its property; and (c) such petition, order, judgment, or decree is not discharged or stayed within 30 days after its entry.

19.6.     **Foreclosure of Other Liens.** If the holder of any lien or security interest on the Mortgaged Property (without implying Lender's consent to the existence, placing, creating, or permitting of any lien or security interest) institutes foreclosure or other proceedings to enforce its remedies thereunder and any such proceedings are not stayed or discharged within 30 days after institution of such foreclosure proceedings.

19.7.     **Sale, Lease, Encumbrance, or Other Transfer.** Any sale, lease, exchange, assignment, conveyance, encumbrance (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of this Deed of Trust) (other than a Permitted Encumbrance), transfer of possession, or other disposition of all or any portion of the Land or Improvements or any of Borrower's interest in the Land or Improvement without Lender's prior written consent, or any sale, lease, exchange, assignment, conveyance, encumbrance (other than a Permitted Encumbrance), or other disposition of any portion of the Personalty, without Lender's prior written consent.

19.8.     **Title and Lien Priority.** If Borrower's title to any or all of the Mortgaged Property or the status of this Deed of Trust as a first and prior lien and security interest on the Mortgaged Property is endangered in any manner, and Borrower fails to cure the same on Lender's demand; provided, however, that Borrower shall not be in default under this paragraph if Borrower is diligently pursuing a contest or cure of such title or lien issue and Borrower has posted adequate security to protect Lender's rights, interest, and priority under this Deed of Trust, as determined by Lender.

19.9.     **Other Defaults.** The occurrence of an Event of Default or any default, as defined or described in the other Loan Documents, or the occurrence of a default on any Indebtedness or Obligations.

19.10.     **Levy on Assets.** A levy on any of the assets of Borrower or any guarantor, and such levy is not stayed or abated within 30 days after such levy.

19.11.     **Breach of Representations.** The breach of any representation, warranty, or covenant in this Deed of Trust or other Loan Documents.

19.12.     **Default Under Prior Deed of Trust, Security Instrument, or Lien.** The failure to pay on a timely basis, or the occurrence of any other default under any note, deed of trust, contract of sale, lien, charge, encumbrance, or security interest encumbering or affecting the Mortgaged Property and having priority over the lien of this Deed of Trust.

19.13     **Violation of Governmental Requirements.** The failure of Borrower, any tenant, or any other occupant of the Mortgaged Property to comply with any Governmental Requirement. In accordance with section 7 above, any potential violation by a tenant or other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Note and this Deed of Trust, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in Section 21.

20.     **Acceleration on Transfer or Encumbrance.**

20.1.     **Acceleration on Transfer or Encumbrance of Mortgaged Property.** If Borrower sells, contracts to sell, gives an option to purchase, conveys, leases with an option to purchase, encumbers (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of this Deed of Trust), or alienates the Mortgaged Property, or any interest in it, or suffers its title to, or any interest in, the Mortgaged Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of beneficial interests in Borrower; or if Borrower changes or permits to be changed the character or use of the Mortgaged Property, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Mortgaged Property; or if title to such Mortgaged Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in Section 21.

20.2.     **Replacement Personalty.** Despite the provisions of paragraph 20.1, Borrower may from

of the same priority as this Deed of Trust has on the Mortgaged Property and is not subject to being subordinated or its priority affected under any Governmental Requirements.

      20.3.   **Permitted Encumbrances**. If Lender consents in writing, which consent may not be unreasonably withheld, the due-on-encumbrance provision set forth in paragraph 20.1 shall not apply to a junior voluntary deed of trust or mortgage lien in favor of another lender encumbering the Mortgaged Property (the principal balance of any such junior encumbrance shall be added to the principal balance of the Indebtedness for purposes of determining compliance with the financial covenants of the Note); as long as Borrower gives Lender at least 30 days written notice of the further encumbrance and reimburses Lender for all out-of-pocket costs and expenses incurred in connection with such encumbrance.

**21.**     **Acceleration; Remedies**. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Deed of Trust (but not prior to acceleration under Section 20.1 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Mortgaged Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Deed of Trust without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

      If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Mortgaged Property to be sold and shall cause such notice to be recorded in each county in which any part of the Mortgaged Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Mortgaged Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Mortgaged Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Mortgaged Property at any sale.

      Trustee shall deliver to the purchaser Trustee's deed conveying the Mortgaged Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Deed of Trust; (c) to all persons having recorded liens subsequent to the interest of the Trustee in this Deed of Trust as their interests may appear in the order of their priority; and (d) the surplus, if any, to the trustor of this Deed of Trust or to the successor in interest of the trustor entitled to such surplus.

**22.**     **Borrower's Obligation to Notify Lender**.

      **22.1**    **Bankruptcy, Insolvency, Transfer, or Encumbrance**. Borrower shall notify Lender in writing, at or before the time of the occurrence of any event described in Section 19 and 20 of this Deed of Trust, of such event and shall promptly furnish Lender with any and all information on such event that Lender may request.

      **22.2**    **Government Notice**. Borrower shall give immediate written notice to Lender of any notice, proceeding or inquiry by any Governmental Authority. Borrower shall provide such notice to Lender within five (5) days of Borrower's knowledge, constructive or actual, of any such notice, proceeding or inquiry by any Government Authority.

**23.**     **Waiver of Marshaling**. Despite the existence of interests in the Mortgaged Property other than that created by this Deed of Trust, and despite any other provision of this Deed of Trust, if Borrower defaults in paying the Indebtedness or in performing any Obligations, Lender shall have the right, in Lender's sole and absolute discretion, to establish the order in which the Mortgaged Property will be subjected to the remedies provided in this Deed of Trust and to establish the order in which all or any part of the Indebtedness secured by this Deed of Trust is satisfied from the proceeds realized on the exercise of the remedies provided in this Deed of Trust. Borrower and any person who now has or later acquires any interest in the Mortgaged Property with actual or constructive notice of this Deed of Trust waives any and all rights to require a marshaling of assets in connection with the exercise of any of the remedies provided in this Deed of Trust or otherwise provided by Governmental Requirements.

**24.**     **Environmental Matters**.

      **24.1.**   **Borrower's Representations and Warranties**. Borrower represents and warrants to Lender that:

      24.1.1. The Mortgaged Property and Borrower are not in violation of any Environmental Laws or subject to any existing, pending, or threatened investigation by any Governmental Authority under any Environmental Laws.

      24.1.2. Borrower has not obtained and is not required by any Environmental Laws to

24.1.5. To the best of Borrower's knowledge and belief, no real property adjoining the Mortgaged Property is being used, or has ever been used at any previous time, for the disposal, storage, treatment, processing, or other handling of Hazardous Substances, nor is any other real property adjoining the Mortgaged Property affected by Hazardous Substances contamination.

24.1.6. No investigation, administrative order, consent order or agreement, litigation, or settlement with respect to Hazardous Substances or Hazardous Substances contamination is proposed, threatened, anticipated, or in existence regarding the Mortgaged Property. The Mortgaged Property is not currently on, and to Borrower's knowledge, after diligent investigation and inquiry, has never been on, any federal or state "Superfund" or "Superlien" list.

24.1.7. Neither Borrower nor, to the best of Borrower's knowledge and belief, any tenant of any portion of the Mortgaged Property has received any notice from any Governmental Authority regarding any violation of any Environmental Laws.

24.1.8. The use that Borrower makes and intends to make of the Mortgaged Property shall not result in the disposal or release of any Hazardous Substances on, in, or to the Mortgaged Property.

24.1.9. Borrower shall not cause any violation of any Environmental Laws, nor permit any tenant of any portion of the Mortgaged Property to cause such a violation, nor permit any environmental liens to be placed on any portion of the Mortgaged Property.

24.1.10. Neither Borrower nor any third party shall use, generate, manufacture, store, release, discharge, or dispose of any Hazardous Substance on, under, or about the Mortgaged Property, or transport any Hazardous Substance to or from the Mortgaged Property.

**24.2.    Survival of Representations and Warranties.** The foregoing representations and warranties shall be continuing and shall be true and correct for the period from the date of this instrument to the release of this Deed of Trust (whether by payment of the Indebtedness secured by this Deed of Trust or foreclosure or action in lieu of foreclosure), and these representations and warranties shall survive such release.

**24.3.    Notice to Lender.** Borrower shall give prompt written notice to Lender of:

24.3.1. Any proceeding or inquiry by any Governmental Authority (including, without limitation, the Oregon State Department of Environmental Quality) regarding the presence or threatened presence of any Hazardous Substance on the Mortgaged Property;

24.3.2. All claims made or threatened by any third party against Borrower or the Mortgaged Property relating to any loss or injury resulting from any Hazardous Substance;

24.3.3. Borrower's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Mortgaged Property that could cause it or any part of it to be subject to any restrictions on the ownership, occupancy, transferability, or use of the Mortgaged Property under any Environmental Laws.

**24.4.    Lender's Right to Join Legal Actions.** Lender shall have the right, at its option, but at Borrower's sole cost and expense, to join and participate in, as a party if it so elects, any legal proceedings or actions initiated by or against Borrower or the Mortgaged Property in connection with any Environmental Laws.

**24.5.    Borrower's Indemnity.** Borrower shall indemnify, defend, and hold harmless Lender, its directors, officers, employees, agents, successors, and assigns from and against any loss, damage, cost, expense, or liability directly or indirectly arising from or attributable to the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal, or presence of a Hazardous Substance on, under, or about the Mortgaged Property, or any order, consent decree, or settlement relating to the cleanup of a Hazardous Substance, or any claims of loss, damage, liability, expense, or injury relating to or arising from, directly or indirectly, any disclosure by Lender to anyone of information, whether true or not, relative to a Hazardous Substance or Environmental Law violation, including, without limitation, Attorney Fees. This indemnity shall survive the release of this Deed of Trust (whether by payment of the Indebtedness secured by this Deed of Trust or foreclosure or action in lieu of foreclosure).

**25.    Trustee.** The Trustee shall be deemed to have accepted the terms of this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The Trustee shall not be obligated to notify any party to this Deed of Trust of any pending sale under any other deed of trust or of any action or proceeding in which Borrower, Lender, or Trustee is a party, unless such sale relates to or reasonably might affect the Mortgaged Property, this Deed of Trust, Lender's security for the payment of the Indebtedness and the performance of the Obligations, or the rights or powers of Lender or Trustee under the Loan Documents, or unless such action or proceeding has been instituted by Trustee against the Mortgaged Property, Borrower, or Lender.

**26.    Power of Trustee to Reconvey or Consent.** At any time, without liability and without notice to Borrower, on Lender's written request and presentation of the Note and this Deed of Trust to Trustee for endorsement, and without altering or affecting (a) the personal liability of Borrower or any other person for the payment of the Indebtedness secured by this Deed of Trust, or (b) the lien of this Deed of Trust on the remainder of the Mortgaged Property as security for the repayment of the full amount of the Indebtedness then or later secured by this Deed of Trust, (c) or any right or power of Lender or Trustee with respect to the remainder of the Mortgaged Property, Trustee may (i) reconvey or release any part of the Mortgaged Property from the lien of this Deed of Trust; (ii) approve the preparation or filing of any map or plat of the Mortgaged Property; (iii) join in the granting of any easement burdening the Mortgaged Property; or (iv)

Lender may charge such person or persons a fee in the amount of Two Hundred Fifty and 00/100 Dollars ($250.00) plus all recording costs for reconveying the Mortgaged Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. Such request and reconveyance shall operate as a reassignment of the Rents assigned to Lender in this Deed of Trust.

28.    **Substitution of Trustee.**  Lender, at Lender's option, may from time to time, by written instrument, substitute a successor or successors to any Trustee named in or acting under this Deed of Trust, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties in which the Mortgaged Property is located, shall constitute conclusive proof of the proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the predecessor Trustee, succeed to all right, title, estate, powers, and duties of such predecessor Trustee, including, without limitation, the power to reconvey the Mortgaged Property. To be effective, the instrument must contain the names of the original Borrower, Trustee, and Lender under this Deed of Trust, the book and page or instrument or document number at which, and the county or counties in which, this Deed of Trust is recorded, and the name and address of the substitute Trustee. If any notice of default has been recorded under this Deed of Trust, this power of substitution cannot be exercised until all costs, fees, and expenses of the then acting Trustee have been paid. On such payment, the then acting Trustee shall endorse receipt of the payment on the instrument of substitution. The procedure provided in this paragraph for substitution of Trustees is not exclusive of other provisions for substitution provided by Governmental Requirements.

29.    **No Waiver by Lender.**  No waiver by Lender of any right or remedy provided by the Loan Documents or Governmental Requirements shall be effective unless such waiver is in writing and signed by two authorized officers of Lender. Waiver by Lender of any right or remedy granted to Lender under the Loan Documents or Governmental Requirements as to any transaction or occurrence shall not be deemed a waiver of any future transaction or occurrence. The acceptance of payment of any sum secured by this Deed of Trust after its due date, or the payment by Lender of any Indebtedness or the performance by Lender of any Obligations of Borrower under the Loan Documents, on Borrower's failure to do so, or the addition of any payment so made by Lender to the Indebtedness secured by this Deed of Trust, or the exercise of Lender's right to enter the Mortgaged Property and receive and collect the Rents from it, or the assertion by Lender of any other right or remedy under the Loan Documents, shall not constitute a waiver of Lender's right to require prompt performance of all other Obligations of Borrower under the Loan Documents and payment of the Indebtedness, or to exercise any other right or remedy under the Loan Documents for any failure by Borrower to timely and fully pay the Indebtedness and perform its Obligations under the Loan Documents. Lender may waive any right or remedy under the Loan Documents or Governmental Requirements without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or other interest in the Mortgaged Property that is junior to the lien of this Deed of Trust, and without incurring liability to Borrower or any other person by so doing.

30.    **Consents and Modifications; Borrower and Lien Not Released.**  Despite Borrower's default in the payment of any Indebtedness secured by this Deed of Trust or in the performance of any Obligations under this Deed of Trust or Borrower's breach of any obligation, covenant, or agreement in the Loan Documents, Lender, at Lender's option, without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or interest in the Mortgaged Property that is junior to the lien of this Deed of Trust, and without incurring liability to Borrower or any other person by so doing, may from time to time (a) extend the time for payment of all or any portion of Borrower's Indebtedness under the Loan Documents; (b) accept a renewal note or notes, or release any person from liability, for all or any portion of such Indebtedness; (c) agree with Borrower to modify the terms and conditions of payment under the Loan Documents; (d) reduce the amount of the monthly installments due under paragraph 9 of this Deed of Trust; (e) reconvey or release other or additional security for the repayment of Borrower's Indebtedness under the Loan Documents; (f) approve the preparation or filing of any map or plat with respect to the Mortgaged Property; (g) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Deed of Trust; and (h) agree with Borrower to modify the term, the rate of interest, or the period of amortization of the Note or alter the amount of the monthly installments payable under the Note. No action taken by Lender under this paragraph shall be effective unless it is in writing, subscribed by Lender, and, except as expressly stated in such writing, no such action will impair or affect (i) Borrower's obligation to pay the Indebtedness secured by this Deed of Trust and to observe all Obligations of Borrower contained in the Loan Documents; (ii) the guaranty of any Person of the payment of the Indebtedness secured by this Deed of Trust; or (iii) the lien or priority of the lien of this Deed of Trust. At Lender's request, Borrower shall promptly pay Lender a reasonable service charge, together with all insurance premiums and Attorney Fees as Lender may have advanced, for any action taken by Lender under this paragraph.

Whenever Lender's consent or approval is specified as a condition of any provision of this Deed of Trust, such consent or approval shall not be effective unless such consent or approval is in writing, signed by two authorized officers of Lender.

31.    **Waiver of Right of Offset.**  No portion of the Indebtedness secured by this Deed of Trust shall EXHIBIT TEN or be deemed to be offset or compensated by all or any part of any claim, cause of action, counterclaim, or

stated in the Note, even if Borrower has defaulted in payment or in the performance of any agreement under this Deed of Trust and Lender, for that reason or by reason of paragraphs 20 and 21 of this Deed of Trust, shall have declared all sums secured by this Deed of Trust immediately due and payable.

34.    **Additional Borrower Representations**. To induce Lender to enter into this Deed of Trust, the Note, and the other Loan Documents and to make the Loan, Borrower makes the following representations and warranties, which are deemed made as of both the date and the recordation of this Deed of Trust:

      34.1.    **Capacity**. Borrower and the individuals executing Loan Documents on Borrower's behalf have the full power, authority, and legal right to execute and deliver, and to perform and observe the provisions of this Deed of Trust, the Note, the other Loan Documents, and any other document, agreement, certificate, or instrument executed in connection with the Loan, and to carry out the contemplated transactions.

      34.2.    **Authority and Enforceability**. Borrower's execution, delivery, and performance of this Deed of Trust, the Note, the other Loan Documents, and any other document, agreement, certificate, or instrument executed in connection with the Loan have been duly authorized by all necessary corporate or other business entity action and do not and shall not require any registration with, consent, or approval of, notice to, or any action by any Person or Governmental Authority. Borrower has obtained or will obtain on or before the recordation of this Deed of Trust all necessary Governmental Authority and other approvals necessary for Borrower to comply with the Loan Documents. This Deed of Trust, the Note, and the other Loan Documents executed in connection with the Loan, when executed and delivered by Borrower, shall constitute the legal, valid, binding, and joint and several obligations of Borrower enforceable in accordance with their respective terms.

      34.3.    **Compliance With Other Instruments**. The execution and delivery of this Deed of Trust and the other Loan Documents, and compliance with their respective terms, and the issuance of the Note and other Loan Documents as contemplated in this Deed of Trust, shall not result in a breach of any of the terms or conditions of, or result in the imposition of, any lien, charge, or encumbrance (except as created by this Deed of Trust and the other Loan Documents) on any properties of Borrower, or constitute a default (with due notice or lapse of time or both) or result in an occurrence of an event for which any holder or holders of indebtedness may declare the same due and payable under, any indenture, agreement, order, judgment, or instrument to which Borrower is a party or by which Borrower or its properties may be bound or affected.

      34.4.    **Compliance With Law**. The execution and delivery of this Deed of Trust, the Note, and the other Loan Documents, or any other document, agreement, certificate, or instrument to which Borrower is bound in connection with the Loan, do not conflict with, result in a breach or default under, or create any lien or charge under any provision of any Governmental Requirements to which it is subject and shall not violate any of the Governmental Requirements.

      34.5.    **Material Adverse Events**. Since the date of the financial statements delivered to Lender before recordation of this Deed of Trust, neither the condition (financial or otherwise) nor the business of Borrower and the Mortgaged Property have been materially adversely affected in any way.

      34.6.    **Litigation**. There are no actions, suits, investigations, or proceedings pending or, to Borrower's knowledge after due inquiry and investigation, threatened against or affecting Borrower at law or in equity, before or by any Person or Governmental Authority, that, if adversely determined, would have a material adverse effect on the business, properties, or condition (financial or otherwise) of Borrower or on the validity or enforceability of this Deed of Trust, any of the other Loan Documents, or the ability of Borrower to perform under any of the Loan Documents.

      34.7.    **No Untrue Statements**. All statements, representations, and warranties made by Borrower in this Deed of Trust or any other Loan Document and any other agreement, document, certificate, or instrument previously furnished or to be furnished by Borrower to Lender under the Loan Documents (a) are and shall be true, correct, and complete in all material respects at the time they were made and on and as of the recordation of this Deed of Trust, (b) do not and shall not contain any untrue statement of a material fact, and (c) do not and shall not omit to state a material fact necessary to make the information in them neither misleading nor incomplete. Borrower understands that all such statements, representations, and warranties shall be deemed to have been relied on by Lender as a material inducement to make the Loan.

      34.8.    **Policies of Insurance**. Each copy of the insurance policies relating to the Mortgaged Property delivered to Lender by Borrower (a) is a true, correct, and complete copy of the respective original policy in effect on the date of this Deed of Trust, and no amendments or modifications of said documents or instruments not included in such copies have been made, except as stated in this paragraph 34.8 and (b) has not been terminated and is in full force and effect. Borrower is not in default in the observance or performance of its material obligations under said documents or instruments and Borrower has done all things required to be done as of the date of this Deed of Trust to keep unimpaired its rights thereunder.

      34.9.    **Financial Statements**. All financial statements furnished to Lender are true and correct in all material respects, are prepared in accordance with generally accepted accounting principles, and do not omit any material fact the omission of which makes such statement or statements misleading. There are no facts that have not been disclosed to Lender by Borrower in writing that materially or adversely affect or could potentially in the future affect the Mortgaged Property or the business prospects, profits, or condition (financial or otherwise) of Borrower or any guarantor or Borrower's abilities to perform the Obligations

property in its currently contemplated final state of development; and (f) on recordation of this Deed of Trust with the county recorder, Lender shall have a valid, first priority, perfected security interest in the Water Rights.

**34.11.    Taxes.**  Borrower has filed or caused to be filed all tax returns that are required to be filed by Borrower under the Governmental Requirements of each Governmental Authority with taxing power over Borrower, and Borrower has paid, or made provision for the payment of, all taxes, assessments, fees, and other governmental charges that have or may have become due under said returns, or otherwise, or under any assessment received by Borrower except that such taxes, if any, as are being contested in good faith and as to which adequate reserves (determined in accordance with generally accepted accounting principles) have been provided.

**34.12.    Leases.**  If the Mortgaged Property includes a leasehold estate, Borrower has not and shall not surrender, terminate, cancel, waive, accept waiver, change, supplement, grant subleases of, alter, surrender, or amend, and shall comply with all terms, covenants, and conditions in the Leasehold.

**34.13.    Further Acts.**  Borrower shall, at its sole cost and expense, and without expense to Trustee or Lender, do, execute, acknowledge, and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers, and assurances as Trustee or Lender shall from time to time require, for the purpose of better assuring, conveying, assigning, transferring, pledging, mortgaging, warranting, and confirming to Trustee the Mortgaged Property and rights, and as to Lender the security interest as to the Personalty, conveyed or assigned by this Deed of Trust or intended now or later so to be, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust, or for filing, registering, or recording this Deed of Trust and, on demand, shall execute and deliver, and authorizes Lender to execute in the name of Borrower, to the extent it may lawfully do so, one or more financing statements, chattel mortgages, or comparable security instruments, to evidence more effectively the lien of this Deed of Trust on the Mortgaged Property.

**34.14.    Filing Fees.**  Borrower shall pay all filing, registration, or recording fees, all Governmental Authority stamp taxes and other fees, taxes, duties, imposts, assessments, and all other charges incident to, arising from, or in connection with the preparation, execution, delivery, and enforcement of the Note, this Deed of Trust, the other Loan Documents, any supplemental deed of trust or mortgage, or any instrument of further assurance.

**34.15.    Entity Compliance.**  As long as it is the owner of the Mortgaged Property, Borrower, if a corporation, limited liability company, or partnership, shall do all things necessary to preserve and keep in full force and effect its existence, franchises, rights, and privileges as such entity under the laws of the state of its incorporation or formation, and shall comply with all Governmental Requirements of any Governmental Authority applicable to Borrower or to the Mortgaged Property or any part of it.

**35.    Governing Law; Consent to Jurisdiction and Venue.**  With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Mortgaged Property, this Deed of Trust will be governed by the laws of the state in which the Mortgaged Property is located. In all other respects, this Deed of Trust, the Note and all other documents related to the transaction are by agreement of the parties governed by the State of Oregon, unless expressly provided otherwise. The Parties agree that jurisdiction and venue for any dispute, claim or controversy arising, other than with respect to perfection and enforcement of Lender's rights against the Mortgaged Property, shall be the County in which notice shall be sent to Lender pursuant this Deed of Trust, or the applicable federal district court that covers said County, and Borrower submits to personal jurisdiction in that forum for any and all purposes.  Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

BORROWER'S INITIALS: _KB_ _____

**36.    Taxation of Deeds of Trust.**  In the event of the enactment of any law deducting from the value of the Mortgaged Property any mortgage lien on it, or imposing on Lender the payment of all or part of the taxes, charges, or assessments previously paid by Borrower under this Deed of Trust, or changing the law relating to the taxation of mortgages, debts secured by mortgages, or Lender's interest in the Mortgaged Property so as to impose new incidents of tax on Lender, then Borrower shall pay such taxes or assessments or shall reimburse Lender for them; provided, however, that if in the opinion of Lender's counsel such payment cannot lawfully be made by Borrower, then Lender may, at Lender's option, declare all sums secured by this Deed of Trust to be immediately due and payable without notice to Borrower. Lender may invoke any remedies permitted by this Deed of Trust.

**37.    Mechanics' Liens.**  Borrower shall pay from time to time when due, all lawful claims and demands of mechanics, materialmen, laborers, and others that, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part of it, or on the Rents arising therefrom, and in general shall do or cause to be done everything necessary so that the lien and security interest of this Deed of Trust shall be fully preserved, at Borrower's expense, without expense to Lender; provided, however, that if Governmental Requirements empower Borrower to discharge of record any mechanics', laborer's, materialman's, or other lien against the Mortgaged Property by the posting of a bond or other security, Borrower shall not have to make such payment if Borrower posts such bond or other security on the earlier of (a) 10 days after the filing or recording of same or (b) within the time prescribed by law, so as not to

39.    **Liability for Acts or Omissions.** Lender shall not be liable or responsible for its acts or omissions under this Deed of Trust, except for Lender's own gross negligence or willful misconduct, or be liable or responsible for any acts or omissions of any agent, attorney, or employee of Lender, if selected with reasonable care.

40.    **Notices.** Except for any notice required by Governmental Requirements to be given in another manner, (a) all notices required or permitted by the Loan Documents shall be in writing; (b) each notice shall be sent (i) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (ii) by certified United States mail, postage prepaid, return receipt requested; or (iii) by nationally recognized overnight delivery service, marked for next-business-day delivery; and (c) all notices shall be addressed to the appropriate party at its address as follows or such other addresses as may be designated by notice given in compliance with this provision:

| Lender: | PacWest Funding Inc dba Precision Capital<br>At the address provided above |
|---|---|
| Borrower: | Northwest Investment Holdings, LLC, an Oregon limited liability company<br>At the address provided above |

Notices will be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery; or (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending.

To the extent permitted by Governmental Requirements, if there is more than one Borrower, notice to any Borrower shall constitute notice to all Borrowers. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address(es).

41.    **Statement of Obligations.** Except as otherwise provided by Governmental Requirements, at Lender's request, Borrower shall promptly pay to Lender such fee as may then be provided by law as the maximum charge for each statement of obligations, Lender's statement, Lender's demand, payoff statement, or other statement on the condition of, or balance owed, under the Note or secured by this Deed of Trust.

42.    **Application of Payments.** Except as otherwise expressly provided by Governmental Requirements or any other provision of this Deed of Trust, all payments received by Lender from Borrower under the Loan Documents shall be applied by Lender in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender and interest under any provision of this Note or the Deed of Trust, in such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.

43.    **Remedies Are Cumulative.** Each remedy in this Deed of Trust is separate and distinct and is cumulative to all other rights and remedies provided by this Deed of Trust or by Governmental Requirements, and each may be exercised concurrently, independently, or successively, in any order whatsoever.

44.    **Obligations of Borrower Joint and Several.** If more than one Person is named as Borrower, each obligation of Borrower under this Deed of Trust shall be the joint and several obligations of each such Person.

45.    **Severability.** If any provision of the Loan Documents, or the application of them to the circumstances, is held void, invalid, or unenforceable by a court of competent jurisdiction, the Loan Documents, and the applications of such provision to other parties or circumstances, shall not be affected thereby, the provisions of the Loan Documents being severable in any such instance.

46.    **Delegation of Authority.** Whenever this Deed of Trust provides that Borrower authorizes and appoints Lender as Borrower's attorney-in-fact to perform any act for or on behalf of Borrower or in the name, place, and stead of Borrower, Borrower expressly understands and agrees that this authority shall be deemed a power coupled with an interest and such power shall be irrevocable.

47.    **General Provisions.**

47.1.    **Successors and Assigns.** Subject to paragraphs 19 and 20 of this Deed of Trust, this Deed of Trust applies to, inures to the benefit of, and binds, the respective heirs, legatees, devisees, administrators, executors, successors, and assigns of each party to this Deed of Trust.

47.2.    **Meaning of Certain Terms.** As used in this Deed of Trust and unless the context otherwise provides, the words "herein," "hereunder" and "hereof" mean and include this Deed of Trust as a whole, rather than any particular provision of it.

47.3.    **Authorized Agents.** In exercising any right or remedy, or taking any action provided in this Deed of Trust, Lender may act through its employees, agents, or independent contractors, as Lender expressly authorizes.

47.4.    **Gender and Number.** Wherever the context so requires in this Deed of Trust, the masculine gender includes the feminine and neuter, the singular number includes the plural, and vice versa.

47.5.    **Captions.** Captions and paragraph headings used in this Deed of Trust are for

nonperformance) shall result in a default by the nonperforming party or the failure of a condition, as appropriate. The parties expressly waive any equitable relief with respect to a missed deadline.

**48.    Improper Financial Transactions.**

    **48.1**    Borrower is, and shall remain at all times, in full compliance with all applicable laws and regulations of the United States of America that prohibit, regulate or restrict financial transactions, and any amendments or successors thereto and any applicable regulations promulgated thereunder (collectively, the "Financial Control Laws"), including but not limited to those related to money laundering offenses and related compliance and reporting requirements (including any money laundering offenses prohibited under the Money Laundering Control Act, 18 U.S.C. Section 1956 and 1957 and the Bank Secrecy Act, 31 U.S.C. Sections 5311 et seq.) and the Foreign Assets Control Regulations, 31 C.F.R. Section 500 et seq.

    **48.2**    Borrower represents and warrants that: Borrower is not a Barred Person (hereinafter defined); Borrower is not owned or controlled, directly or indirectly, by any Barred Person; and Borrower is not acting, directly or indirectly, for or on behalf of any Barred Person.

    **48.3**    Borrower represents and warrants that it understands and has been advised by legal counsel on the requirements of the Financial Control Laws.

    **48.4**    Under any provision of this Deed of Trust or any of the other Loan Documents where Lender shall have the right to approve or consent to any particular action, including, without limitation any (A) sale, transfer, assignment of the Mortgaged Property, or any direct or indirect ownership interest in Borrower, (B) leasing of the Mortgaged Property, or any portion thereof, or (C) incurring any additional financing secured by Mortgaged Property, or any portion thereof, or by any direct or indirect ownership interest in Borrower, Lender shall have the right to withhold such approval or consent, in its sole discretion, if the granting of such approval or consent could be construed as a violation of any of the Financial Control Laws.

    **48.5**    Borrower covenants and agrees that it will upon request provide Lender with (or cooperate with Lender in obtaining) information required by Lender for purposes of complying with any Financial Control Laws.

    **48.6**    As used in this Deed of Trust, the term "Barred Person" shall mean (A) any person, group or entity named as a "Specially Designated National and Blocked Person" or as a person who commits, threatens to commit, supports, or is associated with terrorism as designated by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), (B) any person, group or entity named in the lists maintained by the United States Department of Commerce (Denied Persons and Entities), (C) any government or citizen of any country that is subject to a United States Embargo identified in regulations promulgated by OFAC, and (D) any person, group or entity named as a denied or blocked person or terrorist in any other list maintained by any agency of the United States government.

**49.    Dispute Resolution: Waiver of Right to Jury Trial**

    **49.1    ARBITRATION.**    CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO ARBITRATE ANY DISPUTES TO RESOLVE ANY CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT).

    **49.2    WAIVER OF RIGHT TO JURY TRIAL.**    TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED ON OR ARISING FROM THIS DEED OF TRUST. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. BORROWER AND, BY ITS ACCEPTANCE OF THE BENEFITS OF THIS DEED OF TRUST, LENDER EACH (A) ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR BORROWER AND LENDER TO ENTER INTO A BUSINESS RELATIONSHIP, THAT BORROWER AND LENDER HAVE ALREADY RELIED ON THIS WAIVER BY ENTERING INTO THIS DEED OF TRUST OR ACCEPTING ITS BENEFITS, AS THE CASE MAY BE, AND THAT EACH SHALL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS, AND (B) FURTHER WARRANTS AND REPRESENTS THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS DEED OF TRUST.

BORROWER'S INITIALS: _____

    **49.3    PROVISIONAL REMEDIES; FORECLOSURE AND INJUNCTIVE RELIEF.** Nothing in Section 49.2, above, shall be deemed to apply to or limit the right of Lender to: (a) exercise self-help remedies, (b) foreclose judicially or nonjudicially against any real or personal property collateral, or to exercise judicial or nonjudicial power of sale rights, (c) obtain from a court provisional or ancillary remedies (including, but not limited to, injunctive relief, a writ of possession, prejudgment attachment, a protective

submission the dispute, claim or controversy occasioning resort to such remedies to any proceeding referred to in Section 49.2, above.

**50.**     **Contractual Right to Appoint a Receiver Upon Default.**  Upon an Event of Default under this Deed of Trust or a breach of any clause of any agreement signed in connection with the loan to Borrower, Borrower agrees that Lender may appoint a receiver to control the Mortgaged Property within seven (7) days of any default.  Borrower agrees to cooperate with the receiver and turn over all control to said receiver and otherwise cooperate with the receiver appointed by Lender.

**51.**     **Protective Advances.**  This Deed of Trust secures any advances Lender, at its discretion, may make under Sections 12 and 13 of this Deed of Trust to protect Lender's interest in the Mortgaged Property and rights under this Deed of Trust.

**52.**     **Required Evidence of Property Insurance.**

WARNING

**UNLESS YOU PROVIDE US WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY OUR CONTRACT OR LOAN AGREEMENT, WE MAY PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT OUR INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT YOUR INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE WE PURCHASE MAY NOT PAY ANY CLAIM YOU MAKE OR ANY CLAIM MADE AGAINST YOU. YOU MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT YOU HAVE OBTAINED PROPERTY COVERAGE ELSEWHERE.**

**YOU ARE RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY US. THE COST OF THIS INSURANCE MAY BE ADDED TO YOUR CONTRACT OR LOAN BALANCE. IF THE COST IS ADDED TO YOUR CONTRACT OR LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING CONTRACT OR LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE YOUR PRIOR COVERAGE LAPSED OR THE DATE YOU FAILED TO PROVIDE PROOF OF COVERAGE.**

**THE COVERAGE WE PURCHASE MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE YOU CAN OBTAIN ON YOUR OWN AND MAY NOT SATISFY ANY NEED FOR PROPERTY DAMAGE COVERAGE OR ANY MANDATORY LIABILITY INSURANCE REQUIREMENTS IMPOSED BY APPLICABLE LAW.**

**53.**     **NOTICE TO THE BORROWER.**  Do not sign this loan agreement before you read it.  The loan agreement provides that the Borrower must deliver to the Lender written notice five (5) calendar days prior to prepayment of any portion of the principal amount.

**54.**     **INTEREST IN TITLE.** BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010. THIS INSTRUMENT DOES NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930, AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.

**55.**     **MODIFICATIONS.** UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY LENDER CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY LENDER OR AN AUTHORIZED AGENT THEREOF TO BE ENFORCEABLE.

*(Signatures to follow)*

IN WITNESS WHEREOF, Borrower accepts and agrees to the terms and covenants contained in this Deed of Trust and has executed and delivered this Deed of Trust as of the date first written above.

**BORROWER:**

NORTHWEST INVESTMENT HOLDINGS, LLC, AN OREGON LIMITED LIABILITY COMPANY

_____     _____
Kristen Bernard , Manager


_____     _____


STATE OF ___W A_____ )
                                          ) ss.
COUNTY OF __Pierce_____ )

On _Sept. 27_, 2019 before me, _Rhonda Kay Skansi, Notary Public_
personally appeared _Kristen Bernard_
_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___W A_____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Rhonda Kay Skansi_                         (Seal)

```
Notary Public
State of Washington
RHONDA KAY SKANSI
My Commission Expires
May 9, 2022
```

EXHIBIT TEN
24 of 25

EXHIBIT "A"
LEGAL DESCRIPTION


A tract of land in Section 14, Township 1 South, Range 2 East of the Willamette Meridian, in the City of Portland, County of Multnomah and State of Oregon, described as follows:

Beginning at a point in the West line of the Ebenezer Creswell Donation Land Claim in the center line of the Foster Road; running thence North tracing the said West line of said Donation Land Claim 13.92 chains; thence East on a line parallel with said Foster Road, 7.1885 chains to a stone monument; thence South on a line parallel with the West line of said Donation Land Claim, 336 feet to the true point of beginning and Northwest corner of the tract of land herein described; thence South and parallel with the West line of said Donation Land Claim, 123 feet to a point; thence East on a line parallel with said Foster Road, 236 feet to the Southwest corner of that tract of land conveyed to Robert Winters et ux by deed recorded March 9, 1954 in Book 1647, Page 395, Deed Records; thence North along the West line of said Winters tract 123 feet to the Northwest corner thereof; thence West parallel to said Foster Road, 236 feet to the true point of beginning.

EXCEPTING the North 3 feet thereof as more particularly described in deed to Charles Wible and Ruby Wible, by deed recorded March 30, 1971 in Book 779, Page 754, Deed Records.

# EXHIBIT ELEVEN

EXHIBIT 11
1 of 3

## BUSINESS PURPOSE OF LOAN CERTIFICATION

| Lender:<br>PacWest Funding Inc dba Precision Capital | Borrower:<br>Northwest Investment Holdings, LLC, an Oregon<br>limited liability company |
|---|---|
| Date:<br>September 25, 2019 | Property Address:<br>6100 SE 140th Ave, Portland, OR 97236 |

Borrower certifies to Lender and its successors and assigns the following as true and correct:

1.    Borrower has applied for and has obtained or may obtain a loan in the principal amount of $346,500 (the "Note").   That amount will be secured by the Property (the "Deed of Trust") (the Note and Deed of Trust are collectively referred to as the "Loan").

2.    Lender has stressed to Borrower the importance of knowing the primary purpose of this Loan.  Borrower knows that the legal responsibilities of the Lender vary considerably depending upon whether a loan is a consumer loan, which is for personal, household or family purposes, or a business loan, which is for every other purpose.

3.    Borrower has previously represented to Lender and again represent to Lender in this certification, its successors and assigns, that ALL of the purposes of the Loan, exclusive of commissions and loan expenses incurred to obtain the Loan are:

| Purpose | Approximate Amount |
|---|---|
| Real Estate Investment & Renovations | $ 75,000 |
|  |  |

4.    NO part of the proceeds of the Loan are intended to be used for a consumer purpose except the following. If there are no consumer purposes for the loan proceeds, please indicate "N/A" or "NONE" below:

© 2009 Gumd Law Firm; All Rights Reserved.<br>Business Purpose of Loan Certification<br>Loan No. PC091991

Rev. 65/08

EXHIBIT 11<br>2 of 3

| Purpose | Approximate Amount |
|---------|--------------------|
| *n/n/e* | |
| | |

Borrower declares under penalty of perjury under the laws of the state in which the Property is located that the foregoing is true and correct.

Dated: *9-27-2019*

BORROWER:
NORTHWEST INVESTMENT HOLDINGS, LLC, AN OREGON LIMITED LIABILITY COMPANY

Kristen Bernard , Manager

© 2007 Geraci Law Firm; All Rights Reserved.
Business Purpose of Loan Certification
Loan No. PC691595

2

Rev. 05/08

EXHIBIT 11
3 of 3

# EXHIBIT TWELVE

EXHIBIT 12
1 of 5

## ARBITRATION AGREEMENT

THIS ARBITRATION AGREEMENT ("Agreement") is entered into as of September 25, 2019, and is by and among Northwest Investment Holdings, LLC, an Oregon limited liability company ("Borrower(s)"); Kristen Bernard,     (collectively referred to herein as "Guarantor"); and, PacWest Funding Inc dba Precision Capital ("Lender"). (Borrower, Guarantor, and Lender are collectively referred to herein as "Parties" and individually as a "Party").

### RECITALS

A.      Borrower has obtained or will obtain a mortgage loan from Lender as evidenced by that certain Promissory Note of even date, executed by Borrower (the "Note"), which is secured by the Security Instrument. The Note and Security Instrument are collectively referred to herein as the "Loan."

A.      To further induce Lender to make the Loan, Guarantor has delivered or will deliver to Lender a Guaranty guaranteeing Borrower's performance on the Loan.

B.      All parties wish to arbitrate any and all disputes among them that may arise out of the Loan.

### AGREEMENT

NOW, THEREFORE, in consideration of these Recitals and of the Lender agreeing to make the Loan to Borrower, and other valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

1.      **Mutual Agreement To Arbitrate Disputes.** The Parties agree that any Claim, defined below, involving the Loan, including, but not limited to claims arising from the origination, documentation, disclosure, servicing, collection or any other aspect of the Loan transaction or the coverage or enforceability of this Agreement, shall be resolved exclusively by binding arbitration under the terms of this Agreement.  This Agreement shall also be binding on the agents, successors and assigns of the parties and the Loan.

2.      **Claim Defined.**

   2.1      "Claim" shall include, but not be limited to:

      2.1.1.   Any claimed wrongdoing, such as misrepresentation, negligence, breach of contract, breach of fiduciary duty, unconscionability, fraud in the inducement, rescission, breach of the covenant of good faith and fair dealing and unfair business practices.

      2.1.2.   Any claimed violation of state or federal laws, including, but not limited to consumer credit, truth-in-lending, civil rights, equal opportunity, real estate settlement, housing discrimination laws, fair lending acts, licensing, loan regulation and unfair business practices acts.

   2.2.     "Claim" shall not include:

      2.2.1.   Actions by the Lender to judicially or non-judicially foreclose on the note and Security Instrument for the Loan, to enjoin waste, to collect rents, interpleader actions or actions for a receiver, to recover possession, ejectment or relief from the automatic stay in bankruptcy, or to obtain relief through governmental agencies.

      2.2.2.   Actions for provisional remedies such as a temporary restraining order or preliminary injunction or for a permanent injunction based upon an arbitration award.

© 2007 Geraci Law Firm; All Rights Reserved.
Compliance Agreement
Loan No. PC0919H

Rev. 05/11

EXHIBIT 12
2 of 5

3.    **ARBITRATION OF DISPUTES.**  TO THE EXTENT A PREDISPUTE WAIVER OF THE RIGHT TO TRIAL BY JURY IS NOT ENFORCEABLE UNDER APPLICABLE LAW, ANY AND ALL DISPUTES, CONTROVERSIES OR CLAIMS ARISING OUT OF OR RELATING TO THE LOAN DOCUMENTS OR TRANSACTIONS CONTEMPLATED THEREBY, INCLUDING, WITHOUT LIMITATION, THE MAKING, PERFORMANCE, OR INTERPRETATION OF THE LOAN DOCUMENTS, SHALL BE RESOLVED BY BINDING ARBITRATION. UNLESS OTHERWISE AGREED ON, THE ARBITRATION SHALL BE CONDUCTED IN ACCORDANCE WITH THE THEN-CURRENT ARBITRATION PROCEDURES SET FORTH UNDER OREGON LAW. JUDGMENT ON THE ARBITRATION AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. UNLESS OTHERWISE AGREED BY THE PARTIES, THE ARBITRATION SHALL BE HELD BEFORE A SINGLE ARBITRATOR SELECTED AS FOLLOWS: THE DISPUTING PARTIES SHALL, WITHIN TEN (10) BUSINESS DAYS FROM THE DATE ARBITRATION IS REQUESTED BY EITHER PARTY, AGREE UPON AN ARBITRATOR. IF THE PARTIES CANNOT SO AGREE, THEN EACH PARTY, WITHIN FIVE (5) BUSINESS DAYS THEREAFTER, SHALL NAME AN ARBITRATOR WHO SHALL BE AN ATTORNEY LICENSED TO PRACTICE IN OREGON AND EXPERIENCED AND QUALIFIED IN REAL ESTATE MATTERS OF THE TYPE CONTEMPLATED BY THE LOAN DOCUMENTS OR A RETIRED OREGON SUPERIOR OR APPELLATE COURT JUDGE. THOSE TWO NAMED ARBITRATORS SHALL THEN, WITHIN FIVE (5) BUSINESS DAYS, SELECT A THIRD ARBITRATOR WHO SHALL BE QUALIFIED AS DEFINED ABOVE, AND SUCH THIRD ARBITRATOR SHALL BE THE SOLE ARBITRATOR TO HEAR AND DETERMINE THE DISPUTE. IF ANY PARTY HERETO FAILS TO NAME AN ARBITRATOR WITHIN THE TIME LIMIT PROVIDED IN THIS SECTION, THEN THE ARBITRATOR TIMELY NAMED BY THE OTHER PARTY SHALL HEAR AND DECIDE THE DISPUTE. IF THE ARBITRATION IS COMMENCED, THE PARTIES AGREE TO PERMIT DISCOVERY PROCEEDINGS OF THE TYPE PROVIDED BY OREGON LAW BOTH IN ADVANCE OF, AND DURING RECESSES OF, THE ARBITRATION HEARINGS. ALL FACTS AND OTHER INFORMATION RELATING TO ANY ARBITRATION ARISING UNDER THIS DECLARATION SHALL BE KEPT CONFIDENTIAL TO THE FULLEST EXTENT PERMITTED BY LAW. THE DECISION OR THE ARBITRATOR(S) SHALL FOLLOW THE LAW, SHALL BE RENDERED WITHIN TEN (10) BUSINESS DAYS FOLLOWING THE CONCLUSION OF THE ARBITRATION, AND SHALL BE SET FORTH IN A WRITTEN OPINION STATING THE FINDINGS OF FACT OR THE ARBITRATOR(S) AND LEGAL AUTHORITIES THAT ARE THE BASIS OF THE DECISION. THE VENUE FOR ANY SUCH ARBITRATION SHALL BE THE COUNTY IN WHICH NOTICE SHALL BE SENT TO LENDER PURSUANT THE NOTE, OR THE APPLICABLE FEDERAL DISTRICT COURT THAT COVERS SAID COUNTY, AND EACH PARTY SUBMITS TO PERSONAL JURISDICTION IN THAT FORUM FOR ANY AND ALL PURPOSES. EACH PARTY WAIVES ANY RIGHT IT MAY HAVE TO ASSERT THE DOCTRINE OF FORUM NON CONVENIENS OR TO OBJECT TO SUCH VENUE. THE COSTS OF THE ARBITRATOR SHALL BE SPLIT EQUALLY BY THE PARTIES BUT SHALL BE A RECOVERABLE COST FOR THE PARTY PREVAILING IN THE ARBITRATION.

BORROWER'S INITIALS: _____

4.    **Attorneys' Fees.**  Whether or not legal action is commenced, dismissed, or pursued to judgment, including any arbitration, Lender shall be entitled to payment of all fees and costs (including, without limitation, attorneys' fees and costs) that may be incurred by Lender in connection with the enforcement of any of the Loan Documents, and the protection of Lender's rights under the Loan Documents (whether in state, federal, Bankruptcy Court proceedings or arbitration/mediation).

In addition to the aforementioned fees, costs, and expenses, Lender in any lawsuit or other dispute shall be entitled to its attorneys' fees, and all other fees, costs, and expenses incurred in any post-judgment proceedings to collect or enforce any judgment. This provision for the recovery of post-judgment fees, costs, and expenses is separate and several and shall survive the merger of the Loan Documents into any judgment on the Note, Guaranty, Security Instrument, or any other Loan Documents.

---

2

© 2007 Geraci Law Firm; All Rights Reserved.
Compliance Agreement
Loan No. PC0919H

Rev. 05/11

EXHIBIT 12
3 of 5

5.     WAIVER.  THE PARTIES HEREBY FREELY WAIVE THE RIGHT TO TRIAL BY JUDGE OR JURY, THE RIGHT TO APPEAL, PRETRIAL DISCOVERY AND APPLICATION OF THE RULES OF EVIDENCE.

6.     Capitalized Terms.  Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Security Instrument executed of even date herewith.

*(Signature page(s) follow)*

3

© 2007 Geraci Law Firm; All Rights Reserved.
Compliance Agreement
Loan No. PC0919H

Rev. 05/11

EXHIBIT 12
4 of 5

IN WITNESS WHEREOF, the parties have carefully read, fully understand and agree to the above.

**BORROWER:**
Northwest Investment Holdings, LLC, an Oregon limited liability company

_____
Kristen Bernard , Manager

_____

_____          _____

**GUARANTOR:**
Kristen Bernard

_____
Kristen Bernard

_____          _____

**LENDER:**

PacWest Funding Inc dba Precision Capital

By: _____
Mariska Crain, Production Manager

4

© 2007 Geraci Law Firm; All Rights Reserved.                    Rev. 05/16
Compliance Agreement
Loan No. PC0919H

EXHIBIT 12
5 of 5

# EXHIBIT THIRTEEN

EXHIBIT 13
1 of 3

| Multnomah County Official Records<br>E Murray, Deputy Clerk | **2020-011078** |
|---|---|
| MORT-ASGN   Pgs=2 Stn=25 ATRA<br>$10.00 $11.00 $6.00 $60.00 | 01/29/2020 03:48:46 PM<br>$87.00 |

**Grantor:**
Precision Capital
Re: Loan PC0919H
Re: Property at 6100 SE 140th Ave
4710 Village Plaza Loop #100
Eugene, OR 97401

**Beneficiary:**
Pac One Fund, LP
4710 Village Plaza Loop #100
Eugene, OR 97401

**After recording return to:**
PacWest Funding Inc., dba Precision Capital
4710 Village Plaza Loop #100
Eugene, OR 97401

### ASSIGNMENT OF TRUST DEED BY BENEFICIARY

**FOR VALUE RECEIVED,** the undersigned beneficiary, PacWest Funding, Inc., an Oregon Corporation, dba Precision Capital, whose address is 4710 Village Plaza Loop #100, Eugene, OR, 97401, under that certain trust deed dated September 25, 2019, executed and delivered by Northwest Investment Holdings, LLC, an Oregon Limited Liability Company, Grantor, whose address is Po Box 1152 Gig Harbor, WA 98335, to Dean S. Kaufman, Attorney at Law, Trustee, and PacWest Funding, Inc. an Oregon corporation dba Precision Capital, whose address is 4710 Village Plaza Loop, Suite 100, Eugene, OR 97401, as Beneficiary, and recorded on September 30, 2019, in Recording No. 2019-104513, of the Official Records of Multnomah County, Oregon, conveying real property in said county, described as follows:

### SEE ATTACHED EXHIBIT "A"

hereby grants, assigns, transfers, and sets over to Pac One Fund, LP, whose address (as indicated above) is 4710 Village Plaza Loop, #100, Eugene, OR 97401, all its beneficial interest in and under said trust deed, together with the note or notes, monies, and obligations therein described or referred to, with the interest, and all rights and benefits whatsoever accrued or to be accrued under said trust deed.

In construing this instrument and whenever the context hereof so requires, the masculine gender includes the feminine and the neuter, and the singular number includes the plural.

Until a change is requested, all tax statements are to be sent to the following address:

### 4710 VILLAGE PLAZA LOOP #100, EUGENE, OR 97401

THE PROPERTY DESCRIBED IN THIS INSTRUMENT MAY NOT BE WITHIN A FIRE PROTECTION DISTRICT PROTECTING STRUCTURES. THE PROPERTY IS SUBJECT TO LAND USE LAWS AND REGULATIONS THAT, IN FARM OR FOREST ZONES, MAY NOT AUTHORIZE CONSTRUCTION OR SITING OF A RESIDENCE AND THAT LIMIT LAWSUITS AGAINST FARMING OR FOREST PRACTICES AS DEFINED IN ORS 30.930, IN ALL ZONES. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, AND SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009.   BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO VERIFY THE EXISTENCE OF FIRE PROTECTION FOR STRUCTURES AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, AND SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009.

By: Mariska Crain, Director of Lending, Precision Capital

STATE OF OREGON, County of Lane ) ss.

On the 27th day of January, 2020, personally appeared before me the above-named, Mariska Crain, Director of Lending  of Precision Capital, who declared the foregoing instrument to be his/her voluntary act and deed.

Notary Public for Oregon
My commission expires:   12/11/2022

OFFICIAL STAMP
**ALLISON EMILY BEARD**
NOTARY PUBLIC-OREGON
COMMISSION NO. 981978
MY COMMISSION EXPIRES DECEMBER 11, 2022

ASSIGNMENT OF TRUST DEED BY BENEFICIARY/Assignment of Trust Deed by Beneficiary

EXHIBIT 13<br>2 of 3

# EXHIBIT "A"
## LEGAL DESCRIPTION

A tract of land in Section 14, Township 1 South, Range 2 East of the Willamette Meridian, in the City of Portland, County of Multnomah and State of Oregon, described as follows:

Beginning at a point in the West line of the Ebenezer Creswell Donation Land Claim in the center line of the Foster Road; running thence North tracing the said West line of said Donation Land Claim 13.92 chains; thence East on a line parallel with said Foster Road, 7.1885 chains to a stone monument; thence South on a line parallel with the West line of said Donation Land Claim, 336 feet to the true point of beginning and Northwest corner of the tract of land herein described; thence South and parallel with the West line of said Donation Land Claim, 123 feet to a point; thence East on a line parallel with said Foster Road, 236 feet to the Southwest corner of that tract of land conveyed to Robert Winters et ux by deed recorded March 9, 1954 in Book 1647, Page 395, Deed Records; thence North along the West line of said Winters tract 123 feet to the Northwest corner thereof; thence West parallel to said Foster Road, 236 feet to the true point of beginning.

EXCEPTING the North 3 feet thereof as more particularly described in deed to Charles Wible and Ruby Wible, by deed recorded March 30, 1971 in Book 779, Page 754, Deed Records.

EXHIBIT 13
3 of 3

# EXHIBIT FOURTEEN

Multnomah County Official Records
E Murray, Deputy Clerk
**2022-111545**
12/29/2022 09:23:17 AM

MORT-SUBS   Pgs=2 Stn=10 ATCG
$10.00 $11.00 $10.00 $60.00
$91.00

**RECORDING REQUESTED BY AND
AFTER RECORDING RETURN TO:**
Christopher R. Ambrose, Esq.
Ambrose Law Group LLC
2900 NW Clearwater Drive, Ste. 320
Bend, OR 97703

## APPOINTMENT OF SUCCESSOR TRUSTEE

THE UNDERSIGNED is/are the assignee beneficiary(ies) under the Trust Deed (the "Trust Deed") described below and the Note secured thereby. The undersigned hereby appoints Christopher R. Ambrose as successor trustee of the Trust Deed, to have all the powers of said original trustee.

| | |
|---|---|
| BORROWER/GRANTOR | Northwest Investment Holdings, LLC |
| ORIGINAL TRUSTEE | Dean S. Kaufman |
| BENEFICIARY(IES) | PacWest Funding, Inc., dba Precision Capital |
| ASSIGNEE BENEFICIARY | Pac One Fund, L.P. |
| TRUST DEED DATED | September 27, 2019 |
| TRUST DEED RECORDED | September 30, 2019 |
| REFERENCE NUMBER | 2019-104513 |
| SUBJECT PROPERTY | 6100 SE 140th Ave., Portland, OR 97236, more particularly described as SECTION 14 1S 2E, TL 2100 0.65 ACRES, in the City of Portland, County of Multnomah, and State of Oregon., APN R334984 Alternative APN: R992140750 |
| COUNTY OF RECORDING | Multnomah County |
| STATE OF RECORDING | Oregon |

DATED: December 28, 2022.

Pac One Fund, L.P.
By: PacWest Funding, Inc.
Its: Authorize Representative

By: *Pam Hoepfl*

Its: Director of Capital

[ ACKNOWLEDGMENT APPEARS ON FOLLOWING PAGE]

PAGE 1 - APPOINTMENT OF SUCCESSOR TRUSTEE

STATE OF OREGON          )
                         ) ss
County of _Lane_____   )


On the _28th_ day of December, 2022, before me, personally appeared _____
_Pam Hoepfl_____, personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person whose name is subscribed to the within instrument and
acknowledged to me that he/she executed the same on behalf of PacWest Funding, Inc., an Oregon
corporation, authorized representative for Pac One Fund, L.P.

        WITNESS my hand and official seal.


_____
Notary Public - State of Oregon
My Commission Expires: _May 13, 2024_



```
OFFICIAL STAMP
SIMON THALER
NOTARY PUBLIC - OREGON
COMMISSION NO. 999931
MY COMMISSION EXPIRES     MAY 13, 2024
```

PAGE 2 - APPOINTMENT OF SUCCESSOR TRUSTEE

# EXHIBIT FIFTEEN

## RECORDING COVER SHEET
## ORS 205.234

This cover sheet has been prepared by the person presenting the attached instrument for recording.
Any error in this cover sheet DOES NOT affect the transaction(s) contained in the instrument itself.

AFTER RECORDING, RETURN TO:
Christopher R. Ambrose, Trustee
312 NW 10th Avenue, Suite 200
Portland, Oregon 97209

| Multnomah County Official Records | **2024-01037** |
| J.D. Riddle, Deputy Clerk | 02/22/2024 04:15:59 PM |
| NOT-DEF          Pgs=6 Stn=10 ATCG | |
| $30.00 $11.00 $10.00 $60.00 | **$111.00** |

Please print or type information.

1.     AFTER RECORDING RETURN TO - Required by ORS 205.180(4) & 205.238:

    Name: Ambrose, Christopher R., Successor Trustee
    Address: 312 NW 10th Avenue, Suite 200, Portland, Oregon 97209

2.     TITLE(S) OF THE TRANSACTION(S) - Required by ORS 205.234(1)(a)

    Document Title(s): NOTICE OF DEFAULT AND ELECTION TO SELL

3.     DIRECT PARTY/GRANTOR:

    Name: Ambrose, Christopher R., Successor Trustee
    Address: 2900 NW Clearwater Drive, Ste. 320, Bend, OR 97703

4.     INDIRECT PARTY/GRANTEE:

    Name: The Public
    Name: Northwest Investment Holdings, LLC, an Oregon limited liability company
    Address: PO Box 1152, Gig Harbor, WA 98335

5.    Property:    6100 SE 140th Ave., Portland, OR 97236
    Legal: Section 14 1S 2E TL 2100 0.65 Acres, in the City of Portland and
    County of Multnomah and State of Oregon
    APN: R334984

6.     True and actual consideration (per ORS 93.030(5): *Not applicable*
7.     Send tax statements to: *Not applicable*
8.     Satisfaction of order or warrant (per ORS 205.125(1)(e): *Not applicable*
9.     The amount of the monetary obligation imposed by order or warrant: *Not applicable*
10.    Is instrument being re-recorded: *No.*

Recording Requested By and
After Recording, Return to:

Christopher R. Ambrose
Ambrose Law Group LLC
312 NW 10th Avenue, Suite 200
Portland, OR  97209-3121

## NOTICE OF DEFAULT AND ELECTION TO SELL

RE:

Trust Deed from:

Northwest Investment Holdings, LLC,
an Oregon limited liability company,

            Grantor,

To:

Christopher R. Ambrose,

            Successor Trustee.


       Reference is made to that certain Trust Deed (the "Trust Deed") made by Northwest Investment Holdings LLC, an Oregon limited liability company, as grantor (the "Grantor"), to Dean S. Kaufman, Attorney at Law, as the trustee, in favor of PacWest Funding, Inc., an Oregon corporation, dba Precision Capital, as beneficiary, dated September 25, 2019, and recorded on September 30, 2019, as Instrument No. 2019-104513, in the Official Records of Multnomah County, Oregon, covering the Grantor's interest in the following described real property situated in the above-mentioned county and state, to-wit:

### LEGAL DESCRIPTION

       A tract of land in Section 14, Township 1 South, Range 2 East of the Willamette Meridian, in the City of Portland, County of Multnomah and the State of Oregon, described as follows: Beginning at a point in the West line of the Ebenezer Creswell Donation Land Claim in the center line of the Foster Road; running thence North tracing the said West line of said Donation Land Claim 13.92 chains; thence East on a line parallel with

PAGE 1 - NOTICE OF DEFAULT

I:\73094\14\FORECLOS\00925592.WPD

said Foster Road, 7.1885 chains to a stone monument; thence South on a line parallel with the West line of said Donation Land Claim, 336 feet to the true point of beginning and Northwest corner of the tract of land herein described; thence South and parallel with the West line of said Donation Land Claim, 123 feet to a point; thence East on a line parallel with said Foster Road, 236 feet to the Southwest corner of that tract of land conveyed to Robert Winters et ux by deed recorded March 9, 1954 in Book 1647, Page 395, Deed Records; thence North along the West line of said Winters tract 123 feet to the Northwest corner thereof; thence West parallel to said Foster Road, 236 feet to the true point of beginning. EXCEPTING the North 3 feet thereof as more particularly described in deed to Charles Wible and Ruby Wible, by deed recorded March 30, 1971 in Book 779, Page 754, Deed Records.

Commonly known as 6100 SE 140th Ave., Portland, OR 97236
APN: 334984
Alternative APN: R992140750
(the "Property").

All beneficial right, title, and interest in the Trust Deed was assigned to the Pac One Fund, L.P. (the "Beneficiary"), by Assignment of Trust Deed by Beneficiary dated January 27, 2020, and recorded January 29, 2020, in the records of Multnomah County, Oregon, as Instrument Number 2020-011078. The current trustee under the Trust Deed is Christopher R. Ambrose (the "Trustee"). The undersigned hereby certifies that no assignments of the Trust Deed by the Trustee or by the Beneficiary and no appointments of a successor trustee have been made, except the foregoing and as are or will be recorded in the Records of the county or counties in which the Property is situated. Further, no action has been instituted to recover the debt, or any part thereof, now remaining secured by the Trust Deed, or, if such action has been instituted, such action has been dismissed except as permitted by ORS 86.735(4).

There is a default by Grantor owing an obligation, performance of which is secured by the Trust Deed, with respect to provisions therein which authorize sale in the event of default of such provisions. The default for which foreclosure is made is Grantor's failure to pay when due the following sums, or as a result of the following action or inaction:

1. Failing to provide the payoff of the underlying loan by the maturity date of October 1, 2022, as modified to December 1, 2023.
2. Failing to provide the late charges associated with the payoff and prior monthly installments.
3. Failing to provide NSF fees.
4. Failing to provide insurance.
5. Failing to provide foreclosure costs and related fees.

By reason of the default, the Beneficiary has declared all sums owing on the obligation secured by the Trust Deed immediately due and payable, those sums being the following estimated amounts, to-wit:

PAGE 2 - NOTICE OF DEFAULT

I:\73094\14\FORECLOS\00925592.WPD

| | | |
|---|---|---|
| 1. | Unpaid Principal: | $346,500.00 |
| 2. | Accrued and Unpaid Interest (through and including February 22, 2024): | $118,232.38 |
| 3. | Trustee's Sale Guarantee Report (est'd): | $1200.00 |
| 4. | Late Charges: | $346.22 |
| 5. | Misc. Charges (collection costs, NSF fees, insurance): | $28,706.76 |
| 6. | Foreclosure Legal Fees and Costs (as of 2024) (estimated): | $2,500.00 |
| 7. | Subtotal: | $.00 |
| 8. | Plus title expenses, trustee's fees, recording fees, and attorneys' fees incurred herein by reason of said default and any further sums advanced by the Beneficiary for the protection of the Property and its interest therein. | $497,485.36 |

Notice hereby is given that the Beneficiary and Trustee, by reason of the default, have elected and do hereby elect to foreclose the Trust Deed by advertisement and sale pursuant to ORS 86.705 to 86.795, and to cause to be sold at public auction to the highest bidder for cash the interest in the Property which Grantor had, or had the power to convey, at the time of the execution by Grantor of the Trust Deed, together with any interest Grantor or Grantor's successor in interest acquired after the execution of the Trust Deed, to satisfy the obligations secured by the Trust Deed, and the expenses of the sale, including the compensation of the Trustee as provided by law, and the reasonable fees of Trustee's attorneys.

The sale will be held at the hour of **11:00 a.m.**, in accord with the standard of time established by ORS 187.110, on **June 27, 2024**, at the following place: the front outside entrance to the Multnomah County Courthouse, located at 1200 SW First Avenue, Portland, Oregon 97204.

Other than as shown of record, neither the Beneficiary nor the Trustee has any actual notice of any person having or claiming to have any lien upon or interest in the Property hereinabove described subsequent to the interest of the Trustee in the Trust Deed, or of any successor in interest to Grantor or of any lessee or other person in possession of or occupying the Property, except:

| Name and Last Known Address | Nature of Right, Lien or Interest |
|---|---|
| None | None |

Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the Trust Deed reinstated by payment to the Beneficiary of the entire amount then due (other than such portion of the principal as would not then be due

PAGE 3 - NOTICE OF DEFAULT

I:\73094\14\FORECLOS\00925592.WPD

had no default occurred) and by curing any other default complained of herein that is capable of being cured by tendering the performance required under the obligation or Trust Deed, and in addition to paying the sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and Trust Deed, together with trustee's and attorney fees, subject to the limitations, as applicable, imposed by ORS 86.753.

In construing this notice, the singular includes the plural, the word "Grantor" includes any successor in interest to the Grantor as well as any other person owing an obligation, the performance of which is secured by the Trust Deed, and the words "Trustee" and "Beneficiary" include their respective successors in interest, if any.

**Without limiting the Trustee's disclaimer of representations or warranties, Oregon law requires the Trustee to state in this notice that some residential property sold at a trustee's sale may have been used in manufacturing methamphetamines, the chemical components of which are known to be toxic. Prospective purchasers of residential property should be aware of this potential danger before deciding to place a bid for this property at the trustee's sale.**

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

Dated: February 22, 2024.

Successor Trustee:

_____
Christopher R. Ambrose

STATE OF OREGON    )
                   ) ss:
County of Deschutes    )

On February 22, 2024, before me, personally appeared Christopher R. Ambrose, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity and that by his signature on the instrument, the person or entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

OFFICIAL STAMP
DIANA GRACE SMITH
NOTARY PUBLIC-OREGON
COMMISSION NO. 1021409
MY COMMISSION EXPIRES FEBRUARY 14, 2026

_____
Notary Public - State of Oregon
My Commission Expires: February 14, 2026

PAGE 4 - NOTICE OF DEFAULT

I:\73094\14\FORECLOS\00925592.WPD

CONTACT INFORMATION (INCLUDING MAILING ADDRESS) FOR TRUSTEE:

Christopher R. Ambrose
Ambrose Law Group LLC
312 NW 10th Avenue, Suite 200
Portland, Oregon  97209-3121
Phone:  503.467.7209
Fax:     503.222.0984
Email:   crambrose@ambroselaw.com

PAGE 5 - NOTICE OF DEFAULT

I:\73094\14\FORECLOS\00925592.WPD

EXHIBIT FIFTEEN
7 of 7

# EXHIBIT SIXTEEN

## RECORDING COVER SHEET
## ORS 205.234

This cover sheet has been prepared by the person presenting the attached instrument for recording. Any error in this cover sheet DOES NOT affect the transaction(s) contained in the instrument itself.

AFTER RECORDING, RETURN TO:

Christopher R. Ambrose, Trustee
312 NW 10th Avenue, Suite 200
Portland, Oregon 97209

Please print or type information.

| Multnomah County Official Records<br>E. Murray, Deputy Clerk | **2024-043171** |
| --- | --- |
| | 07/22/2024 09:09:57 AM |
| DEED-DEED          Pgs=5 Stn=68 ATJN | |
| $25.00 $11.00 $10.00 $60.00 $20.00 | $126.00 |

1.  AFTER RECORDING RETURN TO - Required by ORS 205.180(4) & 205.238:

    Name: Ambrose, Christopher R., Trustee
    Address: 312 NW 10th Avenue, Suite 200, Portland, Oregon 97209

2.  TITLE(S) OF THE TRANSACTION(S) - Required by ORS 205.234(1)(a)
    Document Title(s): TRUSTEE'S DEED AS A RESULT OF FORECLOSURE

3.  DIRECT PARTY/GRANTOR:
    Name: Christopher R. Ambrose, Successor Trustee
    Address: 312 NW 10th Ave., Ste. 200, Portland, OR 97209

4.  INDIRECT PARTY/GRANTEE:
    Name: The Public
    Name: Northwest Investment Holdings LLC
    Address: 870 NW Fir Ave., Warrenton, OR 97146

5.  Property:      6100 Se 140th Ave., Portland, OR 97326
                   Legal: Section 14 1S 2E TL 2100 0.65 Acres, in the City of Portland and
                   County of Multnomah and State of Oregon
                   APN: R334984
                   Alternative APN: R992140750

6.  True and actual consideration (per ORS 93.030(5)): *Not applicable*

7.  Send tax statements to: *Not applicable*

8.  Satisfaction of order or warrant (per ORS 205.125(1)(e): *Not applicable*

9.  The amount of the monetary obligation imposed by order or warrant: *Not applicable*

10. Is instrument being re-recorded: *No*.

**REQUESTED BY AND WHEN**
**RECORDED, RETURN TO:**
Ambrose Law Group LLC
Attn.: Christopher R. Ambrose, Esq.
312 NW 10th Avenue, Suite 200
Portland, OR 97209
(503) 467-7210
crambrose@ambroselaw.com

**SEND TAX NOTICES TO:**
PacWest Funding, Inc. dba Precision Capital
4710 Village Plaza Loop, Suite 100
Eugene, OR 97401


### TRUSTEE'S DEED AS A RESULT OF FORECLOSURE

The Grantor, Christopher R. Ambrose, appointed as successor trustee ("Trustee") under that certain Trust Deed (the "Trust Deed"), as hereinafter particularly described, in consideration of the premises and payment recited below, hereby grants and conveys, without warranty, to Pac One Fund, LP (the "Grantee") that certain real property, situated in the County of Multnomah, State of Oregon, described as follows:

Legal Description:

A tract of land in Section 14, Township 1 South, Range 2 East of the Willamette Meridian, in the City of Portland, County of Multnomah and the State of Oregon, described as follows:
Beginning at a point in the West line of the Ebenezer Creswell Donation Land Claim in the center line of the Foster Road; running thence North tracing the said West line of said Donation Land Claim 13.92 chains; thence East on a line parallel with said Foster Road, 7.1885 chains to a stone monument; thence South on a line parallel with the West line of said Donation Land Claim, 336 feet to the true point of beginning and Northwest
corner of the tract of land herein described; thence South and parallel with the West line of said Donation Land Claim, 123 feet to a point; thence East on a line parallel with said Foster Road, 236 feet to the Southwest corner of that tract of land conveyed to Robert Winters et ux by deed recorded March 9, 1954 in Book 1647, Page 395, Deed Records; thence North along the West line of said Winters tract 123 feet to the Northwest corner thereof; thence West parallel to said Foster Road, 236 feet to the true point of beginning.
EXCEPTING the North 3 feet thereof as more particularly described in deed to Charles Wible and Ruby Wible, by deed recorded March 30, 1971 in Book 779, Page 754, Deed Records.
Commonly known as 6100 SE 140th Ave., Portland, OR 97236
APN: 334984
Alternative APN: R992140750
(the "Property").


PAGE 1 - TRUSTEE'S DEED - 6100 SE 140th Ave., Portland, OR 97236

## RECITALS:

1.    This conveyance is made pursuant to the powers, including the power of sale, conferred upon said Trustee by that certain Trust Deed (the "Trust Deed") made by Northwest Investment Holdings, LLC, an Oregon limited liability company, as grantor (the "Grantor"), to Dean S. Kaufman, Attorney at Law, as the trustee, in favor of Pac West Funding, Inc., an Oregon corporation, dba Precision Capital, as beneficiary, dated September 25, 2019, and recorded on September 30, 2019, as Instrument No. 2019-104513, in the Official Records of Multnomah County, Oregon.  All beneficial right, title, and interest in the Trust Deed was assigned to Pac One Fund, LP by Assignment of Trust Deed by Beneficiary dated January 27, 2020, and recorded January 29, 2020, in the records of Multnomah County, Oregon as Instrument No. 2020-011078. The current trustee under the Trust Deed is Christopher R. Ambrose pursuant to an Appointment of Successor Trustee dated December 28, 2022, recorded December 29, 2022, as instrument number 2022-111545, in the official records of Multnomah County, Oregon.

2.    The Trust Deed was executed to secure, together with other undertakings and  obligations set forth in the Trust Deed, the payment of a secured Promissory Note (the "Note') in the sum of $346,500.00, as modified, with interest thereon, according to the terms thereof, in favor of the Beneficiary, and to secure any other sums of money which might become due and payable under the terms of the Trust Deed.

3.    The Trust Deed provides that the Property is not used principally for agricultural or farming purposes.

4.    Default having occurred and the obligations secured and/or covenants of the Grantor, as set forth in the Notice of Default and Election to Sell described below, which the terms of the Trust Deed make operative the power of sale, the Trustee caused to be recorded a Notice of Default and Election to Sell dated February 22, 2024 (the "Notice of Default and Election to Sell"), recorded February 22, 2024, as Instrument No. 2024-010372 in the official records of Multnomah County, Oregon.

5.    The Trustee, in its aforesaid Notice of Default and Election to Sell, fixed the place of sale as the front outside entrance to the Multnomah County Courthouse located at 1200 SW First Avenue, Portland, Oregon, a public place, at 11 o'clock a.m. on Thursday, June 27, 2024, and in accordance with law caused copies of the statutory Trustee's Notice of Sale to be transmitted by mail to all persons entitled thereto and either posted or served in accordance with law.

6.    During foreclosure, no action was pending on any obligations secured by the Trust Deed.

7.    After the recording of the foregoing Notice of Default and Election to Sell as aforesaid, the undersigned Trustee gave notice to the Grantor and occupant(s), if any, as required by and in accordance with ORS Sections 86.764 by mailing said notice by both first class and certified mail with return receipt requested.  The mailing of said notices is shown by an affidavit of mailing recorded prior to the sale date. In addition, the undersigned Trustee gave notice of the time for and place of sale of said real property as fixed by the Trustee and as required by law; copies of the Trustee's Notice of Sale were served pursuant to ORCP 7D.(2) and 7D.(3) or mailed by both first class and certified mail with return receipt requested, to the last-known address(es) of the persons or the legal representatives, if any, required by ORS 86.774, at least 120 days before the date the property was sold, and the Trustee's Notice of Sale was mailed by first class and certified mail with return receipt requested, to the last-known address of the guardian, conservator,

PAGE 2 - TRUSTEE'S DEED - 6100 SE 140th Ave., Portland, OR 97236

EXHIBIT SIXTEEN
4 of 6

administrator, or executor of any person required by ORS 86.705 through 86.815, if any, promptly after the Trustee received knowledge of the disability, insanity or death of any such person; the Notice of Sale was served upon occupants of the property described in the Trust deed, if any, in the manner in which a summons is served pursuant to ORCP 7D.(2) and 7D.(3) at least 120 days before the date the property was sold, or, if vacant, a notice of non-occupancy was recorded. If the foreclosure proceedings were stayed and released from stay, copies of an amended Notice of Sale in the form required by ORS 86.705 through 86.815 were mailed by registered or certified mail to the last-known address of those persons listed in ORS 86.705 through 86.815 and to the address provided by each person who was present at the time and place set for the sale which was stayed within 30 days after the release from stay. Further, the Trustee published a copy of said notice of sale in a newspaper of general circulation in each county in which the said real property is situated, once a week for four successive weeks; the last publication of said notice occurred more than twenty days prior to the date of such sale. The mailing, service and publication of said notice are shown by one or more affidavits or proof of service duly recorded prior to the date of sale in the records of said county, together with the said notice of default and election to sell and the Trustee's Notice of Sale, being now referred to and incorporated in and made a part of this Trustee's Deed as fully as if set out herein verbatim. The undersigned Trustee has no actual notice of any person, other than the persons named in said affidavits and proofs as having or claiming a lien on or interest in said described real property, entitled to notice pursuant to ORS 86.705 through 86.815.

8.    In the event the Property is a residential trust deed within the meaning ORS 86.705 through 86.815, notice under ORS 86.756 was provided.

9.    All legal requirements and all provisions of the Trust Deed have been complied with, as to acts to be performed and notices to be given, as provided in ORS 86.705, et seq.

10.    The Trustee postponed the sale pursuant to both public proclamation, and written notice to the grantor and all interested and required parties, pursuant to a postponement or series of postponements pursuant to and in accordance with ORS 86.782(2). The final sale date was postponed to 11:00 a.m. on Monday, July 15, 2024.

11.    The defaults specified in the Trustee's Notice of Sale, not having been cured five days prior to the date of Trustee's Sale and said obligations secured by the Trust Deed remaining unpaid, at 11:00 a.m. on Monday, July 15, 2024, the date of sale, which was not less than 120 days from the date of recording the Notice of Default and Election to Sell, the Trustee then and there sold at public auction to Pac One Fund, LP, the highest bidder therefore, the above described property for the sum of Four Hundred Twenty-Five Thousand and no/100ths Dollars ($425,000.00).

THIS INSTRUMENT WILL NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY APPROVED USES

/////

/////
[SIGNATURE AND ACKNOWLEDGMENT ON NEXT PAGE]


PAGE 3 - TRUSTEE'S DEED - 6100 SE 140th Ave., Portland, OR 97236

EXHIBIT SIXTEEN
5 of 6

DATED this 19th day of July, 2024.

Trustee:

By: _____
Christopher R. Ambrose, Trustee

STATE OF OREGON      )
                               ) ss
County of Deschutes     )

On this day personally appeared before me **Christopher R. Ambrose**, known by me to be the person who executed the within and foregoing instrument, and acknowledged that he signed the same as his free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this 19th day of July, 2024.

OFFICIAL STAMP
DIANA GRACE SMITH
NOTARY PUBLIC-OREGON
COMMISSION NO. 1021409
MY COMMISSION EXPIRES FEBRUARY 14, 2026

NOTARY PUBLIC for the State of Oregon
My commission expires: February 14, 2026

PAGE 4 - TRUSTEE'S DEED - 6100 SE 140th Ave., Portland, OR 97236